SEYFARTH SHAW LLP
Michele J. Beilke (SBN 194098)
mbeilke@seyfarth.com
Julia Y. Trankiem (SBN 228666)
jtrankiem@seyfarth.com
Alexander W. Simon (SBN 310842)
asimon@seyfarth.com
601 South Figueroa Street, Suite 3300
Los Angeles, California 90017-5793
Telephone: (213) 270-9600
Facsimile: (213) 270-9601

*Attorneys for Defendants*
Del Monte Capitol Meat Company, LLC; Allen Brothers 1893, LLC; The Chefs' Warehouse, Inc.; and The Chefs' Warehouse West Coast, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

LETICIA PAREJA MARTINEZ, an individual, on behalf of herself and all others similarly situated,

Plaintiff,

v.

DEL MONTE CAPITOL MEAT COMPANY, LLC, a Delaware limited liability company; ALLEN BROTHERS 1893, LLC, a Delaware limited liability company; THE CHEFS' WAREHOUSE, INC., a Delaware corporation; THE CHEFS' WAREHOUSE WEST COAST, LLC, a Delaware limited liability company; and DOES 1 through 500, inclusive,

Defendants.

Case No. _______________

**DEFENDANTS' NOTICE OF REMOVAL OF CLASS ACTION COMPLAINT**

(County of Contra Costa Court Case No. C26-00390)

Complaint Filed: February 3, 2026

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, AND TO PLAINTIFF AND HER COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT,** pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d), 1453, and 1711, Defendants Del Monte Capitol Meat Company, LLC, Allen Brothers 1893, LLC, The Chefs' Warehouse, Inc., and The Chefs' Warehouse West Coast, LLC (collectively, "Defendants") hereby remove to the United States District Court for the Northern District of California the above-captioned state court action, originally filed as Case No. C26-00390 in the Superior Court of the State of California, County of Contra Costa. Removal is proper on the following grounds:

## I. TIMELINESS OF REMOVAL

1. On February 3, 2026, Plaintiff Leticia Pareja Martinez ("Plaintiff") filed a putative Class Action Complaint against Defendants in the Superior Court of the State of California, County of Contra Costa, Case No. C26-00390 (the "State Court Action").

2. This notice of removal is timely because it is filed within 30 days after service was completed on March 20, 2026. 28 U.S.C. § 1446(b).

3. The undersigned represents all four defendants, who all consent to removal.

4. A true and correct copy of Plaintiff's Complaint ("Compl.") is attached as **Exhibit A**.

5. A true and correct copy of Defendants' Answer is attached as **Exhibit B**.

6. A true and correct copy of all other process, pleadings, and orders served upon Defendants in the State Court Action to date are attached as **Exhibit C.**

7. **Exhibits A-C** constitute all process, pleadings, and orders in the State Court Action.

## II. SUMMARY OF ALLEGATIONS AND GROUNDS FOR REMOVAL

8. Removal is proper under 28 U.S.C. §§ 1441 and 1453 because this Court has subject matter jurisdiction over this action and all claims asserted against Defendants pursuant to CAFA, 28 U.S.C. § 1332(d).

9. CAFA applies "to any class action before or after the entry of a class certification order by the court with respect to that action." 28 U.S.C. § 1332(d)(8). This case is a putative "class action" under CAFA because it was brought under California Code of Civil Procedure § 382, California's state statute

authorizing an action to be brought by one or more representative persons as a class action. *See* 28 U.S.C. § 1332(d)(1)(B); *see also* Compl. ¶ 5.

10. Plaintiff asks the Court to certify the following class: "all current and former non-exempt employees of DEFENDANTS in the State of California at any time within the period beginning four (4) years prior to the filing of this action [on February 3, 2026] and ending at the time this action settles or proceeds to final judgment (the 'CLASS PERIOD')." Compl. ¶ 5.

11. Plaintiff alleges nine causes of action against Defendants: (1) failure to provide required meal periods; (2) failure to provide required rest periods; (3) failure to pay minimum wages; (4) failure to pay overtime wages; (5) failure to pay all wages due to discharged and quitting employees; (6) failure to furnish accurate itemized wage statements; (7) failure to indemnify employees for necessary expenditures incurred in discharge of duties; (8) unfair and unlawful business practices; and (9) penalties under the Labor Code Private Attorneys General Act of 2004 ("PAGA").

12. Plaintiff alleges that putative class members are entitled to compensatory damages, restitution, meal and rest period compensation, liquidated damages, injunctive relief, waiting time penalties, statutory and civil wages, statutory and civil penalties, interest, and attorneys' fees and costs. Compl. Prayer ¶¶ 1–9. Plaintiff seeks attorneys' fees under California Labor Code §§ 218.5, 226, 1194, 2699, 2802, and California Civil Code § 1021.5.

13. Defendants assert that Plaintiff must arbitrate her claims and that she is not entitled to pursue a class action.[1] Additionally, Defendants deny any liability in this case both as to Plaintiff's individual claims and as to the claims she seeks to pursue on behalf of the putative class. If this case remains in court instead of individual arbitration, Defendants also intend to oppose class certification on

[1] It is well-established in the Ninth Circuit that removal and the right to compel arbitration are not mutually exclusive, and that removal does not waive a defendant's right to seek arbitration. *Armstrong v. Michaels Stores, Inc.*, No. 17-cv-6540-LHK, 2018 WL 6505997, at *10 (N.D. Cal. Dec. 11, 2018) (collecting cases; "courts have consistently rejected the argument that a party waived the right to compel arbitration by removing a case to federal court"; further, "by nature of being subject to 28 U.S.C. § 1332(d)(2) [CAFA], Plaintiff's action could only be heard in federal court. The Court concludes that given this, such removal by Defendant cannot constitute waiver"), aff'd, 59 F.4th 1011 (9th Cir. 2023) (same). Filing a notice of removal is not inconsistent with subsequently moving to compel arbitration, and Defendants expressly reserve all rights to compel arbitration of Plaintiff's individual claims (including the individual PAGA component) and to strike any class claims. Defendants' decision to remove this action is necessitated solely by the pendency of Plaintiff's class and representative action allegations and the jurisdictional basis that those allegations create, not by any intention to litigate Plaintiff's individual claims in this Court.

multiple grounds, including that class treatment is inappropriate under these circumstances, in part because there are many material differences between Plaintiff herself and the putative class members she seeks to represent, as well as amongst the putative class members. Defendants expressly reserve all rights, including to compel arbitration, strike the class, oppose class certification, and to contest the merits and propriety of all claims asserted in the Complaint.

## III. REMOVAL IS PROPER UNDER CAFA

14. Removal of a class action is proper if: (1) there are at least 100 members in the putative class; (2) there is minimal diversity between the parties, such that at least one class member is a citizen of a state different from any defendant; and (3) the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs. *See* 28 U.S.C. §§ 1332(d), 1441.

15. Relevant statistics about the putative class, relevant to the calculations of potential damages in this case, are set forth in the Declaration of Jennifer Farinha ("Farinha Decl."). In relevant part:

a. At all times in the relevant period, The Chefs' Warehouse, Inc. ("CW") and Allen Brothers 1893, LLC have had no Putative Class Employees in California.

b. At all times in the relevant period, The Chefs' Warehouse West Coast, LLC ("CWWC") and Del Monte Capitol Meat Company, LLC ("Del Monte") have, in the aggregate or independently, employed more than 100 Putative Class Employees in California.

c. The Putative Class Employees were or are full-time employees, meaning they were scheduled to work at least eight hours per day and 40 hours per week.

d. At all relevant times in the relevant periods (dating back to at least February 3, 2022), all Putative Class Employees were paid at least the applicable California minimum wage. That means that all Putative Class Employees were paid at least $15.00 per hour in 2022, $15.50 per hour in 2023, $16.00 per hour in 2024, $16.50 per hour in 2025, and $16.90 per hour in 2026. Many Putative Class Employees earned significantly more than that.

e. Between February 3, 2022 and April 8, 2026 (the four-year period), approximately 1,162 Putative Class Employees worked for one of the Defendants, and they collectively worked more than 90,186 workweeks based on their dates of employment. The weighted average hourly rate of pay across these employees was approximately $24.77 per hour.

f. Between February 3, 2023 and April 8, 2026 (the three-year period), approximately 985 Putative Class Employees worked for at least one of the Defendants, and they collectively worked more than 70,732 workweeks based on their dates of employment. The weighted average hourly rate of pay across these employees was approximately $24.95 per hour.

g. Between February 3, 2025 and April 8, 2026 (the one-year period), approximately 643 Putative Class Employees worked for at least one of the Defendants, and they collectively worked more than 26,255 workweeks based on their dates of employment. The weighted average hourly rate of pay across these employees was approximately $25.01 per hour.

h. At least 731 Putative Class Employees had their employment terminate on or after February 3, 2022. The weighted average final rate of pay for those terminated employees was approximately $23.22 per hour.

i. At least 551 Putative Class Employees had their employment terminate on or after February 3, 2023. The weighted average final rate of pay for those terminated employees was approximately $23.08 per hour.

j. At all times in the relevant period, Putative Class Employees were paid on a weekly basis. Between February 3, 2025 and April 8, 2026, CWWC and Del Monte collectively employed at least 643 Putative Class Employees for at least one pay period, and at least 369 of those Putative Class Employees each received 41 or more weekly wage statements during this time period.

k. Because Putative Class Employees are paid on a weekly basis, the "workweeks" described above also correspond with "pay periods."

*See* Farinha Decl. ¶ 9.

**A. The Proposed Class Consists of More than 100 Members**

16. Based on Plaintiff's allegations, this action satisfies CAFA's requirement (28 U.S.C. § 1332(d)(5)(B)) that the putative class contain at least 100 members. *See* Farinha Decl. ¶ 9(b).

17. Accordingly, while Defendants deny that class treatment is permissible or appropriate, the proposed class consists of well over 100 members.

**B. Defendants Are Not Citizens of California**

18. Under CAFA's minimum diversity of citizenship requirement, one of the plaintiffs or any member of the putative class must be a citizen of a different state from any defendant. *See* 28 U.S.C. § 1332(d)(2)(A).

19. A person is a citizen of the state in which he or she is domiciled. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). Here, Plaintiff is a citizen of California. Compl. ¶ 3 ("Plaintiff is a resident and a citizen of the State of California").

20. Under CAFA, corporations and limited liability companies are citizens of their state of incorporation and the state of its principal place of business. 28 U.S.C. §§ 1332(c)(1), 1332(d)(10). Defendants are not a citizen of California. Rather, they are citizens of Delaware and Connecticut. Farinha Decl. ¶¶ 3-6.

21. In this case, there is at least minimal diversity.

### C. The Amount in Controversy Exceeds $5 Million

22. CAFA requires that the amount in controversy in a class action exceed $5 million, exclusive of interests and costs, aggregating the claims of all individual class members. 28 U.S.C. §§ 1332(d)(2), (6).

23. "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Op. Co. v. Owens,* 574 U.S. 81, 89 (2014). To satisfy this burden, a defendant may rely on a "chain of reasoning" provided the "underlying assumptions [are] reasonable." *LaCross v. Knight Transp. Inc.,* 775 F.3d 1200, 1201 (9th Cir. 2015); *Perez v. Rose Hills Co.*, 131 F.4th 804, 808 (9th Cir. 2025). "An assumption may be reasonable if it is founded on the allegations of the complaint." *Arias v. Residence Inn by Marriott,* 936 F.3d 920, 925 (9th Cir. 2019); *see also Salter v. Quality Carriers, Inc.,* 974 F.3d 959, 964 (9th Cir. 2020) ("[I]n *Arias* we held that a removing defendant's notice of removal need not contain evidentiary submissions but only plausible allegations of jurisdictional elements") (quotations and citations omitted). Indeed, "[t]he amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Lewis v. Verizon Commc'ns, Inc.,* 627 F.3d 395, 400 (9th Cir. 2010). The Court's inquiry must focus on "what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will actually owe." *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal.

2008) (citing *Rippee v. Boston Mkt. Corp.*, 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005)). Accordingly, "a court must 'assume that the allegations of the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint.'" *Campbell v. Vitran Exp., Inc.*, 471 F. App'x 646, 648 (9th Cir. 2012) (quoting *Kenneth Rothschild Tr. v. Morgan Stanley Dean Witter,* 199 F. Supp. 2d 993,1001 (C.D. Cal. 2002)).

24. Defendants deny that Plaintiff's claims have any merit and expressly reserve all rights to contest liability. For jurisdictional purposes only, however, the workforce data set forth in the Farinha Declaration (drawn directly from Defendants' own employment records) combined with reasonable assumptions grounded in the Complaint's allegations, demonstrates that the amount in controversy conservatively exceeds $12 million when considering only five categories of relief: unpaid overtime wages, meal period premiums, rest period premiums, waiting time penalties, and wage statement penalties.

25. In the Complaint, Plaintiff alleges that Defendants maintained "illegal payroll policies and practices to deprive their non-exempt employees all wages earned and due," Compl. ¶¶ 19, 24, and that Defendants' "aforementioned acts and omissions were done repeatedly over a significant period of time, and in a systematic manner, to the detriment of PLAINTIFF and CLASS MEMBERS." Compl. ¶ 53. Because Plaintiff frames each violation as a uniform, company-wide policy applied to all class members, conservative violation rate assumptions of one violation per workweek for overtime, meal periods, and rest periods – and maximum penalty assumptions for waiting time and wage statements – are well-supported by the Complaint's own allegations. *See Montes v. Thorntons LLC*, No. 25-cv-05895-EKL, 2026 WL 765424, at *5 (N.D. Cal. March 18, 2026) (finding presumed violation rate of two meal break violations, two rest break violations, and two hours of unpaid overtime, per workweek, reasonable based on "pattern and practice" allegations).

26. **Unpaid Overtime.** For unpaid overtime, Plaintiff alleges that during the class period, Defendants "failed to compensate PLAINTIFF and CLASS MEMBERS for all overtime hours worked" by, among other things, "requiring, permitting or suffering PLAINTIFF and CLASS MEMBERS to work off the clock," "requiring, permitting or suffering PLAINTIFF and CLASS MEMBERS to work through meal and rest breaks," and "illegally and inaccurately recording time in which PLAINTIFF and CLASS MEMBERS worked." Compl. ¶ 33. Plaintiff further alleges that "DEFENDANTS have knowingly and

willfully refused to perform their obligations to compensate PLAINTIFF and CLASS MEMBERS for all wages earned and all hours worked." Compl. ¶ 34. Given these allegations of a systematic, policy-driven failure to pay overtime encompassing off-the-clock work, missed meal and rest periods, and falsified time records, it is reasonable to assume that, conservatively, Plaintiff has placed at least one hour of unpaid overtime per workweek in controversy. *See, e.g.*, *Gonzalez v. Peak Cal. Rest. Grp. LLC*, No. 3:25-cv-04068-AMO, 2025 WL 2934518, at *3 (N.D. Cal. Oct. 15, 2025) (absent express limitations in the complaint, "once-per-week" assumptions are routinely accepted). Accordingly, going back four years before the complaint was filed: **Overtime** = 90,186 workweeks × $24.77 × 1.5 = **$3,351,362.**

27. **Meal Period Premiums.** Plaintiff alleges that "as part of DEFENDANTS' illegal payroll policies and practices to deprive their non-exempt employees all wages earned and due, DEFENDANTS required, permitted or otherwise suffered PLAINTIFF and CLASS MEMBERS to take less than the 30-minute meal period, or to work through them, and have failed to otherwise provide the required meal periods." Compl. ¶ 19. Plaintiff further alleges that "DEFENDANTS further violated California Labor Code §§ 226.7 and IWC Wage Order No. 8-2001, § 11 by failing to compensate PLAINTIFF and CLASS MEMBERS who were not provided with a meal period . . . one additional hour of compensation at each employee's regular rate of pay for each workday that a meal period was not provided." Compl. ¶ 20. The phrase "illegal payroll policies and practices" applied uniformly to "non-exempt employees" frames these violations as systemic and class-wide, directly supporting the assumption of at least one meal period violation per workweek. *See Montes*, 2026 WL 765424, at *5 (assuming two meal and two rest period violations per workweek based on allegations that the defendant engaged in a "pattern and practice of wage abuse").[2] Accordingly, going back three years before the complaint was filed: **Meal Periods** = 70,732 workweeks × $24.95 = **$1,764,763.**

28. **Rest Period Premiums.** Plaintiff similarly alleges that "as part of DEFENDANTS' illegal payroll policies and practices to deprive their non-exempt employees all wages earned and due, DEFENDANTS failed to provide rest periods to PLAINTIFF and CLASS MEMBERS as required under California Labor Code §§ 226.7 and 512." Compl. ¶ 24. Plaintiff further alleges that Defendants violated

[2] To be more precise, in *Montes*, the defendant calculated violations as 40% of shifts longer than 6.5 hours. Here, because the putative plaintiffs are full-time employees who work on average at least five 8-hour shifts per week, Defendants have not attempted this additional method of analysis.

California Labor Code § 226.7 "by failing to pay PLAINTIFF and CLASS MEMBERS who were not provided with a rest period . . . one additional hour of compensation at each employee's regular rate of pay for each workday that a rest period was not provided." Compl. ¶ 25. The identical "illegal payroll policies and practices" language used for both meal and rest period claims confirms that Plaintiff is alleging a single, uniform policy applied to all class members, supporting an assumption of at least one rest period violation per workweek. *See Montes*, 2026 WL 765424, at *5 (assuming two meal and two rest period violations per workweek based on allegations that the defendant engaged in a "pattern and practice of wage abuse"). Accordingly, going back three years before the complaint was filed: **Rest Periods** = 70,732 workweeks × $24.95 = **$1,764,763.**

29. **Waiting Time Penalties.** Plaintiff alleges that "DEFENDANTS have willfully failed to pay accrued wages and other compensation to PLAINTIFF and CLASS MEMBERS in accordance with California Labor Code §§ 201 and 202," Compl. ¶ 40, and that "PLAINTIFF and CLASS MEMBERS are entitled to all available statutory penalties, including the waiting time penalties provided in California Labor Code § 203." Compl. ¶ 41. The word "willfully" is critical – it tracks the precise statutory predicate for waiting time penalties under § 203, which are triggered only upon a willful failure to pay. By alleging willfulness as a class-wide fact, Plaintiff has placed the 30-day maximum penalty in controversy for every terminated class member. *See Casanares v. Freshrealm, Inc.*, 4:25-04249, 2025 WL 2701880, at *5 (N.D. Cal. Sept. 23, 2025) (courts accept a "100-percent violation rate where the plaintiff has (1) tied waiting-time penalties to other claims and (2) the defendant specifically accounts for only terminated employees"); *Crummie v. CertifiedSafety, Inc.*, 2017 WL 4544747, at *3 (N.D. Cal. Oct. 11, 2017) (where plaintiff alleges "putative class members were owed (and are still owed)" wages, it is "reasonable to assume waiting time penalties accrued to the thirty-day limit"); *Montes*, 2026 WL 765424, at *5 ("if a terminated employee experienced any violation alleged in the complaint, that employee was underpaid and thus did not receive all wages due at the time of their termination"). Accordingly, going back three years before the complaint was filed: **Waiting Time** = 551 terminated employees × $23.08/hr × 8 hrs/day × 30 days = **$3,052,099.**

30. **Wage Statement Penalties.** Plaintiff alleges that "DEFENDANTS routinely failed to provide PLAINTIFF and CLASS MEMBERS with timely, accurate, and itemized wage statements in

writing," Compl. ¶ 44, and that "DEFENDANTS knowingly and intentionally failed to provide PLAINTIFF and CLASS MEMBERS with timely, accurate, and itemized wage statements in accordance with California Labor Code § 226(a)." Compl. ¶ 45. Plaintiff further alleges that "PLAINTIFF and CLASS MEMBERS are entitled to all available statutory penalties, including but not limited to civil penalties pursuant to California Labor Code §§ 226(e), 226.3, and 1174.5." Compl. ¶ 46. The words "knowingly and intentionally" and "routinely" are the operative terms – specifically, under § 226(e), the $4,000 maximum penalty applies only where violations are "knowing and intentional," and Plaintiff has pleaded this exact standard as a class-wide fact, making the maximum per-employee penalty the appropriate in-controversy figure. Because Defendants pay on a weekly basis, any putative class member who worked for at least 41 weeks – and therefore received at least 41 wage statements – is a candidate for the maximum $4,000 recovery. *See* Farinha Decl. ¶ 9(i). Accordingly, going back one year before the complaint was filed: **Wage Statements** = 643 employees × $4,000 = **$2,572,000.**

31. Based on the workforce data set forth in the Farinha Declaration and the reasonable assumptions tied directly to the language and allegations of the Complaint, the amount in controversy conservatively exceeds $12 million when considering only these five categories of relief: [3]

| Claim | Amount |
|---|---|
| Overtime | $3,351,362 |
| Meal Period Premiums | $1,764,763 |
| Rest Period Premiums | $1,764,763 |
| Waiting Time Penalties | $3,052,099 |
| Wage Statement Penalties | $2,572,000 |
| Total (Before Attorney's Fees and Other Claims) | $12,504,987 |

32. The above total does not account for: (1) unpaid minimum wages – which Plaintiff alleges resulted from Defendants "requiring, permitting or suffering PLAINTIFF and CLASS MEMBERS to work off the clock" and "through meal and rest breaks" (Compl. ¶ 29) and associated liquidated damages

[3] It is also notable that Plaintiff's own Complaint is more aggressive with respect to the applicable statutes of limitations than the conservative figures used above. Whereas Defendants' calculations apply a four-year statute of limitations for overtime, three years for meal periods, rest periods, and waiting time, and one year for wage statements, the Complaint seeks damages going back four years for all claims. Compl. ¶ 5. Accordingly, the true amount in controversy under Plaintiff's own theory of the case is even greater.

under California Labor Code § 1194.2 (Compl. Prayer ¶ 4)[4]; (2) expense reimbursement claims under California Labor Code § 2802, which Plaintiff alleges Defendants "knowingly and willfully" failed to provide, "including but not limited to expenses for cell phone usage, and other employment-related expenses" (Compl. ¶ 49)[5]; (3) civil penalties under PAGA, California Labor Code §§ 2698-2699.5 (Compl. ¶ 60) ; or (4) attorneys' fees, which are expressly recoverable under multiple statutes pleaded in the Complaint, including California Labor Code §§ 218.5, 226, 1194, 2699, and 2802, and California Civil Code § 1021.5 (Compl. Prayer ¶ 9).[6] When these additional categories are included – as they must be, because all relief sought in the Complaint is properly considered in calculating the amount in controversy, see 28 U.S.C. § 1332(d)(6) – the total amount placed in controversy is substantially greater than $12 million and far exceeds CAFA's $5 million jurisdictional threshold.

33. Should Plaintiff mount a factual challenge to these allegations – i.e., one that "contests the truth of the plaintiff's factual allegations, usually by introducing evidence outside the pleadings" – Defendants are prepared to "support [their] jurisdictional allegations with competent proof" by a preponderance of the evidence. *Salter*, 974 F.3d at 964; *Arias*, 936 F.3d at 924 ("[w]hen a notice of removal plausibly alleges a basis for federal court jurisdiction, a district court may not remand the case back to state court without first giving the defendant an opportunity to show by a preponderance of the evidence that the jurisdictional requirements are met"). No such showing is required at this stage.

[4] Even if there were a minimum wage violation every *other* workweek, this would add $1,352,790 even at the lowest minimum wage rate (inclusive of liquidated damages): $15 per hour x one violation per workweek x 2.0 for liquidated damages x 90,186 workweeks. *See, e.g.*, *Peraino v. DNC Parks & Resorts at Tenaya, Inc.*, No. 25:cv-1130, 2025 WL 3022750, at *4 (S.D. Cal. Oct. 29, 2025) (reasonable to include 1 hour of overtime per workweek plus 1 hour of unpaid straight time every other workweek based on comparable allegations).

[5] For unreimbursed cell phone claims, courts in this district accept $12.50 per workweek in a four year statute of limitations. *See Gonzalez*, 2025 WL 2934518, at *5. Here, that adds $1,127,325 based on 90,186 workweeks.

[6] If attorneys' fees are considered, Plaintiff's counsel recently settled a comparable California wage and hour class action in which they sought $2,283,333.33 in attorneys' fees and costs – equal to 33⅓% of the gross settlement amount. *See Romero v. Select Employment Services, Inc.*, Case No. 2:19-cv-06369-TJH-AGR, Doc. No. 125 (C.D. Cal. March 23, 2026). Based on this, if this case proceeds as a class action through trial, it is reasonable to presume that Plaintiff will seek to recover at least 33.33% of any amounts awarded to the class. Adding fees at that rate would add more than $4.1 million to the $12 million figure set forth herein, bringing the total well in excess of $16 million. Even in the absence of evidence about specific fee awards, courts will consider attorneys' fees when calculating the amount in controversy under CAFA. *See, e.g.*, *Peraino v. DNC Parks & Resorts at Tenaya, Inc.*, 2025 WL 3022750, at *7 (reflexively authorizing a 25% benchmark fee on the full amount in controversy absent further evidence).

34. Plaintiff's allegations therefore place far more than the requisite $5 million in controversy. The jurisdictional amount-in-controversy requirement is met, and removal to this Court is proper under CAFA.

## IV. THIS COURT HAS JURISDICTION AND REMOVAL IS PROPER

35. In conclusion, based on the foregoing facts and allegations, this Court has original jurisdiction over this action pursuant to CAFA, 28 U.S.C. § 1332(d) because:

a. This is a civil action which is a class action within the meaning of § 1332(d)(1)(B);

b. The action involves a putative class of at least 100 persons as required by § 1332(d)(5)(B);

c. The amount in controversy exceeds $5 million, exclusive of interest and costs, as required by § 1332(d)(2) – specifically, at least $12 million based on five categories of relief alone, before accounting for minimum wage claims, liquidated damages, PAGA penalties, expense reimbursement, and attorneys' fees; and

d. At least minimal diversity exists, as Defendants are citizens of Delaware and Connecticut (not California) while Plaintiff is a citizen of California, as contemplated by § 1332(d)(2)(A).

Accordingly, this action is properly removable under 28 U.S.C. §§ 1441, 1446, and 1453.

36. The United States District Court for the Northern District of California is the federal judicial district encompassing the Contra Costa County Superior Court, where this action was originally filed, rendering venue in this District proper. 28 U.S.C. § 84(a).

37. Upon filing this Notice of Removal, Defendants will promptly furnish written notice to Plaintiff's counsel and will file and serve a copy of this Notice with the Clerk of the Contra Costa County Superior Court, as required by 28 U.S.C. § 1446(d).

DATED: April 17, 2026

Respectfully submitted,

SEYFARTH SHAW LLP

By: /s/ Alexander W. Simon
Michele J. Beilke
Julia Y. Trankiem
Alexander W. Simon

*Attorneys for Defendants*
Del Monte Capitol Meat Company, LLC; Allen Brothers 1893, LLC; The Chefs' Warehouse, Inc.; and The Chefs' Warehouse West Coast, LLC