SEYFARTH SHAW LLP
Michele J. Beilke (SBN 194098)
mbeilke@seyfarth.com
Julia Y. Trankiem (SBN 228666)
jtrankiem@seyfarth.com
Alex W. Simon (SBN 310842)
asimon@seyfarth.com
601 South Figueroa Street, Suite 3300
Los Angeles, California 90017-5793
Telephone:  (213) 270-9600
Facsimile:  (213) 270-9601

Attorneys for Defendants
DEL MONTE CAPITOL MEAT COMPANY, LLC;
ALLEN BROTHERS 1893, LLC; THE CHEFS'
WAREHOUSE, INC.; AND THE CHEFS' WAREHOUSE
WEST COAST, LLC

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LETICIA PAREJA MARTINEZ, an individual, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DEL MONTE CAPITOL MEAT COMPANY, LLC, a Delaware limited liability company; ALLEN BROTHERS 1893, LLC, a Delaware limited liability company; THE CHEFS' WAREHOUSE, INC., a Delaware corporation; THE CHEFS' WAREHOUSE WEST COAST, LLC, a Delaware limited liability company; and DOES 1 through 500, inclusive,<br><br>Defendants. | Case No. 3:26-CV-03267-JSC<br><br>**Hon. Jacqueline Scott Corley**<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION OF PLAINTIFF'S INDIVIDUAL CLAIMS, DISMISS CLASS CLAIMS, AND STAY ACTION (INCLUDING REPRESENTATIVE COMPONENT OF PAGA CLAIM)**<br><br>(*Filed concurrently with Notice of Motion; Declarations of Sahand Feizi and Jennifer Farinha; and [Proposed] Order*)<br><br>Date:        July 9, 2026<br>Time:        10:00 a.m.<br>Courtroom:   8<br><br>Complaint Filed:  February 23, 2026 |

# TABLE OF CONTENTS

                                                                                                    **Page**

I.    INTRODUCTION ................................................................................................................ 1

II.   BACKGROUND ................................................................................................................. 2

      A.    Plaintiff's Employment And Execution Of The Arbitration Agreement ........................... 2

      B.    Material Terms Of The Agreement ....................................................................... 3

      C.    Plaintiff Filed This Lawsuit Despite Having Agreed To Arbitrate ................................ 5

III.  LEGAL ARGUMENT ........................................................................................................ 5

      A.    THE ARBITRATION AGREEMENT IS ENFORCEABLE UNDER BOTH THE FAA
            AND CALIFORNIA LAW ............................................................................................. 5

            1.    The FAA And California Law Both Strongly Favor Arbitration ........................... 5

            2.    There Is A Valid Agreement Between The Parties ................................................. 7

            3.    Threshold Challenges, Including Unconscionability, Are Delegated To The
                  Arbitrator ................................................................................................................ 8

            4.    The Agreement Covers Plaintiff's Claims ............................................................. 9

            5.    All Defendants May Enforce The Agreement ..................................................... 10

            6.    The Individual Component Of Plaintiff's PAGA Claim Must Be Compelled To
                  Arbitration, And The Representative Component Stayed ..................................... 11

      B.    PLAINTIFF'S CLASS CLAIMS MUST BE DISMISSED ............................................. 13

      C.    THIS COURT MUST STAY THIS CASE PENDING ARBITRATION ........................ 14

IV.   CONCLUSION ................................................................................................................. 14

**TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Allied-Bruce Terminix Cos. v. Dobson*,
c (1995) ...................................................................................................................... 6

*Am. Express Co. v. Italian Colors Rest.*,
570 U.S. 228 (2013) ................................................................................................. 14

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2010) ................................................................................................... 5

*AT&T Techs. v. Communs. Workers of Am.*,
475 U.S. 643 (1986) ................................................................................................... 9

*Bacajol v. Aldi Foods Inc.*,
No. 25-cv-2963-JGB, 2026 WL 836840, at * 5 (C.D. Cal. March 19, 2026) .................................... 14

*Brennan v. Opus Bank*,
796 F.3d 1125 (9th Cir. 2015) ............................................................................... 7, 9

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
207 F.3d 1126 (9th Cir. 2000) ................................................................................... 7

*Circuit City Stores, Inc. v. Adams*,
532 U.S. 105 (2001) ................................................................................................... 6

*Citizens Bank v. Alafabco, Inc.*,
539 U.S. 52 (2003) (per curiam) ............................................................................... 6

*Daniel v. Fairway Indep. Mortg. Corp.*,
No. 25-cv-10994-JSC, 2026 WL 1076002 (N.D. Cal. Apr. 20, 2026) ............................................ 8

*Deneau v. Coastal Home Care Svc's, Inc.*,
744 F.Supp.3d 950 (N.D. Cal. 2024) ......................................................................... 8

*Epic Sys. Corp. v. Lewis*,
584 U.S. 497 (2018) ................................................................................................. 14

*First Options of Chicago, Inc. v. Kaplan*,
514 U.S. 938 (1995) .............................................................................................. 7, 13

*Fli-Lo Falcon, LLC v. Amazon.com, Inc.*,
97 F.4th 1190 (9th Cir. 2024) ................................................................................... 6

*Franklin v. Cmty. Reg'l Med. Ctr.*,
998 F.3d 867 (9th Cir. 2021) ................................................................................... 11

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
586 U.S. 63 (2019) ..................................................................................................... 8

ii

*Jeong v. Nexo Capital Inc.*,
No. 21-CV-02392-BLF, 2022 WL 3590329 (N.D. Cal. Aug. 22, 2022)........................................ 14

*Larios v. Twp. Bldg. Servs., Inc.*,
No. 25-1936, 2025 WL 3172309 (9th Cir. Nov. 13, 2025) .................................................... 6

*Laver v. Credit Suisse Sec. (USA), LLC*,
976 F.3d 841 (9th Cir. 2020) ........................................................................................ 13, 14

*Mitsubishi Motor Corp. v. Soler Chrysler-Plymouth, Inc.*,
473 U.S. 614 (1985)........................................................................................................... 6

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983).............................................................................................................. 6

*Oguejiofor v. Nissan*,
No. 11-cv-0544-EMC, 2011 WL 3879482 (N.D. Cal. Sept. 2, 2011).................................. 8

*Smith v. Spizzirri*,
601 U.S. 472 (2024)...................................................................................................... 2, 14

*Sonico v. Charter Communs., LLC*,
No. 19-cv-1842, 2021 WL 268637 (S.D. Cal. Jan. 27, 2021) ............................................ 7

*Viking River Cruises, Inc. v. Moriana*,
596 U.S. 639 (2022)................................................................................................ 2, 12, 13

**State Cases**

*Adolph v. Uber Techs., Inc.*,
14 Cal. 5th 1104 (2023) ............................................................................................ 2, 12, 13

*Boucher v. Alliance Title Co., Inc.*,
127 Cal. App. 4th 262 (2005) ........................................................................................... 10

*Diaz v. Sohnen Enterprises*,
34 Cal. App. 5th 126 (2019) .............................................................................................. 8

*Garcia v. Pexco, LLC*,
11 Cal. App. 5th 782 (2017) ........................................................................................ 10, 11

*Iskanian v. CLS Transportation Los Angeles, LLC*,
59 Cal. 4th 348 (2014) ..................................................................................................... 12

*Marin Storage & Trucking, Inc. v. Benco Contracting & Engineering, Inc.*,
89 Cal. App. 4th 1042 (2001) ............................................................................................ 7

*Samaniego v. Empire Today, LLC*,
205 Cal. App. 4th 1138 (2012) .......................................................................................... 6

*Victrola 89, LLC v. Jaman Properties 8 LLC*,
46 Cal. App. 5th 337 (2020) .............................................................................................. 6

DEFENDANTS' MPA ISO MOTION TO COMPEL ARBITRATION,
DISMISS CLASS CLAIMS, AND STAY ACTION

**Federal Statutes**

9 U.S.C. § 1 *et seq*..................................................................................................................... 3

9 U.S.C. § 2 .................................................................................................................................. 5

9 U.S.C. § 3 ................................................................................................................................ 14

**State Statutes**

Cal. Civ. Code § 1550.................................................................................................................. 7

California Arbitration Act.................................................................................................. 1, 3, 7, 14

California Private Attorney General Act of 2004, Cal. Lab. Code § 2698, *et seq*............................ 5, 12

Code of Civil Procedure § 1281.4............................................................................................ 13, 14

DEFENDANTS' MPA ISO MOTION TO COMPEL ARBITRATION,
DISMISS CLASS CLAIMS, AND STAY ACTION

## I.    INTRODUCTION

Plaintiff Leticia Pareja Martinez ("Plaintiff") asserts wage and hour claims under California state law against her former employer Del Monte Capitol Meat Company, LLC ("Del Monte") and related entities The Chefs' Warehouse, Inc. ("CW"), The Chefs' Warehouse West Coast, LLC ("CWWC"), and Allen Brothers 1893, LLC ("Allen Brothers") (together, "Defendants" or the "Company"). As a condition of employment, however, Plaintiff signed an Arbitration Agreement – first upon hire on June 29, 2022, and again during her employment on October 21, 2022 – requiring all disputes arising from her employment to be resolved through individual arbitration with the American Arbitration Association ("AAA"), and containing an express waiver of class and collective procedures. She worked under the Agreement for nearly three years, and now seeks to avoid it by styling her wage-and-hour claims as a putative class and representative action. This Court should enforce that Agreement. This is a textbook motion to compel:

**First**, the Arbitration Agreement is valid and enforceable. The Agreement expressly invokes the Federal Arbitration Act ("FAA") and is independently enforceable under the California Arbitration Act ("CAA"). Under either framework, the analysis is the same: there is a valid agreement, and it covers the dispute.

**Second**, all Defendants may enforce the Agreement. By its express terms, the Agreement applies to claims against Plaintiff's employer and "any of its affiliates, subsidiaries, or parent companies" – a definition that encompasses all four Defendants. In any event, Plaintiff's own Complaint expressly alleges that Defendants are joint employers, alter egos, an integrated enterprise, and agents of one another, and any non-signatory Defendant may therefore enforce the Agreement  under principles of equitable estoppel.

**Third**, threshold challenges to the Agreement's enforceability – including questions of unconscionability – have been delegated to the arbitrator. The Agreement provides that "the arbitrator shall have the exclusive authority to resolve any dispute relating to the formation, interpretation, applicability and enforceability of this Agreement." Any unconscionability or formation challenges Plaintiff may attempt to raise (other than challenges to the Class Action Waiver and the Representative Action Waiver specifically, which the Agreement reserves to the Court) must be decided by the arbitrator, not this Court.

DEFENDANTS' MPA ISO MOTION TO COMPEL ARBITRATION,
DISMISS CLASS CLAIMS, AND STAY ACTION

**Fourth**, the class action waiver is enforceable and mandates dismissal of Plaintiff's class claims. The waiver applies in any forum – arbitration or court – and survives even if arbitration is for some reason unavailable.

**Fifth**, Plaintiff's PAGA claim must be split: the individual component of her PAGA claim is compelled to arbitration alongside her other individual claims, and the non-individual representative component of her PAGA claim is stayed in this Court pending the outcome of that arbitration. *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639 (2022); *Adolph v. Uber Techs., Inc.*, 14 Cal. 5th 1104 (2023).

And **sixth**, the Court must stay this action pending arbitration. *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024).

Accordingly, Defendants respectfully request that this Court (1) compel Plaintiff to arbitrate her claims on an individual basis, (2) dismiss her class claims, and (3) stay this action (including the representative component of her PAGA claim) pending arbitration.

## II.    BACKGROUND

### A.    Plaintiff's Employment And Execution Of The Arbitration Agreement

Plaintiff was employed by Del Monte as a non-exempt, hourly production employee from approximately 2022 until her termination on September 25, 2025. (Declaration of Sahand Feizi ("Feizi Decl.") ¶¶ 1–3, 10.) She worked at Del Monte's Union City and, later, Richmond, California facilities. (*Id.*)

Plaintiff signed two materially identical iterations of the Arbitration Agreement during her employment. First, on June 29, 2022, during onboarding, Plaintiff electronically signed the Arbitration Agreement (the "June Agreement"). (Declaration of Jennifer Farinha ("Farinha Decl.") ¶ 15, Ex. A.) Second, on October 21, 2022, during her employment, Plaintiff signed an updated Arbitration Agreement (the "October Agreement"). (Farinha Decl. ¶ 17, Ex. B.)[1]

---

[1] The June Agreement and the October Agreement contain materially identical operative provisions – including the same governing-law clause, the same scope-of-claims language, the same delegation provision, the same Class Action Waiver, the same Representative Action Waiver, and the same severability clause. *Compare* Ex. A with Ex. B. Because the two iterations are materially identical for purposes of this Motion, they are referred to collectively as the "Arbitration Agreement" or "Agreement," and paragraph citations herein are to the October Agreement; the June Agreement contains substantively identical provisions. To the extent Plaintiff contends that the October Agreement

2

Plaintiff agreed to the terms of the Agreement as a condition of her at-will employment, and in consideration of her employment or continued employment with the Company (defined in the Agreement to include Plaintiff's employer and "any of its affiliates, subsidiaries, or parent companies," which encompasses all four Defendants – *see infra* Section III.A.5). (Agreement ¶ 1.) By signing the Agreement and continuing her employment, Plaintiff expressly acknowledged that she had received the Agreement and understood its terms, its consequences, and its binding effect. (Agreement, p. 5.) The Agreement states that the Company bound itself to the Agreement when it issued it to Plaintiff. (*Id.*)

**B.      Material Terms Of The Agreement**

The Agreement provides that the "Federal Arbitration Act ('FAA'), 9 U.S.C. § 1 *et seq.*, governs this Agreement." (Agreement ¶ 2.) The Agreement also states that it "evidences a transaction involving commerce." (*Id.*) Where the FAA does not apply, the Agreement expressly provides for California-law enforcement: "this Agreement shall otherwise be interpreted and enforced pursuant to the laws of the State in which the Employee last was employed by the Company" – which, here, is California. (*Id.*) The Agreement thus contains both an FAA primary basis and a CAA fallback basis for enforcement.

The Agreement broadly covers "any and all disputes between" Plaintiff and the Company, "including, but not limited to, disputes arising out of or relating to the terms and conditions of [Plaintiff's] employment or the termination thereof." (Agreement ¶ 3.) The Agreement expressly identifies covered claims to include "claims brought for unpaid wages, unpaid compensation, penalties for missed meal or rest breaks, overtime, reimbursement of business expenses, claims under applicable federal or state statutes that govern the terms and conditions of employment, wrongful termination, unfair competition, discrimination, harassment or unlawful retaliation, equitable law, or otherwise." (*Id.*)

---

was not validly formed, the June Agreement remains in force and is independently enforceable on the same terms.

Notably, the June Agreement is between Plaintiff and Del Monte, her employer, as well as its "affiliates, subsidiaries, or parent companies," which by its express terms includes all Defendants. (Ex. A.) The October Agreement is between Plaintiff and CWWC and its "affiliates, subsidiaries, or parent companies," which by its express terms includes all Defendants. (Ex. B ¶ 1.) Plaintiff is therefore bound to all Defendants under both Agreements by their express terms. *See infra* Section III.A.5 regarding non-signatory enforcement.

DEFENDANTS' MPA ISO MOTION TO COMPEL ARBITRATION,
DISMISS CLASS CLAIMS, AND STAY ACTION

The Agreement specifies that binding arbitration will proceed with the AAA under its Employment Arbitration Rules and Mediation Procedures, before a single neutral arbitrator. (Agreement ¶¶ 3, 8.) Other relevant terms include:

- **Delegation.** "[T]he arbitrator shall have the exclusive authority to resolve any dispute relating to the formation, interpretation, applicability and enforceability of this Agreement, including, without limitation, all issues regarding the arbitrability of any Claim." (Agreement ¶ 8.) The only carve-out is for "the enforceability of the Class Action Waiver and the Representative Action Waiver (which must be decided by a court of competent jurisdiction)." (*Id.*)

- **Discovery.** The arbitrator must allow the parties discovery sufficient to adequately arbitrate their claims and defenses. (Agreement ¶ 9.)

- **Written Award.** The arbitrator must render a written decision that reveals the essential findings and conclusions. (*Id.*)

- **Fees and Costs.** Plaintiff will not bear any cost or expense as a result of arbitration that she would not be required to pay in court. (Agreement ¶ 10.)

- **Remedies.** The arbitrator may award any remedy available in court, including attorney's fees and costs to the prevailing party where authorized by law. (Agreement ¶ 11.)

- **Severability.** Any unenforceable provision is severable, and the remainder of the Agreement remains binding. (Agreement ¶ 12.)

The Agreement also contains an express class action waiver. Paragraph 3 provides:

To the fullest extent permitted by law, Employee and the Company hereby expressly waive…their right to bring, maintain, participate in, or receive money from, any class, collective, or representative action, whether in court, arbitration or any other proceeding.

Paragraph 4 reinforces the class waiver:

To the extent permissible by law, there shall be no right or authority for any dispute to be arbitrated as a class action or collective action…. THIS MEANS THAT ALL DISPUTES BETWEEN EMPLOYEE AND THE COMPANY ARISING OUT OF EMPLOYEE'S EMPLOYMENT OR THE TERMINATION OF EMPLOYEE'S EMPLOYMENT SHALL PROCEED IN ARBITRATION SOLELY ON AN INDIVIDUAL BASIS….

And above her signature, in bold capital letters, Plaintiff agreed:

4

EMPLOYEE HEREBY KNOWINGLY AND VOLUNTARILY WAIVES HIS OR HER LEGAL RIGHTS TO CLASS … PROCEDURES…

(Agreement ¶ 14.)

Finally, Paragraph 5 contains an Individual Arbitration Provision (labeled in the Agreement as the "Representative Action Waiver") that limits the arbitrator's authority to individual claims and prohibits representative or PAGA claims from being arbitrated on a representative basis:

> To the extent permissible by law, there shall be no right or authority for any dispute to be arbitrated as a representative action or as a private attorney general action, including but not limited to claims brought pursuant to the California Private Attorney General Act of 2004, Cal. Lab. Code § 2698, et seq…. THE ARBITRATOR'S AUTHORITY TO RESOLVE ANY DISPUTE AND TO MAKE WRITTEN AWARDS WILL BE LIMITED TO EMPLOYEE'S INDIVIDUAL CLAIMS.

This provision does not waive Plaintiff's right to pursue non-individual representative claims in court; it instead limits the scope of the arbitration to individual claims.

### C.   Plaintiff Filed This Lawsuit Despite Having Agreed To Arbitrate

On February 3, 2026, Plaintiff filed this putative class action against Defendants, asserting nine wage and hour claims: (1) Failure to Provide Required Meal Periods; (2) Failure to Provide Required Rest Periods; (3) Failure to Pay Minimum Wages; (4) Failure to Pay Overtime Wages; (5) Failure to Pay All Wages Due to Discharged and Quitting Employees; (6) Failure to Furnish Accurate Itemized Wage Statements; (7) Failure to Indemnify Employees for Necessary Expenditures Incurred in Discharge of Duties; (8) Unfair and Unlawful Business Practices; and (9) Penalties under the Labor Code Private Attorneys General Act of 2004. Plaintiff's Complaint expressly alleges that all four Defendants are joint employers, alter egos, an integrated enterprise, and agents of one another. (Compl. ¶¶ 11, 12, 14.)

After Plaintiff filed her lawsuit, the undersigned counsel requested that Plaintiff agree to dismiss the Complaint and submit her individual claims to arbitration. Plaintiff, through counsel, declined to do so.

## III.   LEGAL ARGUMENT

### A.   THE ARBITRATION AGREEMENT IS ENFORCEABLE UNDER BOTH THE FAA AND CALIFORNIA LAW

#### 1.   The FAA And California Law Both Strongly Favor Arbitration

The FAA was enacted "in response to widespread judicial hostility to arbitration agreements." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2010). Under Section 2, written arbitration agreements "shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. The Supreme Court has directed

5

courts to "rigorously enforce" arbitration agreements. *Mitsubishi Motor Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985); *see also Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 109–19 (2001) (FAA applies to employer-employee arbitration agreements). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

Here, the FAA governs. First, the Arbitration Agreement specifically states that the FAA governs; this, alone, is enough to trigger the FAA. *See Victrola 89, LLC v. Jaman Properties 8 LLC*, 46 Cal. App. 5th 337, 355 (2020) ("when an agreement provides that its 'enforcement' shall be governed by the FAA, the FAA governs a party's motion to compel arbitration"). Second, this is an employment arbitration agreement, which is covered by the FAA. *See Circuit City,* 532 U.S. at 109-19 (2001) (broadly accepting arbitration provision "relating to [employee's] application or candidacy for employment, employment and/or cessation of employment" as contract of employment). Third, the Arbitration Agreement is a "contract evidencing a transaction involving commerce," and thus subject to the FAA. The Agreement itself recites that it "evidences a transaction involving commerce" (Agreement ¶ 2), and the FAA's "involving commerce" requirement is construed broadly to extend to the full reach of the Commerce Clause. *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 277 (1995); Citizens Bank v. Alafabco, Inc., 539 U.S. 52, 56 (2003) (per curiam). Further, Del Monte is a subsidiary of CW, a Connecticut-based food distribution company engaged in interstate commerce, and Plaintiff's employment at a Del Monte California facility plainly "involves commerce" for FAA purposes. *See Larios v. Twp. Bldg. Servs., Inc.*, No. 25-1936, 2025 WL 3172309, at *2 (9th Cir. Nov. 13, 2025) (FAA applies in an employment context where employer operates and employs workers in multiple states).[2]

California law independently mandates the same result. California has a "strong public policy in favor of arbitration," and "any doubts regarding the validity of an arbitration agreement are resolved in favor of arbitration." *Samaniego v. Empire Today, LLC*, 205 Cal. App. 4th 1138, 1144 (2012).

---

[2] Although the FAA has certain exemptions, none are applicable here, and have not been raised in meet and confer discussions. Notably, "the party opposing arbitration . . . bear[s] the burden of establishing that the exemption applies." *Fli-Lo Falcon, LLC v. Amazon.com, Inc.*, 97 F.4th 1190, 1194 (9th Cir. 2024). Defendants reserve the right to oppose any attempted application of an FAA exemption on reply, oral argument, or evidentiary hearing, only if necessary.

6

Even if the FAA were inapplicable for any reason, the Agreement is independently enforceable under California law, as expressly provided in Paragraph 2 of the Agreement. Paragraph 2 specifically provides that outside of the FAA, "this Agreement shall otherwise be interpreted and enforced pursuant to the laws of the State in which the Employee last was employed by the Company" – here, California. The Agreement thus contains both an FAA primary basis and a CAA fallback basis for enforcement, and is independently enforceable under either.

### 2.    There Is A Valid Agreement Between The Parties

The Court's inquiry on a motion to compel arbitration is limited to "two 'gateway' issues: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). "If the response is affirmative on both counts, then the Act requires the court to enforce the arbitration agreement in accordance with its terms." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

To evaluate the validity of an arbitration agreement, courts apply "ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). In California, a valid contract exists where: (1) the parties are capable of contracting; (2) there was mutual assent; (3) the contract had a lawful object; and (4) the contract is supported by sufficient cause or consideration. Cal. Civ. Code § 1550. Because there can be no dispute that the parties were capable of contract formation, and that arbitration is a lawful object, Defendants quickly address assent and consideration below.

**Mutual Assent.** "[A] signature is a clear manifestation of assent" under California law. *Sonico v. Charter Communs., LLC*, No. 19-cv-1842, 2021 WL 268637, at *7 (S.D. Cal. Jan. 27, 2021) (citing *Marin Storage & Trucking, Inc. v. Benco Contracting & Engineering, Inc.*, 89 Cal. App. 4th 1042, 1049 (2001)). Plaintiff manifested her intent to be bound by the Agreement through her DocuSign signature on the June Agreement on June 29, 2022, and again through her handwritten signature on the October Agreement on October 21, 2022. (Farinha Decl. Exs. A & B.) Thus, her assent here is particularly clear because she signed the Agreement twice – each time manifesting her agreement to arbitrate.

DEFENDANTS' MPA ISO MOTION TO COMPEL ARBITRATION,
DISMISS CLASS CLAIMS, AND STAY ACTION

Plaintiff also manifested assent through her continued employment. *Diaz v. Sohnen Enterprises,* 34 Cal. App. 5th 126, 129 (2019) ("California law in this area is settled: when an employee continues his or her employment after notification that an agreement to arbitration is a condition of continued employment, that employee has impliedly consented to the arbitration agreement"); *Deneau v. Coastal Home Care Svc's, Inc.*, 744 F.Supp.3d 950, 955 (N.D. Cal. 2024) (following *Diaz*). Plaintiff received and signed the June Arbitration Agreement upon hire, was told that arbitration was a condition of her continued employment, signed the October Agreement during her employment, and remained employed for nearly three years thereafter. (Feizi Decl. ¶ 15; Farinha Decl. ¶ 4.)

**Consideration.** A mutual promise to arbitrate is sufficient consideration to support an arbitration agreement. *Oguejiofor v. Nissan*, No. 11-cv-0544-EMC, 2011 WL 3879482, at *3 (N.D. Cal. Sept. 2, 2011) ("under California case law, a mutual promise to arbitrate is sufficient to establish consideration"). The parties' mutual agreement here satisfies that requirement. (Agreement ¶ 3.)

### 3.   Threshold Challenges, Including Unconscionability, Are Delegated To The Arbitrator

To the extent Plaintiff seeks to challenge the Agreement on grounds of unconscionability or otherwise, those threshold challenges have been delegated to the arbitrator. The Agreement expressly provides:

> [T]he arbitrator shall have the exclusive authority to resolve any dispute relating to the formation, interpretation, applicability and enforceability of this Agreement, including, without limitation, all issues regarding the arbitrability of any Claim.

(Agreement ¶ 8.) The sole carve-out reserved for the Court is "the enforceability of the Class Action Waiver and the Representative Action Waiver." (*Id.*)

It is Plaintiff's burden to establish unconscionability. She cannot satisfy that burden here, but more importantly, she does not get to litigate it in this Court. "When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract. In those circumstances, a court possesses no power to decide the arbitrability issue." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68 (2019). The delegation provision sends those questions to the arbitrator. *See Daniel v. Fairway Indep. Mortg. Corp.*, No. 25-cv-10994-JSC, 2026 WL 1076002, at *4 (N.D. Cal. Apr. 20, 2026) (delegating unconscionability issues to the arbitrator pursuant to a comparably clear and unmistakable

8

delegation provision). Even without such a express delegation provision, the Ninth Circuit has held that incorporation of the AAA Rules alone – which the Agreement does– can independently constitute clear and unmistakable evidence of delegation. *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) ("we hold that incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability"). With its express delegation provision plus the incorporation of the AAA Rules, the Agreement leaves no doubt that only an arbitrator can determine questions about formation, interpretation, applicability, and enforceability.

The Agreement is, in any event, manifestly not unconscionable. It is bilateral, provides for AAA-administered arbitration before a neutral arbitrator (Agreement ¶ 8), permits full discovery (Agreement ¶ 9), requires a written, reviewable award (*id.*), imposes no costs on Plaintiff that she would not bear in court (Agreement ¶ 10), and preserves all remedies available in court including attorney's fees (Agreement ¶ 11). Defendants reserve all arguments on this point and address it here only to preserve the issue.

### 4.    The Agreement Covers Plaintiff's Claims

"[T]here is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs. v. Communs. Workers of Am.*, 475 U.S. 643, 649 (1986) (internal quotations omitted).

The Agreement broadly covers "any and all disputes" between the Company and Plaintiff, "including, but not limited to, disputes arising out of or relating to the terms and conditions of [Plaintiff's] employment or the termination thereof." (Agreement ¶ 3.) The Agreement expressly identifies every category of claim Plaintiff asserts in her Complaint – "unpaid wages, unpaid compensation, penalties for missed meal or rest breaks, overtime, reimbursement of business expenses, [and] claims under federal or state statutes that govern the terms and conditions of employment" – as covered claims. (*Id.*) The first eight of Plaintiff's nine causes of action fall squarely within the Agreement's scope.

Plaintiff's Ninth Cause of Action for PAGA penalties is also covered, but it deserves special treatment, addressed in Section III.A.6 below.

**5.      All Defendants May Enforce The Agreement**

Plaintiff was directly employed by Del Monte. The June Agreement is between Plaintiff and Del Monte and "any of its affiliates, subsidiaries, or parent companies." (Ex. A ¶ 1.) The October Agreement is between Plaintiff and CWWC and "any of its affiliates, subsidiaries, or parent companies." (Ex. B ¶ 1.) Thus, at minimum, Del Monte and CWWC are parties to Plaintiff's arbitration agreements, and CW and Allen Brothers are expressly included within the Agreements' definition of the "Company" as affiliates, subsidiaries, or parent companies. Plaintiff's own allegations independently confirm that all Defendants may enforce the Agreement because she alleges that they acted as joint employers, alter egos, an integrated enterprise, and agents of one another. (Compl. ¶¶ 11, 12, 14.)

**a.      By Its Express Terms, the Agreement Applies to All Defendants**

Both iterations of the Arbitration Agreement define the "Company" to include not only the named entity, but also that entity's "affiliates, subsidiaries, or parent companies." (Ex. A ¶ 1; Ex. B ¶ 1.) The June Agreement therefore extends beyond Del Monte to its covered related entities, and the October Agreement likewise extends beyond CWWC to its covered related entities. Defendants' evidence establishes that CW is Del Monte's parent and that Allen Brothers is an affiliated entity within that defined corporate family. (Farinha Decl. ¶ 2.) Because Plaintiff agreed to arbitrate disputes with the "Company" as so defined, all Defendants may enforce the Agreements according to their terms.

**b.      Even If Any Defendant Were Treated As A Nonsignatory, Plaintiff Is Equitably Estopped From Avoiding Arbitration**

Even if any Defendant were viewed as a nonsignatory to one or both iterations of the Arbitration Agreement, Plaintiff is equitably estopped from resisting arbitration as to that Defendant. California law permits a nonsignatory defendant to enforce an arbitration agreement against a signatory plaintiff where the plaintiff's claims against the nonsignatory are "intimately founded in and intertwined with" the contractual relationship governed by the agreement, and where the claims are based on the same facts and are inherently inseparable from the arbitrable claims against a signatory. *Garcia v. Pexco, LLC,* 11 Cal. App. 5th 782, 786–88 (2017); *Boucher v. Alliance Title Co., Inc.,* 127 Cal. App. 4th 262, 271–73 (2005). The Ninth Circuit has likewise held that, under California law, equitable estoppel prevents a signatory employee from avoiding arbitration by suing only a nonsignatory entity where the employee's

wage-and-hour claims are rooted in and inseparable from the employment relationship governed by the arbitration agreement. *Franklin v. Cmty. Reg'l Med. Ctr.*, 998 F.3d 867, 874–76 (9th Cir. 2021).

Those principles apply here. Plaintiff does not plead distinct conduct by distinct entities; she alleges instead that all Defendants were her joint employers and acted as alter egos, affiliates, integrated enterprises, and agents of one another. (Compl. ¶¶ 11, 12, 14.) She then asserts the same wage-and-hour theories against all Defendants collectively, based on the same alleged employment relationship and the same alleged course of conduct. Her claims are therefore not merely parallel to the arbitration agreement – they arise from and depend upon the same employment relationship that the Agreement governs. Having chosen to plead a single, integrated employment relationship in order to impose liability on all Defendants, Plaintiff cannot disavow that same relationship to avoid the Agreement requiring that employment disputes be arbitrated. *Garcia,* 11 Cal. App. 5th at 786–88; *Franklin,* 998 F.3d at 874-76.

### c. Plaintiff's Agency Allegations Independently Permit Enforcement By Any Defendant Treated As A Nonsignatory

Agency provides an independent basis for enforcement. *Garcia* held that a nonsignatory may enforce an arbitration agreement where the plaintiff alleges that the nonsignatory acted as the agent of a signatory, and found the agency exception applicable where the plaintiff alleged a joint-employer relationship and asserted identical wage claims against all defendants without distinction. *Garcia,* 11 Cal. App. 5th at 786-88. Plaintiff alleges the same here. Her Complaint expressly alleges that Defendants acted as agents of one another and that each was responsible for the acts and omissions of the others. (Compl. ¶¶ 11, 12, 14.) Those allegations independently permit any Defendant that the Court views as a nonsignatory to invoke the Agreement under agency principles.

In sum, all Defendants may enforce the Arbitration Agreement. Del Monte and CWWC are parties to Plaintiff's arbitration agreements, CW and Allen Brothers are expressly included within the Agreements' definition of the "Company," and, in any event, Plaintiff's own allegations independently require arbitration as to all Defendants under equitable estoppel and agency principles.

### 6. The Individual Component Of Plaintiff's PAGA Claim Must Be Compelled To Arbitration, And The Representative Component Stayed

The Agreement directly addresses PAGA. Paragraph 5 provides:

11

> To the extent permissible by law, there shall be no right or authority for any dispute to be arbitrated as a representative action or as a private attorney general action, including but not limited to claims brought pursuant to the California Private Attorney General Act of 2004, Cal. Lab. Code § 2698, *et seq*. ("Representative Action Waiver"). THIS MEANS THAT, TO THE EXTENT CONSISTENT WITH APPLICABLE LAW, EMPLOYEE MAY NOT SEEK RELIEF ON BEHALF OF ANY OTHER PARTIES IN ARBITRATION, INCLUDING BUT NOT LIMITED TO SIMILARLY AGGRIEVED EMPLOYEES. THE ARBITRATOR'S AUTHORITY TO RESOLVE ANY DISPUTE AND TO MAKE WRITTEN AWARDS WILL BE LIMITED TO EMPLOYEE'S INDIVIDUAL CLAIMS.

(Agreement ¶ 5.) Outside of this provision, the Agreement makes clear that it otherwise covers "any and all disputes between [the Company and Employee], including but not limited to disputes arising out of or relating to, or resulting from the Employee's employment with the Company."

The Supreme Court held in *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639 (2022), that the FAA preempts the rule of *Iskanian v. CLS Transportation Los Angeles, LLC*, 59 Cal. 4th 348 (2014), to the extent *Iskanian* prohibited the division of PAGA claims into individual and non-individual components. Under *Viking River*, the individual component of a PAGA claim – the component asserting Labor Code violations sustained by the plaintiff herself – may be compelled to arbitration consistent with the parties' arbitration agreement. The California Supreme Court subsequently clarified in *Adolph v. Uber Technologies, Inc.*, 14 Cal. 5th 1104 (2023), that a PAGA plaintiff retains standing to pursue non-individual (representative) PAGA claims in court even after her individual PAGA claim is compelled to arbitration. *Adolph* thus dictates the proper procedural treatment: the Court compels the individual PAGA claim to arbitration, and the non-individual representative PAGA claim remains in this Court but is stayed pending the outcome of the arbitration.

Read in light of *Viking River* and *Adolph*, the Representative Action Waiver does precisely what those decisions allow: it limits the arbitrator's authority on a PAGA claim to "EMPLOYEE'S INDIVIDUAL CLAIMS" (Agreement ¶ 5), while leaving Plaintiff's non-individual representative PAGA claim to be addressed in court. The Waiver does not strip Plaintiff of her ability to pursue representative PAGA relief altogether on behalf of the LWDA and other aggrieved employees; it instead allocates the individual component of the PAGA claim to arbitration and leaves the non-individual component subject to the rules governing PAGA litigation in court. To the extent Plaintiff contends that any portion of the Representative Action Waiver impermissibly waives her ability to pursue non-

12

individual PAGA claims, the severability clause (Agreement ¶ 12) preserves the operative effect of the Waiver: the individual component is compelled to arbitration consistent with *Viking River*, and the non-individual component remains in court consistent with *Adolph*.

Applying that framework here:

*First*, the individual component of Plaintiff's PAGA claim — *i.e.*, Plaintiff's claim that she personally suffered Labor Code violations — falls within the broad scope of the Agreement. (Agreement ¶ 3.) It must be compelled to arbitration on an individual basis.

*Second*, the non-individual representative component of Plaintiff's PAGA claim – *i.e.*, the claim asserted on behalf of other aggrieved employees – should be stayed pending the arbitration of Plaintiff's individual claims, including the individual component of the PAGA claim. *Adolph*, 14 Cal. 5th at 1124 ("[T]he trial court may exercise its discretion to stay the non-individual claims pending the outcome of the arbitration pursuant to section 1281.4 of the Code of Civil Procedure"). A stay is appropriate because the arbitrator's findings on Plaintiff's individual claims and the individual component of the PAGA claim — including whether she is in fact an "aggrieved employee" — will inform her standing to continue prosecuting the representative claim in this Court.

*Third*, to the extent Plaintiff seeks to challenge any portion of the Representative Action Waiver in Paragraph 5 of the Agreement, that question is reserved for the Court (not the arbitrator) under the express terms of the delegation provision. (Agreement ¶ 8.) Consistent with *Viking River* and *Adolph*, the Representative Action Waiver is enforceable to the extent it requires the individual component to proceed in arbitration, but the non-individual representative component survives in court under *Adolph*.

In sum, this Court should (1) compel Plaintiff's individual PAGA claim to arbitration, and (2) stay Plaintiff's non-individual representative PAGA claim pending completion of that arbitration.

### B.    PLAINTIFF'S CLASS CLAIMS MUST BE DISMISSED

Regardless of whether arbitration is compelled, Plaintiff's class claims must be dismissed under the express class action waiver in the Agreement. The class action waiver is "conceptually distinct" from the agreement to arbitrate. *Laver v. Credit Suisse Sec. (USA), LLC*, 976 F.3d 841, 846 (9th Cir. 2020). A class action waiver is "a promise to forgo a procedural right to pursue class claims" — in other words, an

DEFENDANTS' MPA ISO MOTION TO COMPEL ARBITRATION,
DISMISS CLASS CLAIMS, AND STAY ACTION

"agreement not to pursue class litigation." *Id.* at 846–47. By contrast, an agreement to arbitrate "is a promise to have a dispute heard in some forum other than a court." *Id.* at 846. The Supreme Court, in upholding a class action waiver in an arbitration agreement, rejected the notion that there is an entitlement to class proceedings. *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 234 (2013); *Epic Sys. Corp. v. Lewis,* 584 U.S. 497, 502 (2018) ("Congress has instructed in the [FAA] that arbitration agreements providing for individualized proceedings must be enforced").

The Agreement contains an express class action waiver in three separate places: Paragraph 3 (waiving the right to "bring, maintain, participate in, or receive money from, any class… action, whether in court, arbitration or any other proceeding"); Paragraph 4 (mandating arbitration "solely on an individual basis"); and Paragraph 14 (the bold, capitalized waiver above Plaintiff's signature).

Importantly, class action waivers are enforceable under California law as well, even if the FAA does not apply. *See, e.g.*, *Bacajol v. Aldi Foods Inc.*, No. 25-cv-2963-JGB, 2026 WL 836840, at * 5 (C.D. Cal. March 19, 2026) (finding class action waiver valid under California law); *Jeong v. Nexo Capital Inc.*, No. 21-CV-02392-BLF, 2022 WL 3590329, at *16 (N.D. Cal. Aug. 22, 2022) (enforcing standalone class waiver). And the Agreement's severability clause (Agreement ¶ 12) ensures that even if any other provision of the Agreement were found unenforceable, the class action waiver would remain in effect.

In short: regardless of which forum hears Plaintiff's claims, those claims must proceed on an individual basis.

### C.    THIS COURT MUST STAY THIS CASE PENDING ARBITRATION

After compelling Plaintiff's individual claims to arbitration, this Court must stay this case. "When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding." *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024); *see also* 9 U.S.C. § 3. The same result obtains under the CAA. Cal. Civ. Proc. Code § 1281.4.

## IV.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court enter an order: (1) compelling Plaintiff to arbitrate her individual claims, including the individual component of her PAGA claim; (2) dismissing Plaintiff's class claims; (3) staying the non-individual representative component of

her PAGA claim pending completion of arbitration; and (4) staying this action in its entirety pending arbitration.

DATED: June 4, 2026                              Respectfully submitted,

                                                 SEYFARTH SHAW LLP

                                         By: _____
                                                 Michele J. Beilke
                                                 Julia Y. Trankiem
                                                 Alex W. Simon
                                                 Attorneys for Defendants
                                                 DEL MONTE CAPITOL MEAT COMPANY,
                                                 LLC; ALLEN BROTHERS 1893, LLC; THE
                                                 CHEFS' WAREHOUSE, INC.; AND THE
                                                 CHEFS' WAREHOUSE WEST COAST, LLC

15

DEFENDANTS' MPA ISO MOTION TO COMPEL ARBITRATION,
DISMISS CLASS CLAIMS, AND STAY ACTION