SEYFARTH SHAW LLP
Michele J. Beilke (SBN 194098)
mbeilke@seyfarth.com
Julia Y. Trankiem (SBN 228666)
jtrankiem@seyfarth.com
Alex W. Simon (SBN 310842)
asimon@seyfarth.com
601 South Figueroa Street, Suite 3300
Los Angeles, California 90017-5793
Telephone:  (213) 270-9600
Facsimile:   (213) 270-9601

Attorneys for Defendants
Del Monte Capitol Meat Company, LLC; Allen Brothers
1893, LLC; The Chefs' Warehouse, Inc.; and The Chefs'
Warehouse West Coast, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LETICIA PAREJA MARTINEZ, an individual, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DEL MONTE CAPITOL MEAT COMPANY, LLC, a Delaware limited liability company; ALLEN BROTHERS 1893, LLC, a Delaware limited liability company; THE CHEFS' WAREHOUSE, INC., a Delaware corporation; THE CHEFS' WAREHOUSE WEST COAST, LLC, a Delaware limited liability company; and DOES 1 through 500, inclusive,<br><br>Defendants. | Case No. 3:26-cv-03267-JSC<br><br>**DECLARATION OF JENNIFER FARINHA IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION** |

DECLARATION OF JENNIFER FARINHA IN SUPPORT OF MOTION TO COMPEL ARBITRATION

## DECLARATION OF JENNIFER FARINHA

I, Jennifer Farinha, declare as follows:

1.     I am over the age of 18 and competent to give this Declaration. I am currently employed as Human Resources Director, a position I have held since May 2021, with responsibility for providing human resources support to employees of Del Monte Capitol Meat Company, LLC ("Del Monte"). Del Monte does business as "Allen Brothers." This Declaration is based upon my personal knowledge and information reasonably available to me in my capacity as Human Resources Director, including my review of business records maintained by Del Monte in the ordinary course of business. If called and sworn as a witness, I could and would competently testify to the matters set forth herein.

2.     My employer, The Chefs' Warehouse West Coast, LLC ("CWWC"), Allen Brothers 1893, LLC, and Del Monte are affiliates that share the same corporate parent, The Chefs' Warehouse, Inc.

3.     As Human Resources Director, I am familiar with the job duties performed by Del Monte employees, and I have access to the personnel files and payroll records of current and former employees of Del Monte. These personnel files and payroll records are created and maintained in the regular course of Del Monte's business, at or near the time of the events recorded, by persons with knowledge of the information recorded therein. These records include the personnel file and payroll records for Plaintiff Leticia Pareja Martinez ("Plaintiff").

4.     Based on my review of Del Monte's business records, Plaintiff was employed by Del Monte from on or about June 29, 2022 until her separation on or about September 25, 2025.

5.     Throughout Plaintiff's tenure and through the present, mandatory employment arbitration has been a Del Monte company policy, as reflected in Del Monte's employee handbook and stand-alone arbitration agreements applicable to all Del Monte employees.

6.     As a result of my job duties as Human Resources Director, I am personally familiar with Del Monte's arbitration policy and with the policies and practices in place for newly-hired and current employees to review and complete employment-related documentation, including the Arbitration Agreement. I am also familiar with Del Monte's human resources management systems, to which I have regular access and which I regularly use in the performance of my job responsibilities.

DECLARATION OF JENNIFER FARINHA IN SUPPORT OF MOTION TO COMPEL ARBITRATION

7.      Del Monte refers to the process by which a new employee reviews and completes new-hire documents as "onboarding." As part of the onboarding process, Del Monte employees nationwide are required to sign the mutual Arbitration Agreement as a condition of employment and continued employment. Employees cannot complete the hiring process or be paid for work performed for Del Monte until they complete the onboarding process. As described more fully below, Del Monte's standard practice is to make both English and Spanish versions of the Arbitration Agreement available to every employee during onboarding and at the time of any update to the Agreement.

8.      As Human Resources Director, I am familiar with and have access to the secure, online digital recruiting and onboarding platform known as "DayForce." At the time Del Monte hired Plaintiff, individuals hired by Del Monte used DayForce to electronically review and sign onboarding documents, including the Arbitration Agreement.

9.      Each DayForce user accesses the platform using a unique log-in username and a password that the user creates. Del Monte does not have access to, and cannot view, user passwords. Each login to DayForce is accomplished using these user-specific credentials.

10.     Upon logging into DayForce for the first time, new users are presented with a "Welcome Message" and instructed to complete various "Onboarding Forms," among other tasks.

11.     Among these onboarding tasks is signing the Arbitration Agreement. To access and review the Arbitration Agreement in DayForce, a user must click on the name of the document on the platform. If it is the first document the user intends to sign on DayForce, the user is prompted to adopt a digital signature through "DocuSign" in a designated space on the user's device screen.

12.     After a user adopts his or her digital signature through DocuSign, the user is able to electronically apply that signature to sign documents on DayForce, including the Arbitration Agreement.

13.     DayForce provides the user with the option to save or download a PDF copy of the Arbitration Agreement bearing the electronic signature, either at the time of execution or thereafter.

14.     Employees are provided adequate time to review and complete documents on DayForce, including the Arbitration Agreement in either English or Spanish, at the employee's preference. As a matter of policy, Del Monte does not pressure employees to sign the Arbitration Agreement within any specified time period. To my knowledge, no employee has ever complained that the time given to review

DECLARATION OF JENNIFER FARINHA IN SUPPORT OF MOTION TO COMPEL ARBITRATION

the Arbitration Agreement was insufficient, nor has any employee ever requested additional time to review it.

15. Consistent with the process described above, during her onboarding, Plaintiff was required to review and agree to the Arbitration Agreement, among other onboarding documents, through DayForce. Plaintiff electronically signed the Arbitration Agreement on June 29, 2022. A true and correct copy of the Arbitration Agreement electronically signed and executed by Plaintiff on June 29, 2022 is attached hereto as **Exhibit A** (the "June 2022 Agreement").

16. Unless a person is logged into DayForce using an employee's unique user ID and password, there is no way to create an electronic acknowledgment or signature in DayForce in that employee's name on any onboarding document or other policy paperwork. Accordingly, unless someone was logged into DayForce using Plaintiff's unique user ID and password, there would have been no way to generate the electronic DocuSign signature appearing in her name on the June 2022 Agreement or any other document she completed through DayForce.

17. Through the same DayForce account that Plaintiff was required to securely maintain, Plaintiff continued to use the DayForce platform throughout her employment with Del Monte, including for purposes of reviewing and authorizing her timecards.

18. From time to time, Del Monte updates its Arbitration Agreement and re-issues the updated version to existing employees. In or around October 2022, Del Monte updated its Arbitration Agreement and distributed the revised version to existing non-exempt California employees, including Plaintiff. Plaintiff electronically signed the updated Arbitration Agreement on October 21, 2022, during the course of her employment. A true and correct copy of the Arbitration Agreement electronically signed by Plaintiff on October 21, 2022 is attached hereto as **Exhibit B** (the "October 2022 Agreement"). Both the June 2022 Agreement and the October 2022 Agreement are maintained as part of Plaintiff's employment records in the ordinary course of Del Monte's business.

19. Del Monte maintains, and has at all relevant times maintained, both English-language and Spanish-language versions of its Arbitration Agreement. The Spanish-language version is the version that Del Monte makes available to Spanish-speaking employees and to any employee who requests a Spanish-

DECLARATION OF JENNIFER FARINHA IN SUPPORT OF MOTION TO COMPEL ARBITRATION

language copy. Both versions are maintained by Del Monte as official versions of the Arbitration Agreement and are treated by Del Monte as setting forth the same substantive terms.

20.    It is Del Monte's consistent and uniform practice to make both the English and Spanish versions of the Arbitration Agreement available to every employee during onboarding, and again at the time of any update or re-issuance of the Arbitration Agreement. Employees are expressly informed, both during the initial onboarding process and at the time of any subsequent update, that a Spanish-language version of the Arbitration Agreement is available and will be provided upon request, at no cost and without any need to justify the request. This practice was in place at the time Plaintiff was hired in June 2022 and at the time the updated Arbitration Agreement was distributed in October 2022.

21.    Del Monte employs Spanish-speaking human resources personnel and on-site bilingual supervisors and managers who are available to assist employees with any questions concerning onboarding documents, including the Arbitration Agreement. Employees are informed that they may ask questions about the Arbitration Agreement, in English or Spanish, before signing.

22.    Plaintiff completed her onboarding through DayForce, as described above, and electronically signed the English-language version of the Arbitration Agreement on June 29, 2022, and again on October 21, 2022. I have reviewed Plaintiff's personnel file and Del Monte's onboarding records, and there is no record of Plaintiff ever requesting a Spanish-language version of the Arbitration Agreement, requesting translation assistance, or otherwise indicating that she did not understand the Arbitration Agreement or any other onboarding document. Plaintiff also did not request a Spanish-language version of any other onboarding or employment document during her employment, to my knowledge.

23.    Throughout her employment, Plaintiff regularly conducted employment-related business in English through the DayForce platform, including reviewing and authorizing her timecards, and completing other employment-related tasks made available through DayForce. At no time during her employment did Plaintiff inform Human Resources that she was unable to read or understand English-language employment documents.

24.    I have reviewed Plaintiff's personnel file and Del Monte's Human Resources records, and there is no record of Plaintiff ever contacting Human Resources to discuss or raise any concern regarding

DECLARATION OF JENNIFER FARINHA IN SUPPORT OF MOTION TO COMPEL ARBITRATION

Del Monte's mandatory arbitration policy or the Arbitration Agreement during the course of her employment. Further, I have not personally received, nor am I aware of, any complaint (by Plaintiff or any other employee) that anyone fraudulently acknowledged or signed onboarding documents on behalf of a new hire.

DECLARATION OF JENNIFER FARINHA IN SUPPORT OF MOTION TO COMPEL ARBITRATION

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed this _3_ day of June, 2026 in SAN LORENZO, California.

Jennifer Farinha

DECLARATION OF JENNIFER FARINHA IN SUPPORT OF MOTION TO COMPEL ARBITRATION

# EXHIBIT A

## DEL MONTE CAPITOL MEAT COMPANY, LLC ARBITRATION AGREEMENT

As a condition of the employment relationship between _____ (the "Employee") and Del Monte Capitol Meat Company, LLC or any of its affiliates, subsidiaries, or parent companies (hereinafter collectively referred to as "Company"), and in consideration of the Employee's employment or continued employment with the Company, the parties agree to the following:

1.      **At-Will Employment**: Employee agrees that his or her employment with the Company is for an unspecified duration and is "at-will." Employee also agrees that his or her employment may be terminated at any time, with or without cause, by the Company or Employee, with or without notice.

2.      **Governing Law**: Employee and the Company agree that the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., governs this Agreement and preempts contrary provisions of state law.  To that end, Employee and the Company hereby expressly agree that this Agreement is governed by the FAA and evidences a transaction involving commerce.  The parties agree that except where in conflict with the FAA, this Agreement shall otherwise be interpreted and enforced pursuant to the laws of the State in which the Employee last was employed by the Company.

3.      **Arbitration Agreement**: It is hereby mutually agreed between the Company and Employee that any and all disputes between them, including, but not limited to, disputes arising out of or relating to the terms and conditions of Employee's employment or the termination thereof, will be subject to resolution only through final and binding arbitration through the American Arbitration Association ("AAA") and in accordance with the AAA's Employment Arbitration Rules and Mediation Procedures (the "Rules") and the terms of this Agreement. Employee may print the Rules from the AAA website at www.adr.org/employment or call 1-800-778-7879 to request that a copy be mailed to him or her.  The Rules also are available upon request to Human Resources.

To the fullest extent permitted by law, Employee and the Company hereby expressly waive their right to a jury trial, bench trial, and their right to bring, maintain, participate in, or receive money from, any class, collective, or representative action, whether in court, arbitration or any other proceeding. The Company, while it may take all steps necessary to enforce this Agreement in legal proceedings, will not discipline or otherwise retaliate against Employee for engaging in concerted protected activity, even if that activity is in breach of this Agreement.

The claims covered by this Agreement include any and all controversies, claims, or disputes with the Company arising out of, relating to, or resulting from the Employee's employment with the Company or the termination of Employee's employment with the Company, including any breach of this Agreement (unless provisional or injunctive relief is sought), whether such claims are based in tort, contract, or statute, including, but not limited to, any claims brought for unpaid wages, unpaid compensation, penalties for missed meal or rest breaks, overtime, reimbursement of business expenses, claims under applicable federal or state statutes that govern the terms and conditions of employment, wrongful termination, unfair competition, discrimination, harassment, or unlawful retaliation, equitable law, or otherwise. This Agreement excludes employment-related

claims for workers' compensation, claims for unemployment insurance benefits, or any other claim excluded from mandatory arbitration by state or federal law.

Nothing in this Agreement is intended to prohibit Employee from filing any administrative claim that cannot be waived or communicating with administrative or governmental agencies such as the United States Equal Employment Opportunity Commission ("EEOC") or the applicable state equivalent, or from pursuing any claim that cannot, as a matter of law, be the subject of a prospective arbitration agreement.

4.    **Class Action Waiver.** To the extent permissible by law, there shall be no right or authority for any dispute to be arbitrated as a class action or collective action ("Class Action Waiver"). THIS MEANS THAT ALL DISPUTES BETWEEN EMPLOYEE AND THE COMPANY ARISING OUT OF EMPLOYEE'S EMPLOYMENT OR THE TERMINATION OF EMPLOYEE'S EMPLOYMENT SHALL PROCEED IN ARBITRATION SOLELY ON AN INDIVIDUAL BASIS, AND THAT THE ARBITRATOR'S AUTHORITY TO RESOLVE ANY DISPUTE AND TO MAKE WRITTEN AWARDS WILL BE LIMITED TO EMPLOYEE'S INDIVIDUAL CLAIMS.

5.    **Representative Action Waiver.**  To the extent permissible by law, there shall be no right or authority for any dispute to be arbitrated as a representative action or as a private attorney general action, including but not limited to claims brought pursuant to the California Private Attorney General Act of 2004, Cal. Lab. Code § 2698, et seq. ("Representative Action Waiver"). THIS MEANS THAT, TO THE EXTENT CONSISTENT WITH APPLICABLE LAW, EMPLOYEE MAY NOT SEEK RELIEF ON BEHALF OF ANY OTHER PARTIES IN ARBITRATION, INCLUDING BUT NOT LIMITED TO SIMILARLY AGGRIEVED EMPLOYEES. THE ARBITRATOR'S AUTHORITY TO RESOLVE ANY DISPUTE AND TO MAKE WRITTEN AWARDS WILL BE LIMITED TO EMPLOYEE'S INDIVIDUAL CLAIMS.

6.    *Trujillo* **Case.**

IMPORTANT:  A putative class and representative action has been filed against the Company on behalf of all non-exempt employees who worked in California for The Chefs' Warehouse West Coast, LLC, Del Monte Capitol Meat Company, LLC, The Chefs' Warehouse, Inc., Qzina Specialty Foods, Inc., or Qzina Specialty Foods (Ambassador), Inc., and is currently pending in the United States District Court for the Central District of California:  *Trujillo v. The Chefs' Warehouse West Coast, LLC et al.*, Case No. 2:19-cv-08370 (N.D. Cal) ("*Trujillo* case").  In this action, Plaintiff alleges that non-exempt, hourly-paid employees (excluding drivers and driver trainers) who worked for the Company in California were not provided all of their wages for hours worked (including minimum and overtime wages), meal and rest breaks, vacation wages, all wages due and owing at the time of termination, accurate time and payroll records, and reimbursement for necessary business expenses. Plaintiff also brings a claim under the California Private Attorney General Act of 2004, Cal. Lab. Code § 2698, et seq.  The putative class period is July 22, 2015 to the present.  If this case is certified, and the claims are successful, this may result in some monetary recovery to Employee.

The mere existence of this putative class action does not mean that the lawsuit will ultimately succeed.  By signing this Agreement, Employee is agreeing in advance, except as otherwise

provided, that he or she will not participate in and, therefore, will not seek to recover monetary or other relief under any such class, collective, and/or representative lawsuit.  However, as discussed above and except as provided below, Employee will not be precluded from bringing his or her claims against the Company in an individual arbitration proceeding.

7.      **Your Right to Opt Out of the Class Action and Representative Action Waivers for the** *Trujillo* **Case.**  While arbitration is a mandatory condition of Employee's employment with the Company, for purposes of the *Trujillo* case, he or she may opt out of the Class Action and Representative Action Waivers, on a limited basis and only as to the *Trujillo* case, by notifying the Company in writing of his or her desire to opt out, either by (1) sending, within 30 days of the date this Agreement is executed by Employee, electronic mail to plecouras@chefswarehouse.com, stating his or her name and clearly indicating his or her intent to opt out of the Class Action and Representative Action Waivers for the *Trujillo* case, or (2) by sending a letter by U.S. Mail, or by any nationally recognized delivery service (e.g., UPS, Federal Express, etc.), or by hand delivery to:

> Patricia Lecouras
> Chief Human Resources Officer
> The Chefs' Warehouse
> 100 East Ridge Road
> Ridgefield, CT 06877

To be effective, the letter under option (2) must clearly indicate Employee's intent to opt out of this Agreement as to the *Trujillo* case, and must be dated and signed. The envelope containing the letter must be received (if delivered by hand) or post-marked within 30 days of the date this Agreement is executed by Employee. Employee's writing opting out of the Class Action and Representative Action Waivers for the *Trujillo* case, whether sent by (1) or (2), will be filed with a copy of this Agreement and maintained by the Company.

Should Employee not opt out of this Agreement within the 30-day period, Employee and the Company shall be bound by the terms of this Agreement, which includes all claims alleged in the *Trujillo* case. Employee has the right to consult with counsel of his or her choice concerning this Agreement. Employee understands that he or she will not be subject to retaliation if he or she exercises his or her right to assert claims or opt-out of coverage under this Agreement.

IMPORTANT:  If you opt out, as set forth in this Paragraph, you are still bound by this Agreement for all covered claims, as set forth in this Agreement, except for the class action and representative action claims brought by the *Trujillo* Plaintiff.

8.      **Demand and Arbitration Procedure**. A demand for arbitration giving notice of a claim must be filed with AAA within the limitations period established by applicable state and/or federal law, as determined by the claim(s) asserted.  In order to initiate a claim for arbitration, the party seeking arbitration must deliver to the local AAA office, and send to the other party a written request for arbitration within the time period required by the statute of limitations applicable to the party's claim (the time within which the party's claim must be filed according to law). Contact information for the nearest AAA office may be obtained from Company's Human Resources Department.

A single neutral arbitrator will conduct the arbitration and will be selected in accordance with the Rules. With the exception of the enforceability of the Class Action Waiver and the Representative Action Waiver (which must be decided by a court of competent jurisdiction), the arbitrator shall have the exclusive authority to resolve any dispute relating to the formation, interpretation, applicability and enforceability of this Agreement, including, without limitation, all issues regarding the arbitrability of any Claim.

The arbitration will take place in the city where Employee was last employed by the Company. However, if required by law or the Rules, the arbitrator shall have the authority to change the venue of the arbitration.

9.    **Arbitrator's Authority.**   The arbitrator must allow the parties discovery sufficient to adequately arbitrate their claims and defenses in accordance with applicable state or federal law, even if the Rules are more restrictive. The arbitrator has the authority to issue subpoenas to third parties to attend depositions and/or produce documents during pre-hearing discovery.   The arbitrator also has the authority to resolve all or portions of the dispute through a summary judgment motion or similar proceeding(s), and must allow any party to bring a dispositive motion in accordance with Federal Rules of Civil Procedure 56.  This provision supersedes Rule 27, which requires that the moving party establish substantial cause that the motion is likely to succeed and dispose of or narrow the issues in the case.  The arbitrator must render a written arbitration decision that reveals the essential findings and conclusions on which the decision is based. Such decision shall be final and binding subject to review only as provided by the law of the state in which the arbitration took place governing review of arbitration awards. If no state law on the subject exists, the award shall be subject to the standard of review provided in the Federal Arbitration Act, 9 U.S.C. Section 10. The award shall be enforceable in any court having jurisdiction.

10.    **Arbitration Fees and Costs:** Each party shall pay his/her or its own attorneys' fees if the party chooses to be represented by an attorney, except where the arbitrator orders that the prevailing party recover attorneys' fees from the other party under applicable law.  In no case, however, shall Employee bear any cost or expense as a result of arbitration that Employee would not be required to pay if the claim had been brought in court.

11.    **Remedies:** The arbitrator shall have the authority to award any remedy or relief that would have been available to the parties, in their individual capacity, had the matter been heard in court. The arbitrator has the authority to provide for the award of attorney's fees and costs to the prevailing party if such award is authorized or required by applicable law.

12.    **Severability/Entire Agreement:** Employee and the Company agree that if any part of this Agreement is deemed illegal, invalid or unenforceable, this declaration will not affect the legality, validity or enforceability of the remaining parts of the Agreement, and the illegal, invalid or unenforceable part will no longer be part of this Agreement.  Further, if a court of competent jurisdiction finds the Class Action Waiver or Representative Action Waiver unenforceable for any reason, the waiver provision shall be severable from this Agreement, and any class, collective, or representative action claims may only be litigated in a court of competent jurisdiction, but the remainder of the Agreement shall be binding and enforceable.  Employee and Company do not agree to arbitrate any class, collective, or representative action claims.

13.     **Confidentiality:** All aspects of the arbitration process, including any discovery, settlement discussions, the hearing, and the record of the proceeding, shall be strictly confidential and not open or disclosed to any third party or the public except to the extent that both parties may first agree otherwise in writing, or to the extent required in any subsequent proceeding between the parties or in response to the order of a government agency or court.

14.     **Voluntary and Binding Agreement:** Employee expressly acknowledges and agrees that he or she is executing this Agreement voluntarily and without any duress or undue influence. Employee further acknowledges and agrees that he or she has carefully read this Agreement and understands its terms, consequences and the binding effect of this Agreement.

**To the greatest extent permissible under applicable state law, this Agreement shall be interpreted and enforced pursuant to the Federal Arbitration Act, and otherwise shall be enforced and interpreted pursuant to the laws of the State in which Employee last worked for Company.**

**BY SIGNING THE ARBITRATION AGREEMENT BELOW AND ACCEPTING EMPLOYMENT OR CONTINUING EMPLOYMENT WITH THE COMPANY, EMPLOYEE ACKNOWLEDGES THAT HE/SHE HAS RECEIVED AND CAREFULLY READ THE ARBITRATION AGREEMENT AND UNDERSTANDS ITS TERMS, CONSEQUENCES, AND THE BINDING EFFECT OF THE AGREEMENT. EMPLOYEE FURTHER ACKNOWLEDGES AND AGREES TO BE BOUND BY ALL OF THE TERMS SET FORTH IN THIS ARBITRATION AGREEMENT. EMPLOYEE HEREBY KNOWINGLY AND VOLUNTARILY WAIVES HIS OR HER LEGAL RIGHTS TO CLASS, COLLECTIVE, AND REPRESENTATIVE PROCEDURES AND THE RIGHT TO TRIAL BY JURY OR JUDGE FOR ANY COVERED CLAIM SET FORTH IN THIS AGREEMENT.  EMPLOYEE, HOWEVER, RETAINS ALL OTHER RIGHTS, INCLUDING HIS OR HER RIGHT TO COUNSEL, TO CALL AND CROSS-EXAMINE WITNESSES, AND TO HAVE HIS OR HER CLAIMS ADDRESSED BY AN IMPARTIAL FACT FINDER.  EMPLOYEE ACKNOWLEDGES THAT HE OR SHE IS HEREBY ADVISED TO SEEK LEGAL ADVICE AS TO HIS OR HER RIGHTS AND RESPONSIBILITIES UNDER THIS AGREEMENT.**

**BY ISSUANCE OF THIS AGREEMENT, THE COMPANY AGREES TO BE BOUND TO ITS TERMS WITHOUT ANY REQUIREMENT TO SIGN THIS AGREEMENT.**

**EMPLOYEE**

_____     _____
**Name (print)**                              **Date**


_____
**Signature**

## Martinez, Leticia
Status: Active   Employee Number: 41734

**To the greatest extent permissible under applicable state law, this Agreement shall be interpreted and enforced pursuant to the Federal Arbitration Act, and otherwise shall be enforced and interpreted pursuant to the laws of the State in which Employee last worked for Company.**

**BY SIGNING THE ARBITRATION AGREEMENT BELOW AND ACCEPTING EMPLOYMENT OR CONTINUING EMPLOYMENT WITH THE COMPANY, EMPLOYEE ACKNOWLEDGES THAT HE/SHE HAS RECEIVED AND CAREFULLY READ THE ARBITRATION AGREEMENT AND UNDERSTANDS ITS TERMS, CONSEQUENCES, AND THE BINDING EFFECT OF THE AGREEMENT. EMPLOYEE FURTHER ACKNOWLEDGES AND AGREES TO BE BOUND BY ALL OF THE TERMS SET FORTH IN THIS ARBITRATION AGREEMENT. EMPLOYEE HEREBY KNOWINGLY AND VOLUNTARILY WAIVES HIS OR HER LEGAL RIGHTS TO CLASS, COLLECTIVE, AND REPRESENTATIVE PROCEDURES AND THE RIGHT TO TRIAL BY JURY OR JUDGE FOR ANY COVERED CLAIM SET FORTH IN THIS AGREEMENT. EMPLOYEE, HOWEVER, RETAINS ALL OTHER RIGHTS, INCLUDING HIS OR HER RIGHT TO COUNSEL, TO CALL AND CROSS-EXAMINE WITNESSES, AND TO HAVE HIS OR HER CLAIMS ADDRESSED BY AN IMPARTIAL FACT FINDER. EMPLOYEE ACKNOWLEDGES THAT HE OR SHE IS HEREBY ADVISED TO SEEK LEGAL ADVICE AS TO HIS OR HER RIGHTS AND RESPONSIBILITIES UNDER THIS AGREEMENT.**

**BY ISSUANCE OF THIS AGREEMENT, THE COMPANY AGREES**

| File Name | Document Type | Last Updated | Last Modified By |
|---|---|---|---|
| Employee Arbitration Agreement - Del Monte.pdf | | 6/24/2020, 12:24:31 PM | cer.anson.pryor |

✔
I accept and acknowledge the company policy above.                    Date:    6/29/2022
**Comment**

Add comment to the employee's file.

DocuSigned by:

*Martinez, Leticia*

42DF934657C4495...

# EXHIBIT B

## ARBITRATION AGREEMENT

As a condition of the employment relationship between _Leticia Martinez_ (the "Employee") and The Chefs' Warehouse West Coast, LLC, or any of its affiliates, subsidiaries, or parent companies (hereinafter collectively referred to as "Company"), and in consideration of the Employee's employment or continued employment with the Company, the parties agree to the following:

1.      **At-Will Employment**: Employee agrees that his or her employment with the Company is for an unspecified duration and is "at-will." Employee also agrees that his or her employment may be terminated at any time, with or without cause, by the Company or Employee, with or without notice.

2.      **Governing Law**: Employee and the Company agree that the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., governs this Agreement and preempts contrary provisions of state law. To that end, Employee and the Company hereby expressly agree that this Agreement is governed by the FAA and evidences a transaction involving commerce. The parties agree that except where in conflict with the FAA, this Agreement shall otherwise be interpreted and enforced pursuant to the laws of the State in which the Employee last was employed by the Company.

3.      **Arbitration Agreement**: It is hereby mutually agreed between the Company and Employee that any and all disputes between them, including, but not limited to, disputes arising out of or relating to the terms and conditions of Employee's employment or the termination thereof, will be subject to resolution only through final and binding arbitration through the American Arbitration Association ("AAA") and in accordance with the AAA's Employment Arbitration Rules and Mediation Procedures (the "Rules") and the terms of this Agreement. Employee may print the Rules from the AAA website at www.adr.org/employment or call 1-800-778-7879 to request that a copy be mailed to him or her. The Rules also are available upon request to Human Resources.

To the fullest extent permitted by law, Employee and the Company hereby expressly waive their right to a jury trial, bench trial, and their right to bring, maintain, participate in, or receive money from, any class, collective, or representative action, whether in court, arbitration or any other proceeding. The Company, while it may take all steps necessary to enforce this Agreement in legal proceedings, will not discipline or otherwise retaliate against Employee for engaging in concerted protected activity, even if that activity is in breach of this Agreement.

The claims covered by this Agreement include any and all controversies, claims, or disputes with the Company arising out of, relating to, or resulting from the Employee's employment with the Company or the termination of Employee's employment with the Company, including any breach of this Agreement (unless provisional or injunctive relief is sought), whether such claims are based in tort, contract, or statute, including, but not limited to, any claims brought for unpaid wages, unpaid compensation, penalties for missed meal or rest breaks, overtime, reimbursement of business expenses, claims under applicable federal or state statutes that govern the terms and conditions of employment, wrongful termination, unfair competition, discrimination, harassment, or unlawful retaliation, equitable law, or otherwise. This Agreement excludes employment-related

claims for workers' compensation, claims for unemployment insurance benefits, or any other claim excluded from mandatory arbitration by state or federal law.

Nothing in this Agreement is intended to prohibit Employee from filing any administrative claim that cannot be waived or communicating with administrative or governmental agencies such as the United States Equal Employment Opportunity Commission ("EEOC") or the applicable state equivalent, or from pursuing any claim that cannot, as a matter of law, be the subject of a prospective arbitration agreement.

4.    **Class Action Waiver.** To the extent permissible by law, there shall be no right or authority for any dispute to be arbitrated as a class action or collective action ("Class Action Waiver"). THIS MEANS THAT ALL DISPUTES BETWEEN EMPLOYEE AND THE COMPANY ARISING OUT OF EMPLOYEE'S EMPLOYMENT OR THE TERMINATION OF EMPLOYEE'S EMPLOYMENT SHALL PROCEED IN ARBITRATION SOLELY ON AN INDIVIDUAL BASIS, AND THAT THE ARBITRATOR'S AUTHORITY TO RESOLVE ANY DISPUTE AND TO MAKE WRITTEN AWARDS WILL BE LIMITED TO EMPLOYEE'S INDIVIDUAL CLAIMS.

5.    **Representative Action Waiver.** To the extent permissible by law, there shall be no right or authority for any dispute to be arbitrated as a representative action or as a private attorney general action, including but not limited to claims brought pursuant to the California Private Attorney General Act of 2004, Cal. Lab. Code § 2698, et seq. ("Representative Action Waiver"). THIS MEANS THAT, TO THE EXTENT CONSISTENT WITH APPLICABLE LAW, EMPLOYEE MAY NOT SEEK RELIEF ON BEHALF OF ANY OTHER PARTIES IN ARBITRATION, INCLUDING BUT NOT LIMITED TO SIMILARLY AGGRIEVED EMPLOYEES. THE ARBITRATOR'S AUTHORITY TO RESOLVE ANY DISPUTE AND TO MAKE WRITTEN AWARDS WILL BE LIMITED TO EMPLOYEE'S INDIVIDUAL CLAIMS.

6.    *Trujillo* **Case.**

IMPORTANT:  A putative class and representative action has been filed against the Company on behalf of all non-exempt employees who worked in California for The Chefs' Warehouse West Coast, LLC, Del Monte Capitol Meat Company, LLC, The Chefs' Warehouse, Inc., Qzina Specialty Foods, Inc., or Qzina Specialty Foods (Ambassador), Inc., and is currently pending in the United States District Court for the Central District of California: *Trujillo v. The Chefs' Warehouse West Coast, LLC et al.*, Case No. 2:19-cv-08370 (N.D. Cal) ("*Trujillo* case"). In this action, Plaintiff alleges that non-exempt, hourly-paid employees (excluding drivers and driver trainers) who worked for the Company in California were not provided all of their wages for hours worked (including minimum and overtime wages), meal and rest breaks, vacation wages, all wages due and owing at the time of termination, accurate time and payroll records, and reimbursement for necessary business expenses. Plaintiff also brings a claim under the California Private Attorney General Act of 2004, Cal. Lab. Code § 2698, et seq.  The putative class period is July 22, 2015 to the present.  If this case is certified, and the claims are successful, this may result in some monetary recovery to Employee.

The mere existence of this putative class action does not mean that the lawsuit will ultimately succeed.  By signing this Agreement, Employee is agreeing in advance, except as otherwise

provided, that he or she will not participate in and, therefore, will not seek to recover monetary or other relief under any such class, collective, and/or representative lawsuit. However, as discussed above and except as provided below, Employee will not be precluded from bringing his or her claims against the Company in an individual arbitration proceeding.

7.     **Your Right to Opt Out of the Class Action and Representative Action Waivers for the _Trujillo_ Case.**  While arbitration is a mandatory condition of Employee's employment with the Company, for purposes of the _Trujillo_ case, he or she may opt out of the Class Action and Representative Action Waivers, on a limited basis and only as to the _Trujillo_ case, by notifying the Company in writing of his or her desire to opt out, either by (1) sending, within 30 days of the date this Agreement is executed by Employee, electronic mail to sgifford@chefswarehouse.com, stating his or her name and clearly indicating his or her intent to opt out of the Class Action and Representative Action Waivers for the _Trujillo_ case, or (2) by sending a letter by U.S. Mail, or by any nationally recognized delivery service (e.g., UPS, Federal Express, etc.), or by hand delivery to:

> Steve Gifford
> Vice President of Human Resources
> The Chefs' Warehouse
> 100 East Ridge Road
> Ridgefield, CT 06877

To be effective, the letter under option (2) must clearly indicate Employee's intent to opt out of this Agreement as to the _Trujillo_ case, and must be dated and signed. The envelope containing the letter must be received (if delivered by hand) or post-marked within 30 days of the date this Agreement is executed by Employee. Employee's writing opting out of the Class Action and Representative Action Waivers for the _Trujillo_ case, whether sent by (1) or (2), will be filed with a copy of this Agreement and maintained by the Company.

Should Employee not opt out of this Agreement within the 30-day period, Employee and the Company shall be bound by the terms of this Agreement, which includes all claims alleged in the _Trujillo_ case. Employee has the right to consult with counsel of his or her choice concerning this Agreement. Employee understands that he or she will not be subject to retaliation if he or she exercises his or her right to assert claims or opt-out of coverage under this Agreement.

IMPORTANT:  If you opt out, as set forth in this Paragraph, you are still bound by this Agreement for all covered claims, as set forth in this Agreement, except for the class action and representative action claims brought by the _Trujillo_ Plaintiff.

8.     **Demand and Arbitration Procedure**. A demand for arbitration giving notice of a claim must be filed with AAA within the limitations period established by applicable state and/or federal law, as determined by the claim(s) asserted.  In order to initiate a claim for arbitration, the party seeking arbitration must deliver to the local AAA office, and send to the other party a written request for arbitration within the time period required by the statute of limitations applicable to the party's claim (the time within which the party's claim must be filed according to law). Contact information for the nearest AAA office may be obtained from Company's Human Resources Department.

A single neutral arbitrator will conduct the arbitration and will be selected in accordance with the Rules. With the exception of the enforceability of the Class Action Waiver and the Representative Action Waiver (which must be decided by a court of competent jurisdiction), the arbitrator shall have the exclusive authority to resolve any dispute relating to the formation, interpretation, applicability and enforceability of this Agreement, including, without limitation, all issues regarding the arbitrability of any Claim.

The arbitration will take place in the city where Employee was last employed by the Company. However, if required by law or the Rules, the arbitrator shall have the authority to change the venue of the arbitration.

9.     **Arbitrator's Authority.** The arbitrator must allow the parties discovery sufficient to adequately arbitrate their claims and defenses in accordance with applicable state or federal law, even if the Rules are more restrictive. The arbitrator has the authority to issue subpoenas to third parties to attend depositions and/or produce documents during pre-hearing discovery.  The arbitrator also has the authority to resolve all or portions of the dispute through a summary judgment motion or similar proceeding(s), and must allow any party to bring a dispositive motion in accordance with Federal Rules of Civil Procedure 56.  This provision supersedes Rule 27, which requires that the moving party establish substantial cause that the motion is likely to succeed and dispose of or narrow the issues in the case.  The arbitrator must render a written arbitration decision that reveals the essential findings and conclusions on which the decision is based. Such decision shall be final and binding subject to review only as provided by the law of the state in which the arbitration took place governing review of arbitration awards. If no state law on the subject exists, the award shall be subject to the standard of review provided in the Federal Arbitration Act, 9 U.S.C. Section 10. The award shall be enforceable in any court having jurisdiction.

10.     **Arbitration Fees and Costs:** Each party shall pay his/her or its own attorneys' fees if the party chooses to be represented by an attorney, except where the arbitrator orders that the prevailing party recover attorneys' fees from the other party under applicable law.  In no case, however, shall Employee bear any cost or expense as a result of arbitration that Employee would not be required to pay if the claim had been brought in court.

11.     **Remedies:** The arbitrator shall have the authority to award any remedy or relief that would have been available to the parties, in their individual capacity, had the matter been heard in court. The arbitrator has the authority to provide for the award of attorney's fees and costs to the prevailing party if such award is authorized or required by applicable law.

12.     **Severability/Entire Agreement:** Employee and the Company agree that if any part of this Agreement is deemed illegal, invalid or unenforceable, this declaration will not affect the legality, validity or enforceability of the remaining parts of the Agreement, and the illegal, invalid or unenforceable part will no longer be part of this Agreement.  Further, if a court of competent jurisdiction finds the Class Action Waiver or Representative Action Waiver unenforceable for any reason, the waiver provision shall be severable from this Agreement, and any class, collective, or representative action claims may only be litigated in a court of competent jurisdiction, but the remainder of the Agreement shall be binding and enforceable.  Employee and Company do not agree to arbitrate any class, collective, or representative action claims.

13.  **Confidentiality**: All aspects of the arbitration process, including any discovery, settlement discussions, the hearing, and the record of the proceeding, shall be strictly confidential and not open or disclosed to any third party or the public except to the extent that both parties may first agree otherwise in writing, or to the extent required in any subsequent proceeding between the parties or in response to the order of a government agency or court.

14.  **Voluntary and Binding Agreement**: Employee expressly acknowledges and agrees that he or she is executing this Agreement voluntarily and without any duress or undue influence. Employee further acknowledges and agrees that he or she has carefully read this Agreement and understands its terms, consequences and the binding effect of this Agreement.

**To the greatest extent permissible under applicable state law, this Agreement shall be interpreted and enforced pursuant to the Federal Arbitration Act, and otherwise shall be enforced and interpreted pursuant to the laws of the State in which Employee last worked for Company.**

**BY SIGNING THE ARBITRATION AGREEMENT BELOW AND ACCEPTING EMPLOYMENT OR CONTINUING EMPLOYMENT WITH THE COMPANY, EMPLOYEE ACKNOWLEDGES THAT HE/SHE HAS RECEIVED AND CAREFULLY READ THE ARBITRATION AGREEMENT AND UNDERSTANDS ITS TERMS, CONSEQUENCES, AND THE BINDING EFFECT OF THE AGREEMENT. EMPLOYEE FURTHER ACKNOWLEDGES AND AGREES TO BE BOUND BY ALL OF THE TERMS SET FORTH IN THIS ARBITRATION AGREEMENT. EMPLOYEE HEREBY KNOWINGLY AND VOLUNTARILY WAIVES HIS OR HER LEGAL RIGHTS TO CLASS, COLLECTIVE, AND REPRESENTATIVE PROCEDURES AND THE RIGHT TO TRIAL BY JURY OR JUDGE FOR ANY COVERED CLAIM SET FORTH IN THIS AGREEMENT. EMPLOYEE, HOWEVER, RETAINS ALL OTHER RIGHTS, INCLUDING HIS OR HER RIGHT TO COUNSEL, TO CALL AND CROSS-EXAMINE WITNESSES, AND TO HAVE HIS OR HER CLAIMS ADDRESSED BY AN IMPARTIAL FACT FINDER. EMPLOYEE ACKNOWLEDGES THAT HE OR SHE IS HEREBY ADVISED TO SEEK LEGAL ADVICE AS TO HIS OR HER RIGHTS AND RESPONSIBILITIES UNDER THIS AGREEMENT.**

**BY ISSUANCE OF THIS AGREEMENT, THE COMPANY AGREES TO BE BOUND TO ITS TERMS WITHOUT ANY REQUIREMENT TO SIGN THIS AGREEMENT.**

**EMPLOYEE**

LETICIA MARTINEZ
Name (print)

Oct. 21. 2022
Date

_Jeticia_
Signature