SEYFARTH SHAW LLP
Michele J. Beilke (SBN 194098)
mbeilke@seyfarth.com
Julia Y. Trankiem (SBN 228666)
jtrankiem@seyfarth.com
Alex W. Simon (SBN 310842)
asimon@seyfarth.com
601 South Figueroa Street, Suite 3300
Los Angeles, California 90017-5793
Telephone:  (213) 270-9600
Facsimile:   (213) 270-9601

Attorneys for Defendants
Del Monte Capitol Meat Company, LLC; Allen Brothers
1893, LLC; The Chefs' Warehouse, Inc.; and The Chefs'
Warehouse West Coast, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LETICIA PAREJA MARTINEZ, an individual, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DEL MONTE CAPITOL MEAT COMPANY, LLC, a Delaware limited liability company; ALLEN BROTHERS 1893, LLC, a Delaware limited liability company; THE CHEFS' WAREHOUSE, INC., a Delaware corporation; THE CHEFS' WAREHOUSE WEST COAST, LLC, a Delaware limited liability company; and DOES 1 through 500, inclusive,<br><br>Defendants. | Case No. 3:26-cv-03267-JSC<br><br>**DECLARATION OF SAHAND FEIZI IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION** |

DECLARATION OF SAHAND FEIZI IN SUPPORT OF MOTION TO COMPEL ARBITRATION

**DECLARATION OF SAHAND FEIZI**

I, Sahand Feizi, declare as follows:

1.    I am over 18 years old and competent to give this Declaration. I am employed by Del Monte Capitol Meat Company, LLC ("Del Monte") as Plant Manager at Del Monte's Richmond, California facility. Before that, I served as Operations Manager at Del Monte's Union City, California facility. This Declaration is based on my personal knowledge. If called and sworn as a witness, I could and would competently testify to the matters set forth herein.

2.    Del Monte is a subsidiary of The Chefs' Warehouse, Inc., and an affiliate of The Chefs' Warehouse West Coast, LLC ("CWWC").

3.    I am familiar with Plaintiff Leticia Pareja Martinez ("Plaintiff"). She worked for Del Monte at both the Union City and Richmond facilities. Del Monte operates under the "doing business as" name "Allen Brothers." For clarity, I refer to the entity as "Del Monte" throughout this Declaration.

4.    By virtue of my role as Operations Manager at Union City and subsequently Plant Manager at Richmond, I had direct responsibility for overseeing all production operations, inventory, and supply procurement at both facilities, including supervising the Production Managers to whom Plaintiff reported. I regularly walked the production floor, observed employees at their workstations, and was personally familiar with the duties performed by each role in the production department, including the box-making and production utility functions that Plaintiff performed. I am personally familiar with the materials that come into the facility, how those materials are used, and the distinction between packaging supplies versus the food products Del Monte sells and distributes to customers.

5.    I was personally involved in the decision-making surrounding Plaintiff's medical accommodation in January 2025, including the determination of the modified duties she would perform following the accommodation. I was also involved in decisions regarding her employment more broadly throughout her tenure.

6.    The statements I make in this Declaration regarding Plaintiff's job duties, the facility's operations, and Del Monte's distribution practices are based on my personal observation and knowledge gained through these roles.

---

## I.    PLAINTIFF'S JOB DUTIES

7.    Plaintiff worked in the production department. Her job titles during her employment included "Production Utility," and "Box Maker & Sorter." She reported to Production Managers.

8.    Throughout her employment, Plaintiff's core function was supporting the production room. At Union City, where she held the Production Utility title, her duties included making and assembling boxes by hand from flat box stock for use in packaging; moving raw materials such as packaging supplies within the facility as needed; maintaining cleanliness and order in the production area; performing sanitation; and office cleaning. She was not performing warehouse duties, and she was not part of an assembly line. Her work was performed either alone or alongside one other employee doing the same task. I personally observed Plaintiff performing these duties on multiple occasions during my regular walkthroughs of both facilities.

9.    When Plaintiff transferred to the Richmond facility in 2024 (approximately July to October timeframe), her duties initially remained the same except that she no longer performed sanitation or office cleaning. She continued to make boxes, move packaging materials within the production area, and support the production room.

10.    Effective January 22, 2025, Plaintiff received a medical accommodation restricting her from lifting more than 5 to 10 pounds. After that accommodation, her duties were limited exclusively to making boxes by hand at a stationary workstation. She performed this work either solo or alongside one other employee until her termination on September 25, 2025. I was personally involved in the processing of this accommodation and in the determination of her modified duties.

11.    Plaintiff's work was entirely inward-facing, and she had no involvement in the outbound distribution process whatsoever. At no point during her employment — whether before or after her medical accommodation — did Plaintiff:

    a.  Load or unload trucks;

    b.  Receive inbound shipments of products from vendors;

    c.  Prepare outbound shipments or orders for delivery to customers;

    d.  Ship, distribute, or transport any products to or from the facility;

    e.  Drive or operate any delivery vehicles;

DECLARATION OF SAHAND FEIZI

     f.   Select, pick, or gather finished products from warehouse storage to fill customer orders;

     g.   Scan products for outbound delivery, or interact with any shipping or logistics systems; or

     h.   Perform any work involving the movement of goods across state lines.

I have personal knowledge of these facts based on my regular observation of Plaintiff's work and my supervisory oversight of the production department at both facilities throughout her tenure.

12.     Plaintiff's role was to assemble cardboard boxes from flat box stock — packaging containers used in production. She handled packaging materials and supplies only; she did not handle, process, or ship the food products that Del Monte distributes. The flat cardboard sheets and other packaging materials she worked with were ordered as packaging materials for Del Monte's use in its production operations. They were not products Del Monte sells or distributes to customers, and they were sourced from packaging-supply vendors entirely separate from the food vendors whose products Del Monte distributes. The flat cardboard sheets and other packaging materials she worked with had already been received at the facility by other employees, unloaded by other employees, and placed into facility storage before Plaintiff ever interacted with them. By the time Plaintiff handled these materials, they had arrived at their designated destination (Del Monte's production facility) and were held as undifferentiated general inventory with no specific customer order, outbound shipment, or delivery destination assigned to them. The finished boxes Plaintiff assembled were likewise produced as general inventory for use by other production employees as needed. At no point did Plaintiff have any role in determining which customers would receive products, any involvement in the outbound distribution process, or any knowledge of whether any particular box she built would ultimately be used for an in-state or out-of-state delivery.

13.     The food products that Del Monte distributes (chicken, meat, and related proteins) were processed by entirely separate employees. Those products arrived at the facility, were received and stored by other workers, and were subsequently processed (including cutting, grinding, and portioning) by other workers. Plaintiff had no role in any of those functions, including receiving, storage,

4

DECLARATION OF SAHAND FEIZI

processing, fabrication, loading, routing, distribution, or shipping either before or after her medical accommodation was granted in January 2025.

14.     During Plaintiff's tenure at the Union City facility, Del Monte's customer deliveries from that facility were made exclusively to customers within the State of California. The Union City facility did not ship any products to customers outside of California. At the Richmond facility, where Plaintiff worked after Union City closed, less than 1% of the customer deliveries are (or were) made to customers outside of California. This figure is based on my familiarity with the Richmond facility's distribution operations and the shipping and operational records I review in the ordinary course of my duties as Plant Manager. Regardless, Plaintiff had no involvement in, or knowledge of, the outbound distribution process from either facility.

## II.     THE ARBITRATION AGREEMENT

15.     At least since approximately 2022, all of Del Monte's non-exempt California employees have been required to sign an Arbitration Agreement. Plaintiff could not have continued working for Del Monte after receiving the Arbitration Agreement had she not accepted its terms.

16.     On or about June 29, 2022, Plaintiff electronically signed Del Monte's Arbitration Agreement. A true and correct copy of her signature page, and the underlying agreement, is attached as **Exhibit A**.

17.     Plaintiff signed Exhibit A using "DocuSign" through the HR platform called "DayForce," which is the standard onboarding process in effect at that time. Based on my own use of the DayForce platform and my familiarity with it through my management role, I know that DayForce uses a secure credentialing system with a username and password tied to specific employees, which ensures that only the employee (here, Plaintiff) can sign documents presented through her account. Exhibit A has been maintained in the ordinary course of Del Monte's business.

18.     Then, on October 21, 2022, during her employment, Plaintiff signed an updated arbitration agreement. It has been maintained in the ordinary course of business, and is attached as **Exhibit B**. Exhibit B has also been maintained in the normal course of business as part of Plaintiff's employment records.

DECLARATION OF SAHAND FEIZI

19.     Del Monte's workforce at both facilities includes Spanish-speaking employees. Del Monte has always employed Spanish-speaking managers, and HR includes Spanish-speaking personnel. When Del Monte introduced its arbitration program, employees were informed that they had the option to review and sign a Spanish-language version of the Arbitration Agreement. I know that this option is always made known and available to new hires as well.

20.     I know that Plaintiff did not ask for a Spanish-translation of the Arbitration Agreement because if she had, we would have provided it to her and it would have been saved in her employment. Instead, she signed the English version.

21.     I have no knowledge or recollection of Plaintiff ever requesting a Spanish-language version of the Arbitration Agreement. Had Plaintiff made such a request to me or, to my knowledge, to any other manager, the request would have been honored and the Spanish-language version would have been provided. Plaintiff signed the English-language version of the Arbitration Agreement on both occasions.

22.     At no time during her employment did Plaintiff indicate to me, or to my knowledge to any other manager, that she was unable to understand English-language documents or needed translation assistance beyond what was offered.

**III.     WORKPLACE CONDITIONS**

23.     Plaintiff always worked on the daytime shift. The daytime team generally consists of approximately six or seven employees.

24.     Del Monte's meal and rest break policies are communicated to employees in writing and acknowledged in writing as part of onboarding through their handbooks. Breaks are scheduled, and the daytime team generally takes breaks at the same time. I have no knowledge of any instance in which a daytime shift employee was told that breaks were unavailable due to workload or any other reason. I have no knowledge of any instance in which a scheduled break was interrupted or cut short. To my knowledge, there is no written record, whether in text messages, emails, or any other communication, in which any manager at either facility told an employee to forego a break.

25.     Del Monte uses Dayforce for timekeeping. Employees punch in upon arrival and punch out at the end of their shift. I have no knowledge of any systemic failure in Dayforce that would have

DECLARATION OF SAHAND FEIZI

caused employees to be unpaid for time worked or to have compensable time go unrecorded. To my knowledge, there is no written record of any complaint about the timekeeping system from any employee on the daytime shift.

26.     Del Monte has a written anti-retaliation policy that is distributed to employees and acknowledged in writing. Del Monte posts notices of employee rights — including rights under California wage and hour law — in both English and Spanish at both facilities. Del Monte employees routinely raise workplace concerns with management without fear of retaliation. I have no knowledge of any instance in which an employee was disciplined, demoted, or subjected to any adverse action as a result of raising a workplace concern. I have never worked at any place that is more understanding and willing to work with employees through challenges.

27.     To my knowledge, Plaintiff did not make any written or verbal complaints about wage and hour issues during her employment. I am not aware of any written record — including texts, emails, or complaint forms — reflecting any such complaint by Plaintiff. This is notable because Plaintiff demonstrated a willingness and ability to raise workplace concerns when she had them: she submitted a written request for a medical accommodation due to lifting restrictions, which was granted, and she voiced concerns about a schedule modification. I have no knowledge of any complaint from Plaintiff about missed breaks, unpaid wages, off-the-clock work, or expense reimbursement.

28.     Del Monte employs Spanish-speaking managers and HR personnel at both facilities. To my knowledge, no employee at either facility — including Plaintiff — was ever discouraged from raising a workplace concern or told that raising such a concern would have negative consequences. I have no knowledge of any written record or oral communication from any manager suggesting that employees should forego their wage and hour rights. Plaintiff communicated with Spanish-speaking managers throughout her tenure and had every practical means to raise concerns during her employment.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

DECLARATION OF SAHAND FEIZI

Executed this 3rd day of June, 2026.

_____
Sahand Feizi

DECLARATION OF SAHAND FEIZI

# EXHIBIT A

## DEL MONTE CAPITOL MEAT COMPANY, LLC ARBITRATION AGREEMENT

As a condition of the employment relationship between _____ (the "Employee") and Del Monte Capitol Meat Company, LLC or any of its affiliates, subsidiaries, or parent companies (hereinafter collectively referred to as "Company"), and in consideration of the Employee's employment or continued employment with the Company, the parties agree to the following:

1.    **At-Will Employment**: Employee agrees that his or her employment with the Company is for an unspecified duration and is "at-will." Employee also agrees that his or her employment may be terminated at any time, with or without cause, by the Company or Employee, with or without notice.

2.    **Governing Law**: Employee and the Company agree that the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., governs this Agreement and preempts contrary provisions of state law.  To that end, Employee and the Company hereby expressly agree that this Agreement is governed by the FAA and evidences a transaction involving commerce.  The parties agree that except where in conflict with the FAA, this Agreement shall otherwise be interpreted and enforced pursuant to the laws of the State in which the Employee last was employed by the Company.

3.    **Arbitration Agreement**: It is hereby mutually agreed between the Company and Employee that any and all disputes between them, including, but not limited to, disputes arising out of or relating to the terms and conditions of Employee's employment or the termination thereof, will be subject to resolution only through final and binding arbitration through the American Arbitration Association ("AAA") and in accordance with the AAA's Employment Arbitration Rules and Mediation Procedures (the "Rules") and the terms of this Agreement. Employee may print the Rules from the AAA website at www.adr.org/employment or call 1-800-778-7879 to request that a copy be mailed to him or her.  The Rules also are available upon request to Human Resources.

To the fullest extent permitted by law, Employee and the Company hereby expressly waive their right to a jury trial, bench trial, and their right to bring, maintain, participate in, or receive money from, any class, collective, or representative action, whether in court, arbitration or any other proceeding. The Company, while it may take all steps necessary to enforce this Agreement in legal proceedings, will not discipline or otherwise retaliate against Employee for engaging in concerted protected activity, even if that activity is in breach of this Agreement.

The claims covered by this Agreement include any and all controversies, claims, or disputes with the Company arising out of, relating to, or resulting from the Employee's employment with the Company or the termination of Employee's employment with the Company, including any breach of this Agreement (unless provisional or injunctive relief is sought), whether such claims are based in tort, contract, or statute, including, but not limited to, any claims brought for unpaid wages, unpaid compensation, penalties for missed meal or rest breaks, overtime, reimbursement of business expenses, claims under applicable federal or state statutes that govern the terms and conditions of employment, wrongful termination, unfair competition, discrimination, harassment, or unlawful retaliation, equitable law, or otherwise. This Agreement excludes employment-related

claims for workers' compensation, claims for unemployment insurance benefits, or any other claim excluded from mandatory arbitration by state or federal law.

Nothing in this Agreement is intended to prohibit Employee from filing any administrative claim that cannot be waived or communicating with administrative or governmental agencies such as the United States Equal Employment Opportunity Commission ("EEOC") or the applicable state equivalent, or from pursuing any claim that cannot, as a matter of law, be the subject of a prospective arbitration agreement.

4.    **Class Action Waiver.** To the extent permissible by law, there shall be no right or authority for any dispute to be arbitrated as a class action or collective action ("Class Action Waiver"). THIS MEANS THAT ALL DISPUTES BETWEEN EMPLOYEE AND THE COMPANY ARISING OUT OF EMPLOYEE'S EMPLOYMENT OR THE TERMINATION OF EMPLOYEE'S EMPLOYMENT SHALL PROCEED IN ARBITRATION SOLELY ON AN INDIVIDUAL BASIS, AND THAT THE ARBITRATOR'S AUTHORITY TO RESOLVE ANY DISPUTE AND TO MAKE WRITTEN AWARDS WILL BE LIMITED TO EMPLOYEE'S INDIVIDUAL CLAIMS.

5.    **Representative Action Waiver.** To the extent permissible by law, there shall be no right or authority for any dispute to be arbitrated as a representative action or as a private attorney general action, including but not limited to claims brought pursuant to the California Private Attorney General Act of 2004, Cal. Lab. Code § 2698, et seq. ("Representative Action Waiver"). THIS MEANS THAT, TO THE EXTENT CONSISTENT WITH APPLICABLE LAW, EMPLOYEE MAY NOT SEEK RELIEF ON BEHALF OF ANY OTHER PARTIES IN ARBITRATION, INCLUDING BUT NOT LIMITED TO SIMILARLY AGGRIEVED EMPLOYEES. THE ARBITRATOR'S AUTHORITY TO RESOLVE ANY DISPUTE AND TO MAKE WRITTEN AWARDS WILL BE LIMITED TO EMPLOYEE'S INDIVIDUAL CLAIMS.

6.    ***Trujillo* Case.**

IMPORTANT: A putative class and representative action has been filed against the Company on behalf of all non-exempt employees who worked in California for The Chefs' Warehouse West Coast, LLC, Del Monte Capitol Meat Company, LLC, The Chefs' Warehouse, Inc., Qzina Specialty Foods, Inc., or Qzina Specialty Foods (Ambassador), Inc., and is currently pending in the United States District Court for the Central District of California:  *Trujillo v. The Chefs' Warehouse West Coast, LLC et al.*, Case No. 2:19-cv-08370 (N.D. Cal) ("*Trujillo* case"). In this action, Plaintiff alleges that non-exempt, hourly-paid employees (excluding drivers and driver trainers) who worked for the Company in California were not provided all of their wages for hours worked (including minimum and overtime wages), meal and rest breaks, vacation wages, all wages due and owing at the time of termination, accurate time and payroll records, and reimbursement for necessary business expenses. Plaintiff also brings a claim under the California Private Attorney General Act of 2004, Cal. Lab. Code § 2698, et seq. The putative class period is July 22, 2015 to the present. If this case is certified, and the claims are successful, this may result in some monetary recovery to Employee.

The mere existence of this putative class action does not mean that the lawsuit will ultimately succeed. By signing this Agreement, Employee is agreeing in advance, except as otherwise

provided, that he or she will not participate in and, therefore, will not seek to recover monetary or other relief under any such class, collective, and/or representative lawsuit.  However, as discussed above and except as provided below, Employee will not be precluded from bringing his or her claims against the Company in an individual arbitration proceeding.

7.      **<u>Your Right to Opt Out of the Class Action and Representative Action Waivers for the</u>** *<u>Trujillo</u>* **<u>Case.</u>**  While arbitration is a mandatory condition of Employee's employment with the Company, for purposes of the *Trujillo* case, he or she may opt out of the Class Action and Representative Action Waivers, on a limited basis and only as to the *Trujillo* case, by notifying the Company in writing of his or her desire to opt out, either by (1) sending, within 30 days of the date this Agreement is executed by Employee, electronic mail to plecouras@chefswarehouse.com, stating his or her name and clearly indicating his or her intent to opt out of the Class Action and Representative Action Waivers for the *Trujillo* case, or (2) by sending a letter by U.S. Mail, or by any nationally recognized delivery service (e.g., UPS, Federal Express, etc.), or by hand delivery to:

> Patricia Lecouras
> Chief Human Resources Officer
> The Chefs' Warehouse
> 100 East Ridge Road
> Ridgefield, CT 06877

To be effective, the letter under option (2) must clearly indicate Employee's intent to opt out of this Agreement as to the *Trujillo* case, and must be dated and signed. The envelope containing the letter must be received (if delivered by hand) or post-marked within 30 days of the date this Agreement is executed by Employee. Employee's writing opting out of the Class Action and Representative Action Waivers for the *Trujillo* case, whether sent by (1) or (2), will be filed with a copy of this Agreement and maintained by the Company.

Should Employee not opt out of this Agreement within the 30-day period, Employee and the Company shall be bound by the terms of this Agreement, which includes all claims alleged in the *Trujillo* case. Employee has the right to consult with counsel of his or her choice concerning this Agreement. Employee understands that he or she will not be subject to retaliation if he or she exercises his or her right to assert claims or opt-out of coverage under this Agreement.

<u>IMPORTANT</u>:  If you opt out, as set forth in this Paragraph, you are still bound by this Agreement for all covered claims, as set forth in this Agreement, except for the class action and representative action claims brought by the *Trujillo* Plaintiff.

8.      **<u>Demand and Arbitration Procedure</u>**. A demand for arbitration giving notice of a claim must be filed with AAA within the limitations period established by applicable state and/or federal law, as determined by the claim(s) asserted.  In order to initiate a claim for arbitration, the party seeking arbitration must deliver to the local AAA office, and send to the other party a written request for arbitration within the time period required by the statute of limitations applicable to the party's claim (the time within which the party's claim must be filed according to law). Contact information for the nearest AAA office may be obtained from Company's Human Resources Department.

A single neutral arbitrator will conduct the arbitration and will be selected in accordance with the Rules. With the exception of the enforceability of the Class Action Waiver and the Representative Action Waiver (which must be decided by a court of competent jurisdiction), the arbitrator shall have the exclusive authority to resolve any dispute relating to the formation, interpretation, applicability and enforceability of this Agreement, including, without limitation, all issues regarding the arbitrability of any Claim.

The arbitration will take place in the city where Employee was last employed by the Company. However, if required by law or the Rules, the arbitrator shall have the authority to change the venue of the arbitration.

9.      **Arbitrator's Authority.**  The arbitrator must allow the parties discovery sufficient to adequately arbitrate their claims and defenses in accordance with applicable state or federal law, even if the Rules are more restrictive. The arbitrator has the authority to issue subpoenas to third parties to attend depositions and/or produce documents during pre-hearing discovery.  The arbitrator also has the authority to resolve all or portions of the dispute through a summary judgment motion or similar proceeding(s), and must allow any party to bring a dispositive motion in accordance with Federal Rules of Civil Procedure 56.  This provision supersedes Rule 27, which requires that the moving party establish substantial cause that the motion is likely to succeed and dispose of or narrow the issues in the case.  The arbitrator must render a written arbitration decision that reveals the essential findings and conclusions on which the decision is based. Such decision shall be final and binding subject to review only as provided by the law of the state in which the arbitration took place governing review of arbitration awards. If no state law on the subject exists, the award shall be subject to the standard of review provided in the Federal Arbitration Act, 9 U.S.C. Section 10. The award shall be enforceable in any court having jurisdiction.

10.      **Arbitration Fees and Costs:** Each party shall pay his/her or its own attorneys' fees if the party chooses to be represented by an attorney, except where the arbitrator orders that the prevailing party recover attorneys' fees from the other party under applicable law.  In no case, however, shall Employee bear any cost or expense as a result of arbitration that Employee would not be required to pay if the claim had been brought in court.

11.      **Remedies:** The arbitrator shall have the authority to award any remedy or relief that would have been available to the parties, in their individual capacity, had the matter been heard in court. The arbitrator has the authority to provide for the award of attorney's fees and costs to the prevailing party if such award is authorized or required by applicable law.

12.      **Severability/Entire Agreement:** Employee and the Company agree that if any part of this Agreement is deemed illegal, invalid or unenforceable, this declaration will not affect the legality, validity or enforceability of the remaining parts of the Agreement, and the illegal, invalid or unenforceable part will no longer be part of this Agreement.  Further, if a court of competent jurisdiction finds the Class Action Waiver or Representative Action Waiver unenforceable for any reason, the waiver provision shall be severable from this Agreement, and any class, collective, or representative action claims may only be litigated in a court of competent jurisdiction, but the remainder of the Agreement shall be binding and enforceable.  Employee and Company do not agree to arbitrate any class, collective, or representative action claims.

13.    **Confidentiality:** All aspects of the arbitration process, including any discovery, settlement discussions, the hearing, and the record of the proceeding, shall be strictly confidential and not open or disclosed to any third party or the public except to the extent that both parties may first agree otherwise in writing, or to the extent required in any subsequent proceeding between the parties or in response to the order of a government agency or court.

14.    **Voluntary and Binding Agreement:** Employee expressly acknowledges and agrees that he or she is executing this Agreement voluntarily and without any duress or undue influence. Employee further acknowledges and agrees that he or she has carefully read this Agreement and understands its terms, consequences and the binding effect of this Agreement.

**To the greatest extent permissible under applicable state law, this Agreement shall be interpreted and enforced pursuant to the Federal Arbitration Act, and otherwise shall be enforced and interpreted pursuant to the laws of the State in which Employee last worked for Company.**

**BY SIGNING THE ARBITRATION AGREEMENT BELOW AND ACCEPTING EMPLOYMENT OR CONTINUING EMPLOYMENT WITH THE COMPANY, EMPLOYEE ACKNOWLEDGES THAT HE/SHE HAS RECEIVED AND CAREFULLY READ THE ARBITRATION AGREEMENT AND UNDERSTANDS ITS TERMS, CONSEQUENCES, AND THE BINDING EFFECT OF THE AGREEMENT. EMPLOYEE FURTHER ACKNOWLEDGES AND AGREES TO BE BOUND BY ALL OF THE TERMS SET FORTH IN THIS ARBITRATION AGREEMENT. EMPLOYEE HEREBY KNOWINGLY AND VOLUNTARILY WAIVES HIS OR HER LEGAL RIGHTS TO CLASS, COLLECTIVE, AND REPRESENTATIVE PROCEDURES AND THE RIGHT TO TRIAL BY JURY OR JUDGE FOR ANY COVERED CLAIM SET FORTH IN THIS AGREEMENT.    EMPLOYEE, HOWEVER, RETAINS ALL OTHER RIGHTS, INCLUDING HIS OR HER RIGHT TO COUNSEL, TO CALL AND CROSS-EXAMINE WITNESSES, AND TO HAVE HIS OR HER CLAIMS ADDRESSED BY AN IMPARTIAL FACT FINDER.  EMPLOYEE ACKNOWLEDGES THAT HE OR SHE IS HEREBY ADVISED TO SEEK LEGAL ADVICE AS TO HIS OR HER RIGHTS AND RESPONSIBILITIES UNDER THIS AGREEMENT.**

**BY ISSUANCE OF THIS AGREEMENT, THE COMPANY AGREES TO BE BOUND TO ITS TERMS WITHOUT ANY REQUIREMENT TO SIGN THIS AGREEMENT.**

**EMPLOYEE**

_____        _____
**Name (print)**                        **Date**

_____
**Signature**

Martinez, Leticia

Status: Active   Employee Number: 41734

**To the greatest extent permissible under applicable state law, this Agreement shall be interpreted and enforced pursuant to the Federal Arbitration Act, and otherwise shall be enforced and interpreted pursuant to the laws of the State in which Employee last worked for Company.**

**BY SIGNING THE ARBITRATION AGREEMENT BELOW AND ACCEPTING EMPLOYMENT OR CONTINUING EMPLOYMENT WITH THE COMPANY, EMPLOYEE ACKNOWLEDGES THAT HE/SHE HAS RECEIVED AND CAREFULLY READ THE ARBITRATION AGREEMENT AND UNDERSTANDS ITS TERMS, CONSEQUENCES, AND THE BINDING EFFECT OF THE AGREEMENT. EMPLOYEE FURTHER ACKNOWLEDGES AND AGREES TO BE BOUND BY ALL OF THE TERMS SET FORTH IN THIS ARBITRATION AGREEMENT. EMPLOYEE HEREBY KNOWINGLY AND VOLUNTARILY WAIVES HIS OR HER LEGAL RIGHTS TO CLASS, COLLECTIVE, AND REPRESENTATIVE PROCEDURES AND THE RIGHT TO TRIAL BY JURY OR JUDGE FOR ANY COVERED CLAIM SET FORTH IN THIS AGREEMENT. EMPLOYEE, HOWEVER, RETAINS ALL OTHER RIGHTS, INCLUDING HIS OR HER RIGHT TO COUNSEL, TO CALL AND CROSS-EXAMINE WITNESSES, AND TO HAVE HIS OR HER CLAIMS ADDRESSED BY AN IMPARTIAL FACT FINDER. EMPLOYEE ACKNOWLEDGES THAT HE OR SHE IS HEREBY ADVISED TO SEEK LEGAL ADVICE AS TO HIS OR HER RIGHTS AND RESPONSIBILITIES UNDER THIS AGREEMENT.**

**BY ISSUANCE OF THIS AGREEMENT, THE COMPANY AGREES**

| File Name | Document Type | Last Updated | Last Modified By |
|---|---|---|---|
| Employee Arbitration Agreement - Del Monte.pdf | | 6/24/2020, 12:24:31 PM | cer.anson.pryor |

✔

I accept and acknowledge the company policy above.          Date:   6/29/2022

**Comment**

Add comment to the employee's file.

DocuSigned by:

*Martinez, Leticia*

42DF934657C4495...

# EXHIBIT B

## ARBITRATION AGREEMENT

As a condition of the employment relationship between _Leticia Martinez_ (the "Employee") and The Chefs' Warehouse West Coast, LLC, or any of its affiliates, subsidiaries, or parent companies (hereinafter collectively referred to as "Company"), and in consideration of the Employee's employment or continued employment with the Company, the parties agree to the following:

1.     **At-Will Employment**: Employee agrees that his or her employment with the Company is for an unspecified duration and is "at-will." Employee also agrees that his or her employment may be terminated at any time, with or without cause, by the Company or Employee, with or without notice.

2.     **Governing Law**: Employee and the Company agree that the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., governs this Agreement and preempts contrary provisions of state law. To that end, Employee and the Company hereby expressly agree that this Agreement is governed by the FAA and evidences a transaction involving commerce. The parties agree that except where in conflict with the FAA, this Agreement shall otherwise be interpreted and enforced pursuant to the laws of the State in which the Employee last was employed by the Company.

3.     **Arbitration Agreement**: It is hereby mutually agreed between the Company and Employee that any and all disputes between them, including, but not limited to, disputes arising out of or relating to the terms and conditions of Employee's employment or the termination thereof, will be subject to resolution only through final and binding arbitration through the American Arbitration Association ("AAA") and in accordance with the AAA's Employment Arbitration Rules and Mediation Procedures (the "Rules") and the terms of this Agreement. Employee may print the Rules from the AAA website at www.adr.org/employment or call 1-800-778-7879 to request that a copy be mailed to him or her. The Rules also are available upon request to Human Resources.

To the fullest extent permitted by law, Employee and the Company hereby expressly waive their right to a jury trial, bench trial, and their right to bring, maintain, participate in, or receive money from, any class, collective, or representative action, whether in court, arbitration or any other proceeding. The Company, while it may take all steps necessary to enforce this Agreement in legal proceedings, will not discipline or otherwise retaliate against Employee for engaging in concerted protected activity, even if that activity is in breach of this Agreement.

The claims covered by this Agreement include any and all controversies, claims, or disputes with the Company arising out of, relating to, or resulting from the Employee's employment with the Company or the termination of Employee's employment with the Company, including any breach of this Agreement (unless provisional or injunctive relief is sought), whether such claims are based in tort, contract, or statute, including, but not limited to, any claims brought for unpaid wages, unpaid compensation, penalties for missed meal or rest breaks, overtime, reimbursement of business expenses, claims under applicable federal or state statutes that govern the terms and conditions of employment, wrongful termination, unfair competition, discrimination, harassment, or unlawful retaliation, equitable law, or otherwise. This Agreement excludes employment-related

claims for workers' compensation, claims for unemployment insurance benefits, or any other claim excluded from mandatory arbitration by state or federal law.

Nothing in this Agreement is intended to prohibit Employee from filing any administrative claim that cannot be waived or communicating with administrative or governmental agencies such as the United States Equal Employment Opportunity Commission ("EEOC") or the applicable state equivalent, or from pursuing any claim that cannot, as a matter of law, be the subject of a prospective arbitration agreement.

4.    **Class Action Waiver.** To the extent permissible by law, there shall be no right or authority for any dispute to be arbitrated as a class action or collective action ("Class Action Waiver"). THIS MEANS THAT ALL DISPUTES BETWEEN EMPLOYEE AND THE COMPANY ARISING OUT OF EMPLOYEE'S EMPLOYMENT OR THE TERMINATION OF EMPLOYEE'S EMPLOYMENT SHALL PROCEED IN ARBITRATION SOLELY ON AN INDIVIDUAL BASIS, AND THAT THE ARBITRATOR'S AUTHORITY TO RESOLVE ANY DISPUTE AND TO MAKE WRITTEN AWARDS WILL BE LIMITED TO EMPLOYEE'S INDIVIDUAL CLAIMS.

5.    **Representative Action Waiver.** To the extent permissible by law, there shall be no right or authority for any dispute to be arbitrated as a representative action or as a private attorney general action, including but not limited to claims brought pursuant to the California Private Attorney General Act of 2004, Cal. Lab. Code § 2698, et seq. ("Representative Action Waiver"). THIS MEANS THAT, TO THE EXTENT CONSISTENT WITH APPLICABLE LAW, EMPLOYEE MAY NOT SEEK RELIEF ON BEHALF OF ANY OTHER PARTIES IN ARBITRATION, INCLUDING BUT NOT LIMITED TO SIMILARLY AGGRIEVED EMPLOYEES. THE ARBITRATOR'S AUTHORITY TO RESOLVE ANY DISPUTE AND TO MAKE WRITTEN AWARDS WILL BE LIMITED TO EMPLOYEE'S INDIVIDUAL CLAIMS.

6.    ***Trujillo* Case.**

IMPORTANT:  A putative class and representative action has been filed against the Company on behalf of all non-exempt employees who worked in California for The Chefs' Warehouse West Coast, LLC, Del Monte Capitol Meat Company, LLC, The Chefs' Warehouse, Inc., Qzina Specialty Foods, Inc., or Qzina Specialty Foods (Ambassador), Inc., and is currently pending in the United States District Court for the Central District of California: *Trujillo v. The Chefs' Warehouse West Coast, LLC et al.*, Case No. 2:19-cv-08370 (N.D. Cal) ("*Trujillo* case"). In this action, Plaintiff alleges that non-exempt, hourly-paid employees (excluding drivers and driver trainers) who worked for the Company in California were not provided all of their wages for hours worked (including minimum and overtime wages), meal and rest breaks, vacation wages, all wages due and owing at the time of termination, accurate time and payroll records, and reimbursement for necessary business expenses. Plaintiff also brings a claim under the California Private Attorney General Act of 2004, Cal. Lab. Code § 2698, et seq. The putative class period is July 22, 2015 to the present. If this case is certified, and the claims are successful, this may result in some monetary recovery to Employee.

The mere existence of this putative class action does not mean that the lawsuit will ultimately succeed. By signing this Agreement, Employee is agreeing in advance, except as otherwise

provided, that he or she will not participate in and, therefore, will not seek to recover monetary or other relief under any such class, collective, and/or representative lawsuit. However, as discussed above and except as provided below, Employee will not be precluded from bringing his or her claims against the Company in an individual arbitration proceeding.

7.    **Your Right to Opt Out of the Class Action and Representative Action Waivers for the _Trujillo_ Case.**  While arbitration is a mandatory condition of Employee's employment with the Company, for purposes of the _Trujillo_ case, he or she may opt out of the Class Action and Representative Action Waivers, on a limited basis and only as to the _Trujillo_ case, by notifying the Company in writing of his or her desire to opt out, either by (1) sending, within 30 days of the date this Agreement is executed by Employee, electronic mail to sgifford@chefswarehouse.com, stating his or her name and clearly indicating his or her intent to opt out of the Class Action and Representative Action Waivers for the _Trujillo_ case, or (2) by sending a letter by U.S. Mail, or by any nationally recognized delivery service (e.g., UPS, Federal Express, etc.), or by hand delivery to:

> Steve Gifford
> Vice President of Human Resources
> The Chefs' Warehouse
> 100 East Ridge Road
> Ridgefield, CT 06877

To be effective, the letter under option (2) must clearly indicate Employee's intent to opt out of this Agreement as to the _Trujillo_ case, and must be dated and signed. The envelope containing the letter must be received (if delivered by hand) or post-marked within 30 days of the date this Agreement is executed by Employee. Employee's writing opting out of the Class Action and Representative Action Waivers for the _Trujillo_ case, whether sent by (1) or (2), will be filed with a copy of this Agreement and maintained by the Company.

Should Employee not opt out of this Agreement within the 30-day period, Employee and the Company shall be bound by the terms of this Agreement, which includes all claims alleged in the _Trujillo_ case. Employee has the right to consult with counsel of his or her choice concerning this Agreement. Employee understands that he or she will not be subject to retaliation if he or she exercises his or her right to assert claims or opt-out of coverage under this Agreement.

IMPORTANT:  If you opt out, as set forth in this Paragraph, you are still bound by this Agreement for all covered claims, as set forth in this Agreement, except for the class action and representative action claims brought by the _Trujillo_ Plaintiff.

8.    **Demand and Arbitration Procedure**. A demand for arbitration giving notice of a claim must be filed with AAA within the limitations period established by applicable state and/or federal law, as determined by the claim(s) asserted.  In order to initiate a claim for arbitration, the party seeking arbitration must deliver to the local AAA office, and send to the other party a written request for arbitration within the time period required by the statute of limitations applicable to the party's claim (the time within which the party's claim must be filed according to law). Contact information for the nearest AAA office may be obtained from Company's Human Resources Department.

A single neutral arbitrator will conduct the arbitration and will be selected in accordance with the Rules. With the exception of the enforceability of the Class Action Waiver and the Representative Action Waiver (which must be decided by a court of competent jurisdiction), the arbitrator shall have the exclusive authority to resolve any dispute relating to the formation, interpretation, applicability and enforceability of this Agreement, including, without limitation, all issues regarding the arbitrability of any Claim.

The arbitration will take place in the city where Employee was last employed by the Company. However, if required by law or the Rules, the arbitrator shall have the authority to change the venue of the arbitration.

9. **Arbitrator's Authority.** The arbitrator must allow the parties discovery sufficient to adequately arbitrate their claims and defenses in accordance with applicable state or federal law, even if the Rules are more restrictive. The arbitrator has the authority to issue subpoenas to third parties to attend depositions and/or produce documents during pre-hearing discovery. The arbitrator also has the authority to resolve all or portions of the dispute through a summary judgment motion or similar proceeding(s), and must allow any party to bring a dispositive motion in accordance with Federal Rules of Civil Procedure 56. This provision supersedes Rule 27, which requires that the moving party establish substantial cause that the motion is likely to succeed and dispose of or narrow the issues in the case. The arbitrator must render a written arbitration decision that reveals the essential findings and conclusions on which the decision is based. Such decision shall be final and binding subject to review only as provided by the law of the state in which the arbitration took place governing review of arbitration awards. If no state law on the subject exists, the award shall be subject to the standard of review provided in the Federal Arbitration Act, 9 U.S.C. Section 10. The award shall be enforceable in any court having jurisdiction.

10. **Arbitration Fees and Costs:** Each party shall pay his/her or its own attorneys' fees if the party chooses to be represented by an attorney, except where the arbitrator orders that the prevailing party recover attorneys' fees from the other party under applicable law. In no case, however, shall Employee bear any cost or expense as a result of arbitration that Employee would not be required to pay if the claim had been brought in court.

11. **Remedies:** The arbitrator shall have the authority to award any remedy or relief that would have been available to the parties, in their individual capacity, had the matter been heard in court. The arbitrator has the authority to provide for the award of attorney's fees and costs to the prevailing party if such award is authorized or required by applicable law.

12. **Severability/Entire Agreement:** Employee and the Company agree that if any part of this Agreement is deemed illegal, invalid or unenforceable, this declaration will not affect the legality, validity or enforceability of the remaining parts of the Agreement, and the illegal, invalid or unenforceable part will no longer be part of this Agreement. Further, if a court of competent jurisdiction finds the Class Action Waiver or Representative Action Waiver unenforceable for any reason, the waiver provision shall be severable from this Agreement, and any class, collective, or representative action claims may only be litigated in a court of competent jurisdiction, but the remainder of the Agreement shall be binding and enforceable. Employee and Company do not agree to arbitrate any class, collective, or representative action claims.

13.    <u>Confidentiality</u>: All aspects of the arbitration process, including any discovery, settlement discussions, the hearing, and the record of the proceeding, shall be strictly confidential and not open or disclosed to any third party or the public except to the extent that both parties may first agree otherwise in writing, or to the extent required in any subsequent proceeding between the parties or in response to the order of a government agency or court.

14.    <u>Voluntary and Binding Agreement</u>: Employee expressly acknowledges and agrees that he or she is executing this Agreement voluntarily and without any duress or undue influence. Employee further acknowledges and agrees that he or she has carefully read this Agreement and understands its terms, consequences and the binding effect of this Agreement.

**To the greatest extent permissible under applicable state law, this Agreement shall be interpreted and enforced pursuant to the Federal Arbitration Act, and otherwise shall be enforced and interpreted pursuant to the laws of the State in which Employee last worked for Company.**

**BY SIGNING THE ARBITRATION AGREEMENT BELOW AND ACCEPTING EMPLOYMENT OR CONTINUING EMPLOYMENT WITH THE COMPANY, EMPLOYEE ACKNOWLEDGES THAT HE/SHE HAS RECEIVED AND CAREFULLY READ THE ARBITRATION AGREEMENT AND UNDERSTANDS ITS TERMS, CONSEQUENCES, AND THE BINDING EFFECT OF THE AGREEMENT. EMPLOYEE FURTHER ACKNOWLEDGES AND AGREES TO BE BOUND BY ALL OF THE TERMS SET FORTH IN THIS ARBITRATION AGREEMENT. EMPLOYEE HEREBY KNOWINGLY AND VOLUNTARILY WAIVES HIS OR HER LEGAL RIGHTS TO CLASS, COLLECTIVE, AND REPRESENTATIVE PROCEDURES AND THE RIGHT TO TRIAL BY JURY OR JUDGE FOR ANY COVERED CLAIM SET FORTH IN THIS AGREEMENT. EMPLOYEE, HOWEVER, RETAINS ALL OTHER RIGHTS, INCLUDING HIS OR HER RIGHT TO COUNSEL, TO CALL AND CROSS-EXAMINE WITNESSES, AND TO HAVE HIS OR HER CLAIMS ADDRESSED BY AN IMPARTIAL FACT FINDER. EMPLOYEE ACKNOWLEDGES THAT HE OR SHE IS HEREBY ADVISED TO SEEK LEGAL ADVICE AS TO HIS OR HER RIGHTS AND RESPONSIBILITIES UNDER THIS AGREEMENT.**

**BY ISSUANCE OF THIS AGREEMENT, THE COMPANY AGREES TO BE BOUND TO ITS TERMS WITHOUT ANY REQUIREMENT TO SIGN THIS AGREEMENT.**

**EMPLOYEE**

LETICIA MARTINEZ                         Oct. 21. 2022
Name (print)                                   Date

_____
Signature