MATTHEW J. MATERN (SBN 159798)
mmatern@maternlawgroup.com
MATTHEW W. GORDON (SBN 267971)
mgordon@maternlawgroup.com
ISABELLE C. SHEPARD (SBN 364723)
ishepard@maternlawgroup.com
MATERN LAW GROUP, PC
2101 E. El Segundo Blvd., Suite 403
El Segundo, California 90245
Telephone: (310) 531-1900
Facsimile: (310) 531-1901

Attorneys for Plaintiff
LETICIA PAREJA MARTINEZ, individually,
and on behalf of all others similarly situated

UNITED STATE DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LETICIA PAREJA MARTINEZ, an individual, on behalf of herself and all others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> DEL MONTE CAPITOL MEAT COMPANY, LLC, a Delaware limited liability company; ALLEN BROTHERS 1893, LLC, a Delaware limited liability company; THE CHEFS' WAREHOUSE, INC., a Delaware corporation; THE CHEFS' WAREHOUSE WEST COAST, LLC, a Delaware limited liability company; and DOES 1 through 500, inclusive, <br><br> Defendants. | Case No.: 3:26-cv-03267-JSC <br><br> **PLAINTIFF'S OPPOSITION DEFENDANTS' MOTION TO COMPEL ARBITRATION OF PLAINTIFF'S INDIVIDUAL CLAIMS, DISMISS CLASS CLAIMS, AND STAY ACTION** <br><br> Date:  July 10, 2026 <br> Time:  9:00 a.m. <br> Courtroom:  8 <br> Judge:  Hon. Jacqueline Scott Corley <br><br> Action Filed:  February 3, 2026 <br> Removed:  April 17, 2026 <br> Trial Date:  None Set |

**TABLE OF CONTENTS**

| | | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | FACTUAL AND PROCEDURAL BACKGROUND | 2 |
| III. | ARGUMENT | 5 |

A. Plaintiff Falls Under § 1 of the FAA's Transportation Worker Exemption, and Thus Cannot Be Compelled to Arbitration ............................................................................. 5

    1. Defining the Relevant Class of Workers to Which Plaintiff Belongs ........................ 6

    2. Plaintiff Is Among a Class of Workers Engaged in Interstate Commerce ................. 6

B. The Court Must Decide the Issues of Formation, Interpretation, Applicability, and Enforceability of the Agreement ........................................................................... 9

    1. There Is Not Clear and Unmistakable Evidence That the Parties Agreed to Arbitrate the Issue of Arbitrability.............................................................................. 9

    2. The Delegation Clause Is Procedurally Unconscionable.......................................... 10

    3. The Delegation Clause Is Substantively Unconscionable ........................................ 11

C. Defendants Have Failed to Meet Their Burden to Demonstrate a Contractual Agreement to Arbitrate ........................................................................................... 11

    1. Defendants Failed to Authenticate Plaintiff's Signature on the June 29, 2022 Electronic Agreement .............................................................................................. 11

    2. Defendants Failed to Authenticate Plaintiff's Signature on the October 21, 2022 Agreement................................................................................................................ 14

    3. Defendants Procured Plaintiff's Signature to the October 21, 2022 Agreement by Fraud in the Execution ...................................................................................... 14

D. The Agreement Is Unconscionable.............................................................................. 15

    1. The Agreement Is Procedurally Unconscionable ..................................................... 16

        a. The Facts Support a Finding the Agreement Is a Contract of Adhesion ....... 16

        b. The Facts Support a Finding of Oppression ................................................... 17

    2. The Agreements Are Substantively Unconscionable ............................................... 19

        a. The Agreements Lack Mutuality .................................................................... 20

        b. The Agreements Contain a Broad Representative Action Waiver ................ 20

        c. The Agreements Include an Unlawful PAGA Waiver ................................... 21

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION

## **TABLE OF CONTENTS** (Cont'd)

Page

d.    The *Trujillo* Waiver Improperly Interferes with Plaintiff's Statutory Rights .................................................................................... 21

e.    The Agreement's Confidentiality Clause Interferes with Vindication of Statutory Rights .......................................................................... 22

f.    The Two Conflicting Agreements to Arbitrate Are Unconscionable ............ 22

E.    Severing the Unconscionable Provisions Is Inappropriate ...................................... 23

F.    Even if the Court Is Inclined to Grant Defendants' Motion, the PAGA Representative Claims Cannot Be Compelled to Arbitration ................................ 23

IV.    CONCLUSION.............................................................................................................. 24

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Bissonnette v. LePage Bakeries Park St., LLC,*
601 U.S. 246 (2024) ..................................................................................................................... 6

*Canales v. CK Sales Co., LLC,*
67 F.4th 38 (1st Cir. 2023) ......................................................................................................... 7

*Chavarria v. Ralphs Grocery Co.,*
733 F.3d 916 (9th Cir. 2013) .................................................................................................... 16

*Dominguez v. Better Mortg. Corp.,*
88 F.4th 782 (9th Cir. 2023) ..................................................................................................... 21

*Heckman v. Live Nation Ent., Inc.,*
120 F.4th 670 (9th Cir. 2024) ................................................................................................... 11

*Johnson v. Walmart Inc.,*
57 F.4th 677 (9th Cir. 2023) ..................................................................................................... 11

*Knutson v. Sirius XM Radio Inc.,*
771 F.3d 559 (9th Cir. 2014) .................................................................................................... 11

*Lopez v. Aircraft Serv. Int'l Inc.,*
107 F. 4th 1096 (9th Cir. 2024) .................................................................................................. 6

*Mitchell v. Lineage Logistics Servs. LLC,*
769 F. Supp. 3d 1132 (E.D. Cal. 2025) ...................................................................................... 8

*Nagrampa v. MailCoups, Inc.,*
469 F.3d 1257 (9th Cir. 2006) .................................................................................................. 17

*Nair v. Medline Indus., LP,*
No. 23-15582, 2024 WL 4144070 (9th Cir. Sept. 11, 2024) ...................................................... 7

*New Prime Inc. v. Oliveira,*
586 U.S. 105 (2019) ..................................................................................................................... 5

*Ortiz v. Randstad Inhouse Servs., LLC,*
95 F.4th 1152 (9th Cir. 2024) ................................................................................................. 6, 7

*Perez v. DirecTV Group Holdings, LLC,*
251 F. Supp. 3d 1328 (C.D. Cal. 2017) .................................................................................... 18

*Rent-a-Center, West v. Jackson,*
561 U.S. 63 (2010) ....................................................................................................................... 9

*Rittmann v. Amazon.com, Inc.,*
971 F.3d 904 (9th Cir. 2020) ................................................................................................... 6, 8

*Sakkab v. Luxottica Retail N. Am., Inc.,*
803 F.3d 425 (9th Cir. 2015) .................................................................................................... 15

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION

**TABLE OF AUTHORITIES (Cont'd)**

**Page(s)**

*Sheelit v. AmeriSave Mortg. Corp.*,
754 F. Supp. 3d 995 (C.D. Cal. 2024)......................................................................................20

*Sw. Airlines Co. v. Saxon*,
596 U.S. 450 (2022) ..................................................................................................5, 6, 7

*Ting v. AT&T*,
319 F. 3d 1126 (9th Cir. 2003)..............................................................................................22

*Viking River Cruises, Inc. v. Moriana*,
596 U.S. 639 (2022) ...............................................................................................................20

*Zamudio v. Aerotek, Inc.*,
698 F. Supp. 3d 1202 (E.D. Cal. 2023) .............................................................................11, 12

**State Cases**

*Adolph v. Uber Technologies, Inc.*,
14 Cal. 5th 104 (2023)............................................................................................................24

*Ajamian v. CantorCO2e, L.P.*,
203 Cal. App. 4th 771 (2012).................................................................................................16

*Alberto v. Cambrian Homecare*,
91 Cal. App. 5th 482 (2023)....................................................................................................21

*Ali v. Daylight Transp., LLC*,
59 Cal. App. 5th 462 (2020)....................................................................................................18

*Armendariz v. Found. Health Psychcare Servs., Inc.*,
24 Cal. 4th 83 (2000)..............................................................16, 17, 18, 19, 20, 21, 23

*Baker v. Osborne Dev. Corp.*,
159 Cal. App. 4th 884 (2008)..............................................................................................9, 10

*Baltazar v. Forever 21, Inc.*,
62 Cal. 4th 1237 (2016)..........................................................................................................17

*Bannister v. Marinidence Opco, LLC*,
64 Cal. App. 5th 541 (2021)...............................................................................................12, 13

*Barrera v. Apple American Group LLC*,
(2023) 95 Cal.App.5th 63 .......................................................................................................21

*Baxter v. Genworth N. Am. Corp.*,
16 Cal. App. 5th 713 (2017)....................................................................................................18

*Campbell v. FPI Mgmt., Inc.*,
98 Cal. App. 5th 1151 (2024)..................................................................................................20

*Carmona v. Lincoln Millennium Car Wash, Inc.*,
226 Cal. App. 4th 74 (2014)....................................................................................................18

v

**TABLE OF AUTHORITIES (Cont'd)**

**Page(s)**

*Chindarah v. Pick Up Stix, Inc.*,
171 Cal. App. 4th 796 (2009)..................................................................................20

*Davis v. TWC Dealer Grp., Inc.*,
41 Cal. App. 5th 662 (2019).....................................................................................22

*DeMarinis v. Heritage Bank of Com.*,
98 Cal. App. 5th 776 (2023).....................................................................................21

*Garcia v. Stoneledge Furniture LLC*,
102 Cal. App. 5th 41 (2024)......................................................................................13

*Graham v. Scissor-Tail, Inc.*,
28 Cal. 3d 807 (1981)................................................................................................17

*Hasty v. Am. Auto. Assn. etc.*,
98 Cal. App. 5th 1041 (2023)....................................................................................21

*Haydon v. Elegance at Dublin, LLC*,
97 Cal. App. 5th 1280 (2023)....................................................................................22

*Jack v. Ring LLC*,
91 Cal. App. 5th 1186 (2023)...............................................................................9, 10

*Kinney v. United HealthCare Servs., Inc.*,
70 Cal. App. 4th 1322 (1999)....................................................................................16

*Little v. Auto Steigler, Inc.*,
29 Cal.4th 1064 (2003)..............................................................................................20

*McGill v. Citibank, N.A.*,
2 Cal. 5th 945 (2017).................................................................................................20

*McManus v. CIBC World Markets Corp.*,
109 Cal. App. 4th 76 (2003)......................................................................................16

*Mercuro v. Superior Ct.*,
96 Cal. App. 4th 167 (2002)......................................................................................16

*Murrey v. Superior Ct.*,
87 Cal.App.5th 1223 (2023).......................................................................................22

*Najarro v. Superior Ct.*,
70 Cal. App. 5th 871 (2021)............................................................................9, 10, 15

*O'Hare v. Mun. Res. Consultants*,
107 Cal. App. 4th 267 (2003)....................................................................................16

*OTO, L.L.C. v. Kho*,
8 Cal. 5th 111 (2019).....................................................................................16, 17, 18

*Penilla v. Westmont Corp.*,
3 Cal. App. 5th 205 (2016).........................................................................................18

vi

## TABLE OF AUTHORITIES (Cont'd)

**Page(s)**

*Pinela v. Neiman Marcus Grp., Inc.*,
  238 Cal. App. 4th 227, (2015) ................................................................................................11

*Pinnacle Museum Tower Assn. v. Pinnacle Mkt. Dev. (US), LLC*,
  55 Cal. 4th 223 (2012) ..........................................................................................................19

*Ramirez v. Charter Commc'ns, Inc.*,
  16 Cal. 5th (2024) ....................................................................................... 16, 18, 20, 23

*Ramos v. Superior Ct.*,
  28 Cal.App.5th 1042 (2018) ..................................................................................................22

*Rosenthal v. Great W. Fin. Sec. Corp.*,
  14 Cal. 4th 394 (1996) ...................................................................................................14, 15

*Samaniego v. Empire Today*,
  205 Cal. App. 4th 1138 (2012) ........................................................................................17, 18

*Sanchez v. Superior Ct.*,
  108 Cal. App. 5th 615 (2025) ................................................................................................19

*Sandquist v. Lebo Auto., Inc.*,
  1 Cal. 5th 233 (2016) ..............................................................................................................9

*Stoker v. Blue Origin, LLC*,
  120 Cal. App. 5th 91 (2026) ..................................................................................................21

*Tiri v. Lucky Chances*,
  226 Cal.App.4th 231 (2014) ...............................................................................................9, 10

**Federal Statutes**

9 U.S.C. § 1 ...................................................................................................................................5

**State Statutes**

Cal. Code Civ. Proc. § 1001 ......................................................................................................22

Cal. Code Civ. Proc. § 1281 ......................................................................................................16

Cal. Code Civ. Proc. § 1633.9 ...................................................................................................11

Cal. Code Civ. Proc. § 1668 ......................................................................................................21

Cal. Code Civ. Proc. § 1670.5 ...................................................................................................16

Cal. Code Civ. Proc.§ 3513 ......................................................................................................21

Cal. Lab. Code § 206.5(a) ..........................................................................................................21

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Defendants Del Monte Capitol Meat Company, LLC, Allen Brothers 1893, LLC, The Chefs' Warehouse, Inc., and the Chefs' Warehouse West Coast, LLC's ("Defendants") Motion to Compel Arbitration of Plaintiff's Individual Claims, Dismiss Class Claims, and Stay Action (Including Representative Component of PAGA Claim) should be denied in its entirety because the arbitration agreements are unenforceable.

First, Plaintiff falls under the transportation worker exemption in Section 1 of the Federal Arbitration Act ("FAA"), and thus cannot be compelled to arbitration.

Second, the issue of arbitrability cannot be delegated to the arbitrator because the delegation clause is not clear and unmistakable and is unconscionable.

Third, Defendants have failed to demonstrate a contractual agreement to arbitrate because Defendants failed to authenticate the June 29, 2022 agreement, which plaintiff never signed nor received, and Defendants procured Plaintiff's signature on the October 21, 2022 agreement through fraud in the execution. Under settled California law, such facts preclude any finding of mutual assent and are fatal to Defendants' motion.

Fourth, even if Defendants could establish an agreement to arbitrate—which they cannot—the arbitration agreements are permeated with unconscionability. Defendants seek to avoid judicial scrutiny by invoking English arbitration agreements against Plaintiff, whose highest level of education is middle school and whose native language is Spanish. Defendants forced Plaintiff to sign an English agreement in October 2022 and failed to explain the arbitration agreement in Spanish despite knowledge that Plaintiff could not read English. The agreements were imposed as a condition of continued employment without negotiation, meaningful choice, or explanation. Substantively, the agreements are rife with one-sided terms that improperly restrict statutory rights, impose sweeping confidentiality, and waive representative claims. These provisions tilt the arbitral forum sharply in Defendants' favor and unlawfully chill the exercise of nonwaivable employee rights.

For all of these reasons, as explained more fully below, Defendants' motion to compel arbitration should be denied in its entirety.

1

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff's native language is Spanish. Declaration of Leticia Pareja Martinez ("Martinez Decl.") ¶ 3. She can only read some words in English and can only very minimally speak and understand English. *Id.* The highest level of education Plaintiff has completed is middle school. *Id.* at ¶ 4. Plaintiff does not have professional experience in the legal field, nor does she have experience reviewing or negotiating contracts. *Id.*

In or around June 2022, Plaintiff was hired by Defendants to work as a Packer in the Production Utility Department at Defendant's warehouse in Union City, California. *Id.* at ¶ 5. In approximately September 2024, Plaintiff was transferred to Defendants' Richmond, California location. *Id.* Plaintiff worked as a Packer for Defendants from in or around July 2022 to in or around January 2025. *Id.* Thereafter, Plaintiff sustained an injury and changed job positions to a Box Maker & Sorter in or around January 2025 to in or around September 2025. *Id.*

In or around June 2022, Plaintiff was interviewed by Gerardo Contreras ("Mr. Contreras"), the Production Manager of Defendants' Union City facility, for the position of Packer. *Id.* at ¶ 6. Mr. Contreras spoke Spanish and only communicated with Plaintiff in Spanish throughout her employment. *Id.* After the interview, Mr. Contreras told Plaintiff she needed to bring a negative drug test, and then she would be hired. *Id.* After she sent her negative drug test, Mr. Contreras told Plaintiff she was hired. *Id.* Plaintiff considered Mr. Contreras to have supervisory authority over her.

On or around June 29, 2022, Plaintiff started her first day of work at Defendants' Union City facility. *Id.* at ¶ 7. Plaintiff did not receive any onboarding or training on her first day. *Id.* Instead, in Spanish, Mr. Contreras just told Plaintiff she needed to sign a few documents for the company's records. *Id.* At the Union City facility, there was no computer available for non-supervisory employees like Plaintiff to use. *Id.* Plaintiff and other hourly employees clocked in and out on a machine. *Id.* Only supervisors had computers in their offices. *Id.* Mr. Contreras told Plaintiff to log into a platform on his computer in his office to sign the documents. *Id.* Plaintiff was having trouble logging in to her account because she did not know how to create a password. *Id.* Plaintiff asked Mr. Contreras for help. *Id.* Mr. Contreras told Plaintiff he knew her credentials and that he could do it for her. *Id.*

Plaintiff did not sign an electronic arbitration agreement on June 29, 2022. *Id.* at ¶ 8. Any documents

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION

that show Plaintiff electronically signed an arbitration agreement on June 29, 2022 must be because someone else, such as Mr. Contreras who knew Plaintiff's credentials, electronically signed the document. *Id.* Plaintiff did not check "I accept" on any electronic documents on June 29, 2022. *Id.* Plaintiff could not have signed the document because she never signed into Dayforce to review documents on a computer with a password. *Id.* Furthermore, there were no computers available for Plaintiff to login to such a platform, as computers were only available to supervisory employees. *Id.* Plaintiff did not review or authorize her time records through Dayforce because she did not know how to do so. *Id.* Plaintiff did not ask for a Spanish version of an arbitration agreement in or around June 2022 because she was never presented with such an arbitration agreement at that time nor was she told to sign such an agreement. *Id.* at ¶ 9.

Defendants contend that Plaintiff electronically signed an arbitration agreement on June 29, 2022, however, Defendants provide no explanation for which supervisory employee led Plaintiff's onboarding, what device at the Union City facility Plaintiff used to sign in to Dayforce, or whether Plaintiff was trained by anyone for how to set up her password. Farinha Decl. ¶¶ 7-17; Declaration of Sahand Feizi ("Feizi Decl.") ¶¶ 16-17.

On or around October 21, 2022, Plaintiff believes it was Mr. Contreras who asked her to sign a document. *Id.* at ¶ 10. To the best of her recollection, Mr. Contreras told Plaintiff to quickly sign the document so she could get back to work because it was "just a record that you're an employee here." *Id.* Plaintiff thought the document was simply a formality. *Id.* The document was in English. *Id.* Mr. Contreras did not tell Plaintiff that she could request a Spanish version of the document. *Id.* Plaintiff signed the document because she thought it was for Defendants' record of her employment. *Id.* Because Mr. Contreras had supervisory authority over Plaintiff and told her to quickly sign so she could get back to work, she trusted his representation that it was just a formality. *Id.* Plaintiff never intended to waive any legal rights related to her employment at Defendants. *Id.* Plaintiff felt pressured to sign because Mr. Contreras was standing over her, waiting for her sign, and so she could get back to work. *Id.*

Plaintiff did not know that the document she signed was an arbitration agreement and Mr. Contreras did not tell Plaintiff that she was signing an arbitration agreement. *Id.* at ¶ 11. Plaintiff had no idea she signed an English arbitration agreement or what an arbitration agreement was. *Id.* No one explained in Spanish what an arbitration agreement was or what she was signing. *Id.* No one at Defendants mentioned

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION

an arbitration agreement, explained its contents, or allowed Plaintiff an opportunity to negotiate its terms. *Id.* Plaintiff did not review the arbitration agreement with an attorney at the time of signing it. *Id.*

Defendants contend that Plaintiff electronically signed an arbitration agreement on October 21, 2022. Farinha Decl. ¶ 18. However, Plaintiff's signature on the October 21, 2022 agreement is clearly a wet-ink signature. *See* Farinha Decl., Exh. B. Defendants provide no information whatsoever for how the October 21, 2022 arbitration agreement was presented to Plaintiff, who presented the agreement to Plaintiff, whether someone explained in Spanish what an arbitration agreement was, or whether she was offered a Spanish version of the agreement. Farinha Decl. ¶ 18; Feizi Decl. ¶ 18.

Defendants were aware that Plaintiff could not read English and could only minimally speak and understand English. *Id.* at ¶ 12. Throughout her employment, Defendants would ensure that someone onsite could translate for Plaintiff during an important conversation. *Id.* Defendants also provided Plaintiff with a copy of her termination letter in English and Spanish. Martinez Decl. ¶ 12; Declaration of Isabelle C. Shepard ("Shepard Decl.") ¶ 6, Exh. C. Despite this, Defendants contend that "Plaintiff also did not request a Spanish-language version of any other onboarding or employment document during employment." Farinha Decl. ¶ 22.

As a Packer for Defendants, Plaintiff's job duties included packaging meat so it could be shipped across California and out of state. *Id.* at ¶ 13. Plaintiff had to build boxes and sanitize and monitor a conveyor belt which carried various meats. *Id.* Then, Plaintiff put the meat in boxes, weighed the packages, labeled the packages, and placed the packaged meat on a shelf to be sent out. *Id.* At the Union City and Richmond locations, approximately once per year every September, meat was shipped out of state to Las Vegas, Nevada for an annual company event held there. *Id.* Plaintiff knew meat was being shipped to Las Vegas because the packages had Las Vegas shipping labels. *Id.* Plaintiff also saw a couple of boxes coming into the Union City facility from Las Vegas with pallets of meat on them. *Id.* In general, Plaintiff believes that the meat arrived at the Union City and Richmond facilities from farms in Minnesota, Oklahoma, South Dakota, and California, among other states across the country. *Id.*

As a Box Maker & Sorter, Plaintiff had to build boxes so they could be filled with products, count and sort boxes, and stack boxes on pallets for distribution. *Id.* at ¶ 14.

Defendants contend that Plaintiff merely assembled boxes and cleaned the facility. Feizi Decl. ¶ 8.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION

However, the Production Training Checklist produced by Defendants that Plaintiff signed clearly states that part of plaintiff's job duties was "checking weight for cut orders before sent to pack-out;" "checking the cut product on a scale;" "checking the box label to make sure that the right product is being labeled;" and "checking the finished label after packaging." Shepard Decl. Exh. A. Defendant further concedes that the products Plaintiff packaged were shipped to customers outside of California. Feizi Decl. ¶ 14.

On February 3, 2026, Plaintiff filed the instant wage and hour class and representative action against Defendants. *Id.* at ¶ 7. The complaint alleges the following causes of action: (1) failure to provide required meal periods; (2) failure to authorize and permit required rest periods; (3) failure to pay minimum wages; (4) failure to pay overtime; (5) failure to timely pay wages due to discharged and quitting employees; (6) failure to furnish accurate itemized wage statements; (7) failure to indemnify employees for necessary expenditures incurred in discharge of duties; (8) unfair and unlawful business practices; and (9) penalties under the Labor Code Private Attorneys General Act of 2004. *Id.* On April 17, 2026, Defendants removed the Action to federal court, in the Northern District of California. *Id.* at ¶ 8. On June 4, 2026, Defendants served Plaintiff with the Motion. *Id.* at ¶ 9.

## III.    ARGUMENT

### A.    Plaintiff Falls Under § 1 of the FAA's Transportation Worker Exemption, and Thus Cannot Be Compelled to Arbitration

The issue of whether Plaintiff falls under the FAA transportation worker exemption must be decided by the Court—it cannot be delegated to an arbitrator. *New Prime Inc. v. Oliveira*, 586 U.S. 105, 111 (2019) ("[A] court should decide for itself whether § 1's "contracts of employment" exclusion applies before ordering arbitration."). According to § 1 of the FAA, if the plaintiff who signed an arbitration agreement belongs to a "class of workers engaged in foreign or interstate commerce," they are exempt from the FAA's coverage. 9 U.S.C. § 1. The Supreme Court established a two-step test to determine whether a worker falls under this transportation worker exemption: (1) first, define the relevant "class of workers" to which the Plaintiff belongs and (2) determine whether that class of workers is "engaged in foreign or interstate commerce." *Sw. Airlines Co. v. Saxon*, 596 U.S. 450, 455 (2022). Here, the agreements are governed by the FAA, as the agreements explicitly invoke the FAA. *See* Farinha Decl., Exhs. A, B.

///

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION

### 1.    Defining the Relevant Class of Workers to Which Plaintiff Belongs

The relevant class of workers is defined by "the actual work that the members of the class, as a whole, typically carry out," not the type of work the employer does generally. *Saxon*, 596 U.S. at 456. Here, as a Packer, Plaintiff built boxes, sanitized a conveyor belt which carried various meats, put the meat in boxes, weighed the packages, labeled the packages, and placed the packaged meat on a shelf to be sent out. Martinez Decl. ¶ 13. At least once per year, she saw shipping labels that indicated the meat was being sent out of state to Las Vegas, Nevada. *Id.* Plaintiff also saw a couple of boxes coming into the Union City facility from Las Vegas with pallets of meat on them. *Id.* She believes that the meat arrived at the facilities she worked at from farms in Minnesota, Oklahoma, South Dakota, and California. *Id.* In fact, Defendants' website states that they are engaged in the distribution of meat across North America and throughout the world. *See* Plaintiff's Request for Judicial Notice in Support of Plaintiff's Opposition to Defendant's Motion to Compel Arbitration, Exh. A. Thus, Plaintiff belongs to a class of workers who packaged meat that came from out of state so it could be shipped across California and out of state.

### 2.    Plaintiff Is Among a Class of Workers Engaged in Interstate Commerce

"[T]o qualify as a transportation worker, an employee's relationship to the movement of goods must be sufficiently close enough to conclude that his work plays a tangible and meaningful role in their progress through the channels of interstate commerce." *Ortiz v. Randstad Inhouse Servs., LLC*, 95 F.4th 1152, 1160 (9th Cir. 2024) (citing generally *Sw. Airlines Co. v. Saxon*, 596 U.S. 450 (2022)).

Whether Plaintiff works in the transportation industry is not dispositive. *Bissonnette v. LePage Bakeries Park St., LLC*, 601 U.S. 246, 252 (2024) (holding a transportation worker is not required to work for a company in the transportation industry to be exempt under § 1 of the FAA).  The transportation worker does not have to cross state borders. *See Saxon*, 596 U.S. at 458 (holding "one who loads cargo on a plane bound for interstate travel" is a transportation worker); *Lopez v. Aircraft Serv. Int'l Inc.*, 107 F. 4th 1096, 1103 (9th Cir. 2024) (concluding a fuel technician who places fuel in a plane used for foreign and interstate commerce is a transportation worker); *Rittmann v. Amazon.com, Inc.*, 971 F.3d 904, 909 (9th Cir. 2020) (holding drivers who made the "last mile" deliveries of packaged products from Amazon warehouses were engaged in the movement of interstate commerce and were transportation workers). It is not dispositive whether the class members *have other duties*; after all, the Supreme Court determined

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION

in *Saxon* that a ramp supervisor who frequently filled in as a ramp agent to load and unload cargo from airplanes that travel in interstate commerce was a transportation worker for purposes of the FAA exemption. *Saxon*, 596 U.S. at 454, 463; *Canales v. CK Sales Co., LLC*, 67 F.4th 38, 46 (1st Cir. 2023) (workers who frequently perform transportation work do not lose their transportation-worker status merely because they also have other responsibilities.).

In *Ortiz*, the employee defined his job duties as "(1) unloading and picking up the packages and transporting them to the warehouse racks to organize them, (2) transport[ing] the packages to the picking section of the warehouse, (3) assisting Pickers in obtaining packages so they could be shipped out, and (4) assist[ing] the Outflow Department to prepare packages to leave the warehouse for their final destination." *Ortiz*, 95 F.4th at 1158 (quotation marks omitted). The court found that Ortiz was engaged in interstate commerce because he "ensured that goods would reach their final destination by processing and storing them while they awaited further interstate transport" which was a "necessary step in their ongoing interstate journey to their final destination." *Id.* at 1162.

Similarly, here, as a Packer, Plaintiff packaged meat, some of which was received from out of state, to be shipped across California and out of state. Martinez Decl. ¶ 13. She packaged the meat in boxes, labeled packages, and placed them on a shelf to be shipped out, a necessary step in the meat's ongoing interstate journey to its final destination. *Id.*; *see also Nair v. Medline Indus., LP*, No. 23-15582, 2024 WL 4144070, at *1 (9th Cir. Sept. 11, 2024) (finding worker fell under the FAA exemption because she "spent 100% of [her] time stacking pallets and wrapping them in saran wrap to load onto trucks").

Defendants allege that Plaintiff merely assembled boxes and cleaned the production area. Feizi Decl. ¶ 8. However, this is incorrect, as Plaintiff's main job duty was packaging meat, as was indicated in her job title "Packer." Some of the documents in Plaintiff's personnel file indicate the title she held was Packer. *See* Shepard Decl. ¶ 6, Exh. B. Defendants have not produced a job description for her role to date. However, prior to litigation, Defendants produced Plaintiff's personnel file, which included a Production Training Checklist showing job duties such as "checking weight for cut orders before sent to pack-out;" "checking the cut product on a scale;" "checking the box label to make sure that the right product is being labeled;" and "checking the finished label after packaging." among other duties. Shepard Decl. ¶ 6, Exh. A. This demonstrates that Plaintiff was responsible for weighing and packaging meats that were going to be sent

7

out to customers. Nonetheless, courts have held that even just organizing boxes in preparation for shipment outside the warehouse to various locations is enough to find that the worker is engaged in interstate commerce. *See Mitchell v. Lineage Logistics Servs. LLC*, 769 F. Supp. 3d 1132, 1142 (E.D. Cal. 2025) ("The role of preparing boxes for egress from the facility or organizing them for storage before they are ready to be shipped is necessary to the subsequent transit of those goods out of the facility. In other words, those goods cannot be transported without the workers like Plaintiff who organize them for shipment.").

Defendants allege that less than 1% of deliveries were made to customers outside of California. Feizi Decl. ¶ 14. However, it does not matter whether a majority of the goods were destined for intrastate customers, as long as the facility routinely sent shipments to out-of-state locations. *See Mitchell v. Lineage Logistics Servs. LLC*, 769 F. Supp. at 1143 (finding that the goods entered the channels of interstate commerce because the facility routinely sent shipments to out of state locations). Plaintiff saw that the meat was being shipped out of state to Las Vegas once per year in September, which means that the meat was routinely shipped out of state. Martinez. Decl. ¶ 13. Nonetheless, even if the meat Plaintiff packaged was not sent out of state, she received at least some of the meat from out of state, including Minnesota, Oklahoma, and South Dakota. *Id*. Plaintiff also saw a couple of boxes coming into the Union City facility from Las Vegas with pallets of meat on them. *Id*. The Ninth Circuit held that as long as the worker is involved in the last leg of delivery, the worker is involved in interstate commerce because the packages remain in the stream of interstate commerce until delivered. *See Rittmann*, 971 F.3d at 915 (finding workers engaged in interstate commerce because although they only delivered packages in-state, the goods had been distributed to Amazon warehouses across state lines and were transported by the workers for the last leg of the shipment to their destination). Similarly, here, Plaintiff received meat from out of state and packaged and labeled it to be sent throughout California.

Accordingly, given that Plaintiff was involved in the packaging of meat that came from out of state to be shipped out of state, Plaintiff falls under the FAA transportation worker exemption and Defendants' motion to compel must be denied in its entirety. In the alternative, Plaintiff requests that the Court allow the parties to conduct discovery related to where Defendants received their meats from and what percentage of the meat was shipped out of state before ruling on Defendants' motion.

///

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION

**B.**      **The Court Must Decide the Issues of Formation, Interpretation, Applicability, and Enforceability of the Agreement**

Plaintiff challenges the delegation clause in the agreements. To be effective, a delegation clause must satisfy two prerequisites: (1) language must be "clear and unmistakable," and (2) the delegation cannot be "revocable under state contract defenses such as fraud, duress, or unconscionability." *Tiri v. Lucky Chances*, 226 Cal.App.4th 231, 242 (2014) (citing *Rent-a-Center, West v. Jackson*, 561 U.S. 63 (2010)). "When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally ... should apply ordinary state-law principles that govern the formation of contracts." *Sandquist v. Lebo Auto., Inc.*, 1 Cal. 5th 233, 244 (2016). "[I]nsofar as the question who decides presents a disputed issue of contract interpretation, state law, not federal law, normally governs such matters." *Id*. (citation and quotation marks omitted).

**1.**      **There Is Not Clear and Unmistakable Evidence That the Parties Agreed to Arbitrate the Issue of Arbitrability**

To satisfy the clear and unmistakable requirement, there must be no ambiguity that the parties agreed to delegate issues of arbitrability to the arbitrator. Courts have held that when an arbitration agreement contains a delegation clause, but also a severability provision, that there is ambiguity and thus the agreement did not "clearly and unmistakably" reserve to the arbitrator the issue of whether the arbitration agreement was enforceable. *See Jack v. Ring LLC*, 91 Cal. App. 5th 1186, 1199 (2023) (finding ambiguity where the agreement had both a delegation clause and a severability provision where a court may decide whether the arbitration must be conducted on an individual basis and not in a class, representative, or private attorney general action); *Najarro v. Superior Ct.*, 70 Cal. App. 5th 871, 880 (2021), as modified (Oct. 22, 2021); *Baker v. Osborne Dev. Corp.*, 159 Cal. App. 4th 884, 893 (2008) (finding ambiguity where one provision of the arbitration agreement stated that issues of enforceability or voidability were to be decided by the arbitrator, whereas another provision indicated that the court might find a provision unenforceable).

Similarly, here, the agreements that Plaintiff purportedly signed contain a severability provision, which states, "if a court of competent jurisdiction finds the Class Action Waiver or Representative Action Waiver unenforceable for any reason, the waiver provision shall be severable from this Agreement, and any class, collective, or representative action claims may only be litigated in a court of competent jurisdiction,

9

but the remainder of the Agreement shall be binding and enforceable." Farinha Decl., Exh. A, B ¶ 12. Further, the delegation clause itself states, "[w]ith the exception of the enforceability of the Class Action Waiver and the Representative Action Waiver (which must be decided by a court of competent jurisdiction), the arbitrator shall have the exclusive authority to resolve any dispute relating to the formation, interpretation, applicability and enforceability of this Agreement, including, without limitation, all issues regarding the arbitrability of any Claim." Farinha Decl., Exh. A, B ¶ 8. This ambiguity fails the clear and unmistakable test, as it provides the court jurisdiction to decide whether the claims can be litigated on a class or representative basis, while at the same time reserving arbitrability to the arbitrator. *See Jack*, 91 Cal. App. 5th at 1199; *Najarro*, 70 Cal. App. 5th at 880; *Baker*, 159 Cal. App. 4th at 893.

**2.    The Delegation Clause Is Procedurally Unconscionable**

Additionally, the delegation clause is procedurally unconscionable. Courts have found that a delegation clause is procedurally unconscionable when it is a contract of adhesion, where the clause was drafted by the employer and presented to the employee on a take-it-or-leave-it basis. *Tiri v. Lucky Chances, Inc.*, 226 Cal. App. 4th 231, 245 (2014). Here, the delegation clause was drafted by Defendants and presented to Plaintiff on a take-it-or-leave-it basis, as Defendants require that all employees sign the arbitration agreement as a condition of employment. Farinha Decl. ¶ 7. Furthermore, courts have found procedural unconscionability where the delegation clause is presented with oppression, or inequality of bargaining power, which results in no real negotiation and an absence of meaningful choice, and surprise, which involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in the prolix printed form drafted by the party seeking to enforce the disputed terms. *Tiri*, 226 Cal. App. 4th at 245 (finding the delegation clause procedurally unconscionable because of "[t]he arcane nature of the clause, Tiri's lack of sophistication, and the failure of Lucky Chances to provide adequate time to review the agreement.").

Similarly, here, Plaintiff had no bargaining power or ability to negotiate, as no one explained to her in Spanish that she was signing an arbitration agreement in English. Martinez Decl. ¶¶ 7-11. The delegation clause was hidden in the agreements in paragraph 8, as the heading of the paragraph does not indicate that there is a delegation clause within that paragraph. Farinha Decl., Exh. A, B ¶ 8. Plaintiff is an unsophisticated party, as the highest level of education she has completed is middle school. Martinez Decl. ¶ 4. Plaintiff was

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION

not given adequate time to review either of the two agreements. *Id.* at ¶¶ 7-11.

### 3. The Delegation Clause Is Substantively Unconscionable

Finally, the delegation clause is substantively unconscionable. The delegation clause includes a carve-out for the Court to decide whether the class and representative action waivers are enforceable. This is a one-sided carve-out which strips the delegation clause of mutuality. *See Heckman v. Live Nation Ent., Inc.*, 120 F.4th 670, 687 (9th Cir. 2024) (finding delegation clause substantively unconscionable where asymmetrical provision applied to delegation clause); *Pinela v. Neiman Marcus Grp., Inc.*, 238 Cal. App. 4th 227, 246, (2015) (a delegation clause "may be found substantively unconscionable where it imposes an unfair burden that is different from the inherent features and consequences of delegation clauses").

Accordingly, the Court should find the delegation clause unenforceable and retain jurisdiction to decide the issue of arbitrability.

### C. Defendants Have Failed to Meet Their Burden to Demonstrate a Contractual Agreement to Arbitrate

The party seeking to compel arbitration bears the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence. *Johnson v. Walmart Inc.*, 57 F.4th 677, 681 (9th Cir. 2023) (citing *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014)). When "the existence of an arbitration agreement is at issue and thus the presumption in favor of arbitrability does not apply, we use general state-law principles of contract interpretation to decide whether a contractual obligation to arbitrate exists." *Johnson v. Walmart Inc.*, 57 F.4th 677, 681 (9th Cir. 2023) (citation and quotation marks omitted).

### 1. Defendants Failed to Authenticate Plaintiff's Signature on the June 29, 2022 Electronic Agreement

Under California's Uniform Electronic Transactions Act, "[a]n electronic record or electronic signature is attributable to a person if it was the act of the person." Cal. Civ. Code § 1633.9.

In *Zamudio v. Aerotek*, the court found that the defendant failed to authenticate the electronic signature as an act of the plaintiff because the declaration put forth by the defendant was insufficient. *Zamudio v. Aerotek, Inc.*, 698 F. Supp. 3d 1202, 1209 (E.D. Cal. 2023). The declaration did not specifically discuss the plaintiff's onboarding process, provide enough detail about the steps that the plaintiff took to create her account, discuss IP addresses, elaborate on any security measure for protecting passwords, or for

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION

transmitting and storing information such as passwords and forms, and, most crucially, did not foreclose the possibility that other individuals could have accessed Plaintiff's personnel files and/or signed the agreement. *Id.*

Similarly, here, the declaration of Jennifer Farinha ("Ms. Farinha") fails to authenticate the electronic signature as an act of Plaintiff by a preponderance of the evidence. Although Ms. Farinha describes generally the onboarding process, she did not personally onboard Plaintiff nor does she personally complete the onboarding process with hourly employees at Defendants' facilities. Farinha Decl. ¶¶ 6-7. Ms. Farinha did not provide enough detail about the steps that Plaintiff took to create her account, she merely stated, "[e]ach DayForce user accesses the platform using a unique log-in username and a password that the user creates." *Id.* at ¶ 9. This is a conclusory statement and does not describe the process by which the user creates the password for the first time. Ms. Farinha's declaration does not discuss IP addresses at all. *See generally* Farinha Decl. Ms. Farinha did not elaborate on security measures Defendants take to protect employee passwords, including for transmitting and storing information such as passwords or forms, she merely stated, "Del Monte does not have access to, and cannot view, user passwords." *Id.* at ¶ 9. Again, this conclusory statement provides no detail for how Defendants protect employee passwords. Finally, Ms. Farinha's statement does not disclose the possibility that others could have signed the agreement on Plaintiff's behalf; in fact, she states the opposite: "unless someone was logged into DayForce using Plaintiff's unique user ID and password, there would have been no way to generate the electronic DocuSign signature appearing in her name on the June 2022 Agreement or any other document she completed through DayForce." *Id.* at ¶ 16. Defendants essentially concede that one of Plaintiff's supervisors who knew her credentials could have signed the agreement for her.

Furthermore, Plaintiff has alleged enough facts to show that Defendants cannot prove by a preponderance of the evidence that the electronic signature was the act of Plaintiff. In *Bannister v. Marinidence Opco, LLC*, the court affirmed the trial court's conclusion that the defendant failed to prove that the plaintiff electronically signed the arbitration agreement because the plaintiff alleged that she was not informed about an arbitration agreement, never saw the arbitration agreement, never clicked "I agree" or otherwise signed the arbitration agreement during the onboarding process. *Bannister v. Marinidence Opco*, LLC, 64 Cal. App. 5th 541, 546 (2021), as modified (May 21, 2021). Instead, a human resources

12

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION

manager completed the process for the plaintiff on her own computer, which the plaintiff did not operate, and the plaintiff did not sit next to her and read the documents while the human resources manager completed the onboarding for the plaintiff on her computer. *Id* at 547. Additionally, in *Garcia v. Stoneledge Furniture LLC*, the court rejected the defendant's challenge to the trial court's finding that it failed to establish the authenticity of the signature on the agreement because the declaration put forth by the defendant "did not detail the security precautions regarding the use of the Taleo username and password; the arbitration agreement lacked a date, time, or IP address; and the agreement contained no indication it was created within the Taleo system." *Garcia v. Stoneledge Furniture LLC*, 102 Cal. App. 5th 41, 54 (2024).

Similarly, here, the agreement allegedly electronically signed by Plaintiff on June 29, 2022 has multiple anomalies. First, there is no signature on page 5 of the agreement, Defendants produced a separate document tacked on the end of the agreement which allegedly contains an electronic signature. *See* Farinha Decl. Exhibit A. The first page of the agreement also does not contain Plaintiff's name in the blank where the name of the "Employee" should be written. *Id.* Second, the "DocuSign Envelope ID" at the top of the page with the electronic signature does not appear anywhere among the 5 pages of the agreement. *Id.* Thus, there is no way to tell what document the person who affixed the electronic signature was reading prior to affixing the signature. This also indicates that even if Plaintiff had affixed the electronic signature on the separate page, she could have been presented this page without being presented with the arbitration agreement at all. In fact, the DocuSign Envelope ID appears at the top of all pages on the Employee Acknowledgements that Plaintiff signed, but not on all pages of the arbitration agreement that Defendants have put forth. *Compare* Shepard Decl. ¶ 6, Exh. B *with* Farinha Decl., Exh. A.; *see also Garcia*, 102 Cal. App. 5th at 47 (comparing the arbitration agreement to other documents the plaintiff had signed, which all contained the same IP address while the arbitration agreement did not reflect any IP address). Additionally, there is no time stamp or IP address next to the electronic signature and the page with Plaintiff's alleged electronic signature contains no indication that it was created within the Dayforce platform. *Id.* Thus, there is no way to tell that Plaintiff's Dayforce password was used to authenticate the signature. The only identifier on the document is Plaintiff's employee number, and if Plaintiff's employee number was all that was required to sign, Defendants could have easily signed the agreement for her.

Further, Plaintiff did not sign this agreement because on her first day of work, she was having trouble

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION

logging in to her account. Martinez Decl. ¶ 7. She did not know how to create a password. *Id.* The highest level of education Plaintiff has completed is middle school. *Id.* at ¶ 4. When Plaintiff asked her supervisor, Mr. Contreras, for help, he simply told her that he knew her credentials and that he could do it for her. *Id.* Plaintiff did not electronically sign any documents that day because she could not sign in to her account. *Id.* at ¶ 8. There were no computers accessible for hourly employees like Plaintiff, and she did not review or authorize her time records through Dayforce because she did not know how to do so. *Id.* Plaintiff clocked in and out on a machine throughout her employment. *Id.* Additionally, the signature on the page presented by Defendants is merely Plaintiff's name typed. *See* Farinha Decl. Exhibit A. The signature does not resemble Plaintiff's wet ink signature on the agreement signed by Plaintiff on October 21, 2022. *Compare* Farinha Decl. Exh. A *with* Farinha Decl. Exh. B. If someone electronically signed the document, then it must have been someone else who had Plaintiff's credentials, like Mr. Contreras.

### 2. Defendants Failed to Authenticate Plaintiff's Signature on the October 21, 2022 Agreement

In Ms. Farinha's declaration, she stated, "In or around October 2022, Del Monte updated its Arbitration Agreement and distributed the revised version to existing non-exempt California employees, including Plaintiff. Plaintiff **electronically signed** the updated Arbitration Agreement on October 21, 2022, during the course of her employment." Farinha Decl. ¶ 18 (emphasis added). However, Plaintiff's signature on the October 21, 2022 agreement is clearly an ink signature—not an electronic signature. Farinha Decl., Exh. B. Ms. Farinha fails to allege any facts as to how this agreement was presented to Plaintiff or the process by which Plaintiff signed it. Ms. Farinha does not state whether anyone explained to Plaintiff in Spanish what an arbitration agreement was at this time. Similarly, in his declaration, Sahand Feizi does not explain how this agreement was presented to Plaintiff, simply that she signed it. Feizi Decl. ¶ 18.

### 3. Defendants Procured Plaintiff's Signature to the October 21, 2022 Agreement by Fraud in the Execution

Fraud in the execution is committed when "the promisor is deceived as to the nature of his act, and actually does not know what he is signing, or does intend to enter into a contract at all." *Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal. 4th 394, 415 (1996) (citation and quotation marks omitted). However, the promisor's reliance on the other party's misrepresentations must not be unreasonable. *Id.* at 423. Plaintiff

must show that her signature on the agreement "is negated by fraud so fundamental that [she was] deceived as to the basic character of the documents [she] signed and had no reasonable opportunity to learn the truth." *Id.* at 425. If the Court finds that Defendants procured Plaintiff's signature on the agreement due to fraud in the execution, the Court must deny Defendants' motion to compel arbitration because "claims of fraud in the execution of the entire agreement are not arbitrable under either state or federal law." *Id.* at 416.

In *Najarro v. Superior Court*, the court held that fraud in the execution rendered the arbitration agreement void and unenforceable to petitioners Martha Serrano and Maria Munoz. *Najarro v. Superior Ct.*, 70 Cal. App. 5th 871, 888 (2021). As for Serrano, the court found fraud because Serrano did not know how to read and was told it was "nothing important" when she asked what the documents said. *Id.* at 887. As for Munoz, the court found fraud because an employee "flipped to the signature page, obstructed her view of the document, and instructed her to sign," stating, "it's just a requirement to work for the company." *Id.*

Similarly, here, Plaintiff was deceived, did not know what she was signing, and did not intend to enter into a contract. Martinez Decl. ¶¶ 10-11. Mr. Contreras told Plaintiff to sign the document because it was "just a record that you're an employee here." *Id.* at ¶ 10. Plaintiff did not know that she was signing an arbitration agreement because she could not read English and no one explained in Spanish that the document was an arbitration agreement. *Id.* at ¶¶ 10-11. Plaintiff did not ask any questions because Mr. Contreras made it seem like just a formality. *Id.* Plaintiff's reliance on Mr. Contreras' misrepresentation was reasonable because he had supervisory authority over her and she had no reason to doubt his representations that the document was simply a formality. *Id.* at ¶ 10. Plaintiff had no reasonable opportunity to learn the truth because Mr. Contreras told her to quickly sign so she could get back to work, while he was standing over her, watching her sign. *Id.* Thus, the Court should find that the agreement was executed due to fraud and deny Defendants' motion to compel arbitration.

**D.    The Agreement Is Unconscionable**

In the alternative, the Court should find that the purported arbitration agreement is unconscionable and therefore unenforceable. Unconscionability is a defense to the enforcement of contracts generally, including agreements to arbitrate. *Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425, 432 (9th Cir. 2015) (an arbitration agreement may be invalidated by generally applicable contract defenses, such as fraud,

15

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION

duress, or unconscionability); Cal. Code Civ. Proc. § 1281 ("A written agreement to submit to arbitration . . . a controversy thereafter arising is valid, enforceable, and irrevocable, save upon such grounds as exist for the revocation of any contract"); Cal. Civ. Code § 1670.5; *O'Hare v. Mun. Res. Consultants*, 107 Cal. App. 4th 267, 272 (2003) (motion to compel arbitration should be denied if "grounds exist for the revocation of the agreement").

Unconscionability has a procedural element and a substantive element, both of which must be present for a contract to be rendered unenforceable. *Kinney v. United HealthCare Servs., Inc*., 70 Cal. App. 4th 1322, 1329 (1999). However, both elements need not be present in the same degree. *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000) ("[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa."); *Mercuro v. Superior Ct.*, 96 Cal. App. 4th 167, 174 (2002) (holding that given the employer's highly oppressive conduct in obtaining the employee's consent to the arbitration agreement, the employee was required to make only a minimal showing of substantive unconscionability).

Here, the Agreement is both procedurally and substantively unconscionable. Because the Agreement is "permeated by an unlawful purpose" and it cannot be saved by severance, the Court should find that it is unenforceable under California law. *Ramirez,* 16 Cal. 5th at 515 (quoting *Armendariz*, 24 Cal.4th at 124).

### 1.    The Agreement Is Procedurally Unconscionable

Procedural unconscionability exists where absence of meaningful choice, meaningful understanding and assent, surprise, and/or oppression exists. *Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 922 (9th Cir. 2013). It concerns the manner in which the contract was negotiated, focusing on the oppression that arises from unequal bargaining power and the surprise to the weaker party that results from hidden terms or lack of informed choice. *Ajamian v. CantorCO2e, L.P.*, 203 Cal. App. 4th 771, 795 (2012). Arbitration agreements are procedurally unconscionable when "they must be executed as a condition of employment." *McManus v. CIBC World Markets Corp.*, 109 Cal. App. 4th 76, 91 (2003).

### a.    The Facts Support a Finding the Agreement Is a Contract of Adhesion

The threshold inquiry in California's procedural unconscionability analysis is whether the arbitration agreement is adhesive. *OTO, L.L.C. v. Kho*, 8 Cal. 5th 111, 126 (2019); *Armendariz*, 24 Cal.4th at 113;

16

*Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1280 (9th Cir. 2006). A "contract of adhesion" is "a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it. *Graham v. Scissor-Tail, Inc.*, 28 Cal. 3d 807, 817 (1981); *OTO, L.L.C*, 8 Cal. 5th at 126 (citing *Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 1245 (2016)) ("An adhesive contract is standardized, generally on a preprinted form, and offered by the party with superior bargaining power "on a take-it-or-leave-it basis."). In *Armendariz,* the California Supreme Court held that, where an arbitration agreement is imposed on an employee as a condition of employment and there is no opportunity to negotiate the terms, the agreement is a contract of adhesion and therefore procedurally unconscionable. *Armendariz,* 24 Cal. 4th at 114-15; *see also Samaniego v. Empire Today*, 205 Cal. App. 4th 1138, 1142 (2012) (finding procedural unconscionability where signatures were obtained on a "take it or leave it" basis).

Here, Plaintiff had no opportunity to negotiate the terms of the electronically signed June 29, 2022 agreement because she was never presented with such an agreement and did not sign such an agreement. Martinez Decl. ¶¶ 7-9. Plaintiff had no opportunity to negotiate the terms of the October 21, 2022 agreement she signed because her supervisor quickly presented it to her and made it seem like simply a formality. Martinez Decl. ¶¶ 10-11. Both agreements are clearly pre-printed contracts of adhesion. Defendants did not provide any evidence that Plaintiff had an opportunity to negotiate the contracts' terms.  *See generally* Farinha Decl.; Feizi Decl. Furthermore, Defendants concede that "Del Monte employees nationwide are required to sign the mutual Arbitration Agreement as a condition of employment and continued employment." Farinha Decl. ¶ 7; *see also* Farinha Decl., Exh. A, B ("As a condition of the employment relationship between . . . and in consideration of the Employee's employment or continued employment with the Company, the parties agree to the following:"). Courts have held that arbitration agreements imposed as a condition of employment evidence a contract of adhesion. *See OTO, L.L.C.*, 8 Cal. 5th at 126 ("Arbitration contracts imposed as a condition of employment are typically adhesive").

Accordingly, both agreements meet the minimum showing of a contract of adhesion.

### b.      The Facts Support a Finding of Oppression

"The circumstances relevant to establishing oppression include, but are not limited to (1) the amount of time the party is given to consider the proposed contract; (2) the amount and type of pressure exerted on

17

the party to sign the proposed contract; (3) the length of the proposed contract and the length and complexity of the challenged provision; (4) the education and experience of the party; and (5) whether the party's review of the proposed contract was aided by an attorney." *OTO, L.L.C.*, 8 Cal. 5th at 126-27. The *Armendariz* court reasoned that, "in the case of preemployment arbitration contracts, the economic pressure exerted by employers on all but the most sought-after employees may be particularly acute, for the arbitration agreement stands between the employee and necessary employment, and few employees are in a position to refuse a job because of an arbitration requirement." *Armendariz*, 24 Cal. 4th at 115.

The facts here support a finding of oppression. First, as identified previously, the agreements allegedly signed by Plaintiff were a condition of Plaintiff's employment at Defendants.  Courts have found that requiring the arbitration agreement as a condition of employment leads to a finding of significant oppression. *See Ali v. Daylight Transp., LLC*, 59 Cal. App. 5th 462 (2020) (finding "significant oppression" when employer required employees to sign agreements as a condition of employment without an opportunity to consult an attorney); *Baxter v. Genworth N. Am. Corp.*, 16 Cal. App. 5th 713 (2017) (disapproved on other grounds by *Ramirez v. Charter Commc'ns*, *Inc.*, 16 Cal. 5th 478 (2024)) (finding high degree of oppression when employer presented agreement as a condition of continued employment on a take-it-or-leave-it basis, and employee lacked equal bargaining power).

Second, most importantly, Defendants presented both agreements to Plaintiff in English, although Defendants were aware that Plaintiff could only very minimally read and speak English. Martinez Decl. ¶¶ 6-12. Courts have found procedural unconscionability where a Spanish-speaking employee was required to sign the agreement and was only provided an English copy. *See Samaniego v. Empire Today LLC*, 205 Cal. App. 4th 1138, 1146 (2012); *Carmona v. Lincoln Millennium Car Wash, Inc*., 226 Cal. App. 4th 74, 85 (2014); *Penilla v. Westmont Corp.*, 3 Cal. App. 5th 205, 216 (2016); *Perez v. DirecTV Group Holdings, LLC* 251 F. Supp. 3d 1328 (C.D. Cal. 2017) (finding a high degree of procedural unconscionability where "the agreement was presented in English to a known Spanish-speaker at the end of a transaction conducted in Spanish"). Defendants had at least one important meeting with Plaintiff during her employment with someone to interpret for her in Spanish. Martinez Decl. ¶ 12. When she was terminated, Defendants provided Plaintiff's termination letter to her in both English and Spanish. Shepard Decl. ¶ 6, Exh. C. Mr. Contreras only communicated with Plaintiff in Spanish and knew she could not read English. Martinez Decl. ¶¶ 6, 12.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION

Defendants did not tell Plaintiff she could request a Spanish version of documents she had to sign. Martinez Decl. ¶ 10.

As for the length of time, pressure extended, and whether the party's review was aided by an attorney, these factors also weigh in favor of finding procedural unconscionability. Since Plaintiff did not have any opportunity to review the June 29, 2022 agreement, and she did not sign it, this demonstrates oppression. Martinez Decl. ¶¶ 7-8. As for the October 21, 2022 agreement, Plaintiff was told to quickly sign so she could get back to work and did not have an opportunity to review the agreement with an attorney. *Id.* at ¶ 10. Mr. Contreras extended pressure over Plaintiff while he stood over her, waiting for her to sign. *Id.* Plaintiff was told that the document was "just a record that you're an employee here." *Id*; *see also Sanchez v. Superior Ct.*, 108 Cal. App. 5th 615, 626 (2025) (finding oppression where the employee was not given time to review the agreement before signing it).

Additionally, at the time of signing the Agreement, the highest level of education Plaintiff had completed was middle school. Martinez Decl. ¶ 4. Plaintiff did not understand what an arbitration agreement was, and she did not understand that she signed an arbitration agreement. *Id.* at ¶ 11. No one at Defendants mentioned an arbitration agreement to Plaintiff or explained what an arbitration agreement was in Spanish. *Id.* Plaintiff did not know she could ask for a Spanish version of the document. *Id.* at ¶ 10.

Thus, the facts support a finding of oppression, demonstrating a high degree of procedural unconscionability.

### 2. The Agreements Are Substantively Unconscionable

Substantive unconscionability focuses on overly harsh or one-sided results. *Armendariz*, 24 Cal. 4th at 114. The appropriate inquiry in determining whether an arbitration agreement is substantively unconscionable "is whether the arbitration clause is unreasonably one-sided in favor of the party imposing the arbitration." *Pinnacle Museum Tower Assn. v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 258 (2012). Moreover, under the sliding scale approach adopted by *Armendariz*, only a minimal amount of substantive unconscionability must be established given the strong indicia of procedural unconscionability in this case. *Armendariz*, 24 Cal. 4th at 114. An arbitration agreement must satisfy all requirements of due process as set forth in *Armendariz*. *Armendariz* requires that an arbitration agreement: (1) provides for neutral arbitrators; (2) provides for more than minimal discovery; (3) requires a written award; (4) provides

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION

for all types of relief that would otherwise be available in court; (5) does not require employees to pay either unreasonable costs or any arbitrators' fees or expenses as a condition of access to the arbitration forum; and (6) the agreement is mutual such that both the employer and the employee are required to arbitrate their disputes under the agreement. *Armendariz*, 24 Cal.4th at 102; *see also Little v. Auto Steigler, Inc*. (2003) 29 Cal.4th 1064, 1076. Here, the Agreements are substantively unconscionable for numerous reasons.

### a.   The Agreements Lack Mutuality

The arbitration agreements lack mutuality because the covered claims include those that would more likely be initiated by an employee. *See* Farinha Decl., Exh. A, B at ¶ 3 ("The claims covered by this Agreement include any and all controversies, claims, or disputes with the Company arising out of, relating to, or resulting from the Employee's employment . . . including, but not limited to, any claims brought for unpaid wages, unpaid compensation, penalties for missed meal or rest breaks, overtime, reimbursement of business expenses, claims under applicable federal or state statutes that govern the terms and conditions of employment, wrongful termination, unfair competition, discrimination, harassment, or unlawful retaliation, equitable law, or otherwise."); *see also Ramirez*, 16 Cal. 5th at 495–96 (2024) ("The agreement cannot require 'one contracting party, but not the other, to arbitrate all claims arising out of the same transaction or occurrence or series of transactions or occurrences." … Instead, a ''modicum of bilaterality'' is required." (internal citations omitted)); *Sheelit v. AmeriSave Mortg. Corp.*, 754 F. Supp. 3d 995, 1009 (C.D. Cal. 2024) (finding the arbitration agreement "lacks mutuality because it requires arbitration for claims most likely brought by employees but excludes from arbitration claims most likely brought by the employer").

### b.   The Agreements Contain a Broad Representative Action Waiver

Further, the representative action waiver within both agreements covers *all* representative actions, which the U.S. Supreme Court has held as overly broad. *See, generally, Viking River Cruises, Inc. v. Moriana* (2022) 596 U.S. 639. The arbitration agreements unlawfully preclude an employee's right to seek wages through a representative action in the event he or she lacks capacity to bring a direct claim. *Chindarah v. Pick Up Stix, Inc.*, 171 Cal. App. 4th 796, 803 (2009) (right to wages is unwaivable). The representative action ban also improperly encompasses Unfair Competition Law ("UCL") claims and claims for public injunctive relief.  *See Campbell v. FPI Mgmt., Inc.*, 98 Cal. App. 5th 1151, 1168 (2024) (finding UCL actions are representative); *see McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 961 (2017) (UCL

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION

claim for public injunctive relief is nonwaivable). In applying this overly broad provision and the Agreements as a whole, Defendants can seek to bring in as many entities and other potential third parties as they want to an action. However, Defendants limited Plaintiff's ability to bring a class action via the waiver provision, demonstrating oppression and overtly favoring the employer. The employee cannot join other employees or represent other employees, thereby expanding the employer's rights, but limiting the employee's. The agreements also improperly waive rights to participate and collect money in a class, representative, or collective action.  *See* Cal. Lab. Code § 206.5(a);  Cal. Civ. Code § 3513; Cal. Civ. Code § 1668; *Armendariz*, 24 Cal.4th at 115.

### c.   The Agreements Include an Unlawful PAGA Waiver

Contractual waiver of the right to prosecute PAGA claims is unenforceable as it is against California public policy. *Barrera v. Apple American Group LLC* (2023) 95 Cal.App.5th 63, 82-83. *See* Farinha Decl., Exhs. A, B at ¶ 5 ("To the extent permissible by law, there shall be no right or authority for any dispute to be arbitrated as a representative action or as a private attorney general action, including but not limited to claims brought pursuant to the California Private Attorney General Act of 2004."). Courts have found that blanket, categorical waivers of PAGA claims that waive both individual and nonindividual claims are substantively unconscionable. *See Stoker v. Blue Origin, LLC*, 120 Cal. App. 5th 91, 111-112 (2026); *Alberto v. Cambrian Homecare*, 91 Cal. App. 5th 482, 494-495 (2023); *DeMarinis v. Heritage Bank of Com.*, 98 Cal. App. 5th 776, 786-787 (2023); *Hasty v. Am. Auto. Assn. etc.*, 98 Cal. App. 5th 1041, 1063 (2023).

### d.   The *Trujillo* Waiver Improperly Interferes with Plaintiff's Statutory Rights

The agreements contain a waiver of a then-pending class action which Plaintiff could have participated in. *See* Farinha Decl., Exhs. A, B ("By signing this Agreement, Employee is agreeing in advance, except as otherwise provided, that he or she will not participate in and, therefore, will not seek to recover monetary or other relief under any such class, collective, and/or representative lawsuit."). The Ninth Circuit held that the "coercive tactic" of forcing employees to sign arbitration agreements regarding a pending class action in order to continue working there "smacks of retaliation and interference with both federal and state statutory rights." *Dominguez v. Better Mortg. Corp.*, 88 F.4th 782, 792 (9th Cir. 2023). Thus, the Court should find this term substantively unconscionable because it interferes with Plaintiff's

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION

statutory rights to participate in a previously filed, pending class action.

### e. The Agreement's Confidentiality Clause Interferes with Vindication of Statutory Rights

The arbitration agreements' confidentiality clause is substantively unconscionable because it broadly mandates that "[a]ll aspects of the arbitration process" and the arbitration hearing itself be kept private and confidential, thereby restricting employees' ability to investigate, prove, and vindicate statutory rights. Farinha Decl., Exhs. A, B at ¶ 13. It is well established that provisions requiring arbitration proceedings to be maintained in strict confidence are substantively unconscionable, particularly where they impede informal discovery and prevent employees from learning about prior similar claims or arbitral outcomes. *Ramos v. Superior Ct.*, 28 Cal.App.5th 1042, 1067 (2018); *Murrey v. Superior Ct.*, 87 Cal.App.5th 1223, 1255 (2023); *Haydon v. Elegance at Dublin, LLC*, 97 Cal. App. 5th 1280 (2023); Code of Civil Procedure section 1001 (statute prohibits contractual provisions that restrict disclosure of factual information relating to claims of workplace harassment, discrimination, or retaliation.)

Although facially neutral, confidentiality provisions in arbitration agreements "usually favor companies over individuals" by enabling employers—who are repeat players in arbitration—to accumulate institutional knowledge while depriving employees of access to precedent and comparable outcomes. *Ting v. AT&T*, 319 F. 3d 1126, 1151–1152 (9th Cir. 2003). This asymmetry gives the drafting party a "far superior legal posture" and discourages employees from pursuing valid statutory claims, rendering the confidentiality clause unlawful and unenforceable.

### f. The Two Conflicting Agreements to Arbitrate Are Unconscionable

The fact that Defendants forced Plaintiff to sign two separate agreements to arbitrate with several inconsistencies, and are not arguing that one supersedes the other, supports a finding of unconscionability. *See Davis v. TWC Dealer Grp., Inc.*, 41 Cal. App. 5th 662, 675 (2019) (finding unconscionability given that the three agreements contained several inconsistencies). The June 29, 2022 agreement refers to Del Monte Capitol Meat Company, LLC as the "Company," whereas the October 21, 2022 agreement refers to The Chefs' Warehouse West Coast, LLC as the "Company." *Compare* Farinha Decl., Exh. A *with* Farinha Decl., Exh. B. Additionally, the opt-out provision in paragraph 7 provides different addresses to send notice to between the two agreements. *Compare* Farinha Decl., Exh. A *with* Farinha Decl., Exh. B.

**E.      Severing the Unconscionable Provisions Is Inappropriate**

Severing the unconscionable provisions would be inappropriate here. A court must perform a "qualitative" inquiry if an arbitration agreement has more than one unenforceable term:

> At the outset, a court should ask whether 'the central purpose of the contract is tainted with illegality.' … If so, the contract cannot be cured, and the court should refuse to enforce it.  If that is not the case, the court should go on to ask first, whether the contract's unconscionability can be cured purely through severance or restriction of its terms, or whether reformation by augmentation is necessary … If the unconscionability cannot be cured by extirpating or limiting the offending provisions, but instead requires augmentation to cure the unconscionability, then the court should refuse to enforce the contract. … Even if a contract can be cured, the court should also ask whether the unconscionability should be cured through severance or restriction because the interests of justice would be furthered by such actions. …  This part of the inquiry focuses on whether mere severance of the unconscionable terms would function to condone an illegal scheme and whether the defects in the agreement indicate that the stronger party engaged in a systematic effort to impose arbitration on the weaker party not simply as an alternative to litigation, but to secure a forum that works to the stronger party's advantage. … If the answer to either question is yes, the court should refuse to enforce the agreement.

*Ramirez*, 16 Cal. 5th at 516-517 (citations omitted).

Here, the arbitration agreements are tainted with substantive unconscionability throughout that is not severable. Since the agreements lack mutuality, cover claims that are more likely be raised by the employee, contain a broad representative action waiver, improperly limit Plaintiff's statutory rights, contain a confidentiality clause interfering with the vindication of statutory rights, and are used as a tool to impose arbitration on the weaker party, the above provisions cannot be cured through severance. Thus, the appropriate remedy is to deny Defendants' Motion. *See Ramirez*, 16 Cal. 5th at 515 (when "a court is unable to cure this unconscionability through severance or restriction and is not permitted to cure it through reformation and augmentation, it must void the entire agreement") (quoting *Armendariz*, 24 Cal. 4th at 125).

**F.      Even if the Court Is Inclined to Grant Defendants' Motion, the PAGA Representative Claims Cannot Be Compelled to Arbitration**

If the Court grants Defendants' motion as to Plaintiff's individual and class claims, the Court should not compel Plaintiff's PAGA representative action to arbitration. In Adolph v. Uber Technologies, Inc., the California Supreme Court held that, even where a Plaintiff's individual PAGA

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION

claims are compelled to arbitration, a Court cannot compel the PAGA representative action to arbitration. Adolph v. Uber Technologies, Inc., 14 Cal. 5th 1104, 1126-27 (2023) (allowing an employee to waive the right to bring representative PAGA action "runs counter to the statutory scheme," and would "seriously impair the state's ability to collect and distribute civil penalties under the provisions of the statute."). Accordingly, even if Plaintiff's individual PAGA claims are compelled to arbitration, her representative PAGA action must remain under this Court's jurisdiction.

## IV.    CONCLUSION

For all the foregoing reasons, Defendants' motion should be denied in its entirety.

DATED: June 18, 2026                    Respectfully submitted,

MATERN LAW GROUP, PC

By:    _/s/ Isabelle C. Shepard_____
MATTHEW J. MATERN
MATTHEW W. GORDON
ISABELLE C. SHEPARD
Attorneys for Plaintiff LETICIA PAREJA MARTINEZ,
individually, and on behalf of all others
similarly situated

24

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION