SEYFARTH SHAW LLP
Michele J. Beilke (SBN 194098)
mbeilke@seyfarth.com
Julia Y. Trankiem (SBN 228666)
jtrankiem@seyfarth.com
Alex W. Simon (SBN 310842)
asimon@seyfarth.com
601 South Figueroa Street, Suite 3300
Los Angeles, California 90017-5793
Telephone:  (213) 270-9600
Facsimile:   (213) 270-9601

Attorneys for Defendants
DEL MONTE CAPITOL MEAT COMPANY, LLC;
ALLEN BROTHERS 1893, LLC; THE CHEFS'
WAREHOUSE, INC.; AND THE CHEFS' WAREHOUSE
WEST COAST, LLC

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LETICIA PAREJA MARTINEZ, an individual, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DEL MONTE CAPITOL MEAT COMPANY, LLC, a Delaware limited liability company; ALLEN BROTHERS 1893, LLC, a Delaware limited liability company; THE CHEFS' WAREHOUSE, INC., a Delaware corporation; THE CHEFS' WAREHOUSE WEST COAST, LLC, a Delaware limited liability company; and DOES 1 through 500, inclusive,<br><br>Defendants. | Case No. 3:26-CV-03267-JSC<br><br>**Hon. Jacqueline Scott Corley**<br><br>**DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION OF PLAINTIFF'S INDIVIDUAL CLAIMS, DISMISS CLASS CLAIMS, AND STAY ACTION (INCLUDING REPRESENTATIVE COMPONENT OF PAGA CLAIM)**<br><br>Date:        July 10, 2026<br>Time:        9:00 a.m.<br>Courtroom:   8<br><br>Complaint Filed:   February 23, 2026 |

DEFS.' REPLY ISO MOTION TO COMPEL ARBITRATION, DISMISS CLASS CLAIMS, AND STAY ACTION

**TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION .................................................................................................. 1

II.    ARGUMENT ....................................................................................................... 1

    A.    The FAA Governs, And Plaintiff Has Not Met Her Burden To Prove Any Exemption. ....... 1

    B.    Even If Plaintiff Were A Transportation Worker, The Agreement Is Independently Enforceable Under California Law ................................................................. 4

    C.    Plaintiff Entered Into A Valid Arbitration Agreement. ......................................... 5

        1.    Plaintiff's Speculation Does Not Defeat The June 2022 Agreement. ...................... 5

        2.    Plaintiff Cannot Turn Her Admitted Wet-Ink Signature On The October 2022 Agreement Into Fraud In The Execution. ................................................ 6

    D.    The Delegation Clause Sends Plaintiff's Gateway Challenges To The Arbitrator. .............. 8

    E.    The Agreement Is Not Unconscionable. ............................................................ 11

        1.    Any Procedural Unconscionability Is Minimal. ..................................... 11

        2.    There Is No Substantive Unconscionability ......................................... 12

    F.    Severance Saves The Agreement If Necessary .................................................... 14

    G.    Plaintiff's PAGA Argument Addresses Relief Defendants Never Sought ........................ 15

    H.    Plaintiff Concedes The Class Action Waiver And The Stay. ..................................... 15

III.    CONCLUSION .................................................................................................. 15

DEFS.' REPLY ISO MOTION TO COMPEL ARBITRATION, DISMISS CLASS CLAIMS, AND STAY ACTION

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*A.L.A. Schechter Poultry Corp. v. United States,*
  295 U.S. 495 (1935)................................................................................................................ 3

*Anaya v. Tesla Motors, Inc.,*
  No. 24-cv-04206-VC, 2024 WL 4198463 (N.D. Cal. Sept. 16, 2024) .................................. 4

*AT&T Mobility LLC v. Concepcion,*
  563 U.S. 333 (2011)................................................................................................................ 1

*Bacajol v. ALDI Foods Inc.,*
  No. 25-cv-2963-JGB, 2026 WL 836840 (C.D. Cal. Mar. 19, 2026) ..................................... 5

*Bahamonde v. Amazon.com Servs. LLC,*
  No. 25-cv-03499-JSC, 2025 WL 2021801 (N.D. Cal. July 18, 2025)................................... 5

*Bissonnette v. LePage Bakeries Park St., LLC,*
  601 U.S. 246 (2024)................................................................................................................ 2

*Byler v. MasTec Services Co.,*
  No. 5:25-00181, 2025 WL 1722110 (C.D. Cal. Apr. 29, 2025) ...................................... 9, 10

*Capriole v. Uber Techs., Inc.,*
  7 F.4th 854 (9th Cir. 2021) ................................................................................................ 2, 4

*Cocom v. ABM Aviation, Inc.,*
  No. 25-3246, slip op. (9th Cir. June 23, 2026) .................................................................... 15

*Fli-Lo Falcon, LLC v. Amazon.com, Inc.,*
  97 F.4th 1190 (9th Cir. 2024) ................................................................................................ 2

*Heckman v. Live Nation Ent., Inc.,*
  120 F.4th 670 (9th Cir. 2024) .............................................................................................. 10

*King v. Hausfeld,*
  2013 WL 1435288 (N.D. Cal. Apr. 9, 2013) ....................................................................... 13

*Lopez v. Cintas Corp.,*
  47 F.4th 428 (5th Cir. 2022) .................................................................................................. 4

*Lopez v. Nordstrom, Inc.,*
  No. 5:23-CV-02183-AB-KK, 2024 WL 3464170 (C.D. Cal. Feb. 12, 2024) ...................... 4

*Montes v. Thorntons LLC,*
  No. 25-cv-05895-EKL, 2026 WL 881712 (N.D. Cal. March 26, 2026) ............................... 4

*Ortiz v. Randstad Inhouse Services, LLC,*
  95 F.4th 1152 (9th Cir. 2024) ................................................................................................ 3

DEFS.' REPLY ISO MOTION TO COMPEL ARBITRATION, DISMISS CLASS CLAIMS, AND STAY ACTION

*Poublon v. C.H. Robinson Co.*,
846 F.3d 1251 (9th Cir. 2017) ...................................................................................................... 13

*Rent-A-Center, West, Inc. v. Jackson*,
561 U.S. 63 (2010) ......................................................................................................................... 9

*Rittman v. Amazon.com, Inc.*,
971 F.3d 904 (9th Cir. 2020) ......................................................................................................... 3

*S.W. Airlines Co. v. Saxon*,
596 U.S. 450 (2022) ............................................................................................................... 2, 3, 4

*Sheelit v. AmeriSave Mortg. Corp.*,
754 F.Supp. 3d 995 (C.D. Cal. 2024) ......................................................................................... 12

*Stewart v. Allstate Ins. Co.*,
No. 2:25-CV-00373-CAS, 2025 WL 746511 (C.D. Cal. Feb. 24, 2025) ..................................... 11

*Tompkins v. 23andMe, Inc.*,
840 F.3d 1016 (9th Cir. 2016) ..................................................................................................... 12

*Tovar v. City of San Jose*,
No. 5:21-cv-02497-EJD, 2021 WL 6126931 (N.D. Cal. Dec. 28, 2021) ..................................... 15

*Trujillo v. The Chefs Warehouse West Coast, LLC*,
No. 2:19-cv-08370-MEMF, Doc. 148 (C.D. Cal. Apr. 21, 2023) .......................................... 13, 14

*Tyler v. Travelers Com. Ins. Co.*,
499 F. Supp. 3d 693 (N.D. Cal. 2020) ........................................................................................... 5

*Watkins v. Ameripride Services, Inc.*,
375 F.3d 821 (9th Cir. 2004) ......................................................................................................... 4

*Zamudio v. Aerotek, Inc.*,
698 F. Supp. 3d 1202 (E.D. Cal. 2023) ......................................................................................... 6

**State Cases**

*Adolph v. Uber Technologies, Inc.*,
14 Cal. 5th 1104, 1124 (2023) ..................................................................................................... 15

*Armendariz v. Found. Health Psychcare Servs., Inc.*,
24 Cal. 4th 83 (2000) ............................................................................................................. 12, 14

*Baker v. Osborne Development Co.*,
159 Cal. App. 4th 884 (2008) ........................................................................................................ 9

*Baxter v. Genworth North America Corporation*,
16 Cal. App. 5th 713 (2017) ........................................................................................................ 13

*Bolanos v. Khalatian*,
231 Cal. App. 3d 1586 (1991) ................................................................................................... 9, 11

*Bolter v. Superior Court*,
87 Cal. App. 4th 900 (2001) ........................................................................................................ 14

DEFS.' REPLY ISO MOTION TO COMPEL ARBITRATION, DISMISS CLASS CLAIMS, AND STAY ACTION

*Alvarez v. Altamed Health Servs. Corp.*,
    60 Cal. App. 5th 572 (2021) ......................................................................................................... 11

*Davis v. TWC Dealer Group, Inc.*,
    41 Cal. App. 5th 662 (2019) ......................................................................................................... 14

*Diaz v. Sohnen Enters.*,
    34 Cal. App. 5th 126 (2019) ........................................................................................................... 8

*Dotson v. Amgen, Inc.*,
    181 Cal. App. 4th 975 (2010) ....................................................................................................... 14

*Espejo v. S. California Permanente Med. Grp.*,
    246 Cal. App. 4th 1047 (2016) ....................................................................................................... 6

*Fisher v. MoneyGram Int'l, Inc.*,
    66 Cal. App. 5th 1084 (2021) ....................................................................................................... 11

*Iyere v. Wise Auto Grp.*,
    87 Cal. App. 5th 747 (2023) ...................................................................................................... 5, 6

*Jack v. Ring LLC*,
    91 Cal. App. 5th 1186 (2023) ......................................................................................................... 9

*Najarro v. Sup. Ct.*,
    70 Cal. App. 5th 871 (2021) ...................................................................................................... 7, 8

*Pinela v. Neiman Marcus Group, Inc.*,
    238 Cal. App. 4th 227 (2015) ....................................................................................................... 10

*Ramirez v. Charter Comm's, Inc.*,
    16 Cal. 5th 478 (2024) ................................................................................................................. 12

*Ramos v. Superior Court*,
    28 Cal. App. 5th 1042 (2018) ....................................................................................................... 13

*Randas v. YMCA of Metropolitan Los Angeles*,
    17 Cal. App. 4th 158 (1993) ........................................................................................................... 6

*Rosenthal v. Great W. Fin. Sec. Corp.*,
    14 Cal. 4th 394 (1996) ................................................................................................................... 6

*Sanchez v. CarMax Auto Superstores Cal. LLC*,
    224 Cal. App. 4th 398 (2014) ....................................................................................................... 13

*Sanchez v. Valencia Holding Co., LLC*,
    61 Cal. 4th 899 (2015) ................................................................................................................. 12

*Serafin v. Balco Props., Ltd.*,
    235 Cal. App. 4th 165 (2015) ................................................................................................... 9, 11

*Woodside Homes of Cal., Inc. v. Superior Court of Riverside Cty.*,
    132 Cal. Rptr. 2d 35 (Ct. App. 4th Dist. 2003) ............................................................................. 13

iv

DEFS.' REPLY ISO MOTION TO COMPEL ARBITRATION, DISMISS CLASS CLAIMS, AND STAY ACTION

**Federal Statutes**

Federal Arbitration Act ............................................................................................... 1, 4, 5, 10

**State Statutes**

California Arbitration Act................................................................................................ 1

DEFS.' REPLY ISO MOTION TO COMPEL ARBITRATION, DISMISS CLASS CLAIMS, AND STAY ACTION

## I.    INTRODUCTION

Defendants' Motion establishes **every** requirement for arbitration. Plaintiff Leticia Pareja Martinez ("Plaintiff") signed the Arbitration Agreement.[1] The Agreement covers her claims and the entities she sued. It expressly invokes the Federal Arbitration Act ("FAA"), is independently enforceable under the California Arbitration Act ("CAA"), delegates gateway issues to the arbitrator, waives class procedures, and requires a stay while arbitration proceeds. Plaintiff's Opposition leaves most of that showing unanswered. She does **not** dispute, and therefore **concedes**, the following points:

- She signed, in wet ink by her own hand, the October 2022 Arbitration Agreement;
- The Agreement covers all of the claims asserted, and all Defendants named, in this lawsuit;
- The Agreement is independently enforceable under the CAA if the FAA does not apply — a point she never addresses;
- The standalone class action waiver is enforceable and the class claims must be dismissed;
- The PAGA claim may be divided into an individual component and a representative component, with the individual component sent to arbitration while the representative component remains in court; and
- A stay of proceedings is appropriate if the Court compels arbitration.

These concessions are **dispositive**. They mandate an order compelling arbitration of Plaintiff's individual claims (including her individual PAGA claim), dismissing her class claims, and staying this action (including her non-individual representative PAGA claim) pending arbitration.

Plaintiff's remaining arguments do not change that result. She has not carried her burden to prove the FAA's narrow transportation-worker exemption; her fraud-in-the-execution theory cannot overcome her wet signature on a standalone document titled "Arbitration Agreement"; the delegation clause is clear and enforceable; and the Agreement is not unconscionable. The Motion should be granted **in full**.

## II.    ARGUMENT

### A.    The FAA Governs, And Plaintiff Has Not Met Her Burden To Prove Any Exemption.

Plaintiff does not dispute, and therefore **concedes**, that the Agreement expressly invokes the FAA. (Agreement ¶ 2.) Nor does she dispute that the FAA embodies "a liberal federal policy favoring arbitration agreements," *AT&T Mobility LLC v. Concepcion,* 563 U.S. 333, 339 (2011), and requires courts to enforce

---

[1] For simplicity, Defendants generally use the term "Agreement" singular in this Reply, and unless otherwise specified, this is intended to refer to the "October Agreement." However, all arguments apply equally to the substantively identical June Agreement.

1

DEFS.' REPLY ISO MOTION TO COMPEL ARBITRATION, DISMISS CLASS CLAIMS, AND STAY ACTION

covered arbitration agreements according to their terms. Plaintiff bears the burden of proving the FAA's transportation-worker exemption applies. *Fli-Lo Falcon, LLC v. Amazon.com, Inc.,* 97 F.4th 1190, 1194 (9th Cir. 2024). That burden is substantial because the § 1 exemption is "narrow." *Bissonnette v. LePage Bakeries Park St., LLC,* 601 U.S. 246, 256 (2024).

To determine whether the exemption applies, the Court first defines the relevant class of workers and then asks whether that class is "engaged in foreign or interstate commerce." *S.W. Airlines Co. v. Saxon*, 596 U.S. 450, 455 (2022). The focus is on "the actual work that the members of the class, as a whole, typically carry out," not what the employer does generally. *Id.* at 456. And the relevant class of workers must play "a direct and necessary role in the free flow of goods across borders." *Id.* at 458 (internal quotation and citation omitted). Occasional or incidental contact with interstate goods is not enough. *Capriole v. Uber Techs., Inc.,* 7 F.4th 854, 865 (9th Cir. 2021) ("Someone whose occupation is not defined by its engagement in interstate commerce does not qualify for the exemption just because she occasionally performs that kind of work") (quotation omitted).

Defendants' unrebutted evidence shows that Plaintiff's 39-month tenure spanned three distinct periods: (1) an initial period as a production utility worker in Union City, where the facility shipped exclusively to California customers; (2) a three-month period as a production utility worker in Richmond, where more than 99% of shipments stayed in California; and (3) a final nine-month period in Richmond during which, under a medical accommodation, Plaintiff worked at a stationary workstation making empty cardboard boxes. (Feizi Decl. ¶¶ 8–10, 14.) Plaintiff does **not** dispute that timeline. Nor does she contend she performed transportation work during the final nine months of her employment. (Doc. 18 at 12–15.)

Plaintiff instead relies on uncited assertions in the Opposition that Del Monte "receiv[ed] meat" from out of state during her pre-accommodation tenure. (Opp., Doc. 18 at 15.) But Plaintiff offers no evidence that **she** received inbound goods. Her declaration does not say she unloaded trucks, accepted deliveries, or otherwise handled meat when it arrived at the facility; it says only that she put meat in boxes so it could be "sent out." (Martinez Decl., Doc. 18-2 ¶ 13.) Defendants' evidence is unrebutted that Plaintiff had no responsibility for receiving goods. (Feizi Decl. ¶ 11.) And whether Del Monte, as a company, received some goods from out of state does not answer the § 1 question. *Saxon* requires the

2

DEFS.' REPLY ISO MOTION TO COMPEL ARBITRATION, DISMISS CLASS CLAIMS, AND STAY ACTION

Court to examine the worker's actual duties, not the employer's business in the abstract. *Saxon,* 596 U.S. at 456 (the relevant question was "what [Saxon] does at Southwest, not what Southwest does generally").

Plaintiff's labels do not create a material dispute. Defendants refer to her pre-injury role as production utility; Plaintiff calls herself a packer. Either way, both sides' evidence places her in a local production-and-packing function: building boxes, sanitizing, monitoring equipment, and, at most, placing meat into boxes so it could be "sent out." (Martinez Decl. ¶ 13; Feizi Decl. ¶¶ 8-11.) Plaintiff does not contend that she received inbound goods, unloaded trucks, loaded trucks, prepared interstate shipments, or handled goods assigned to any known out-of-state customer. Nor does she offer evidence that any meat she handled was preordered by, earmarked for, or inevitably bound to a specific out-of-state customer when it arrived at the facility. To the contrary, Defendants' evidence shows that there was no specific customer order, outbound shipment, or delivery destination assigned to any food products arriving at the facility and that separate employees processed the food products, including by cutting, grinding, portioning, or otherwise preparing them before later distribution. (Feizi Decl. ¶¶ 12-13.) Thus, whatever label is used, Plaintiff's work was support/utility work after inbound goods had arrived for local processing, not transportation work in an unbroken stream of interstate commerce.

The Supreme Court's "come to rest" cases confirm the point. In *A.L.A. Schechter Poultry Corp. v. United States,* poultry shipped from out of state came to rest when it reached slaughterhouses for local slaughter and sale; the interstate transactions ended there, and any later transactions were local. 295 U.S. 495, 542–43 (1935). The same principle applies here. Plaintiff was not shuttling finished products along an unbroken interstate route to an identified customer. She was, at most, supporting the local processing and packing of meat products in California — after inbound goods had arrived and been transformed through cutting, grinding, portioning, or other processing, and before any later customer-specific distribution, overwhelmingly to California customers. (Feizi Decl. ¶¶ 8-10, 12-14.) The meat therefore came to rest at the facility; it was not still moving through one continuous interstate transaction.

That is what distinguishes this case from *Rittman v. Amazon.com, Inc.*, 971 F.3d 904 (9th Cir. 2020), and *Ortiz v. Randstad Inhouse Services, LLC,* 95 F.4th 1152 (9th Cir. 2024). In those cases, the workers handled goods while they were still moving through an ongoing interstate journey to known destinations. Here, Plaintiff offers no evidence that the products she touched had already been purchased

DEFS.' REPLY ISO MOTION TO COMPEL ARBITRATION, DISMISS CLASS CLAIMS, AND STAY ACTION

by, assigned to, or earmarked for any out-of-state customer. The record instead shows local processing and overwhelmingly local distribution. That breaks the chain of interstate commerce.

*Watkins v. Ameripride Services, Inc.* confirms the point: when "a company places orders with an out-of-state vendor, with delivery to the company's intrastate warehouse for future delivery to customers yet to be identified, the transportation chain culminating in delivery to the customer is considered intrastate in nature." 375 F.3d 821, 826 (9th Cir. 2004). Plaintiff has no evidence that the products she packed were already committed to a specific interstate customer when they arrived.[2] Nor does her claimed observation of Las Vegas-bound boxes once per year change the result. She does not say she handled those shipments, prepared them, loaded them, or had any responsibility for them. Even if someone at a Del Monte facility occasionally handled an out-of-state shipment, infrequent interstate activity by someone else does not trigger § 1 for Plaintiff. *Capriole,* 7 F.4th at 865. Nor does a once-a-year observation create a material dispute against Defendants' sworn evidence that Union City served only California customers and Richmond shipped more than 99% of its products within California. (Feizi Decl. ¶¶ 8–10, 14.)

Plaintiff has not carried her burden. She has not shown that her class of workers frequently and actively engaged in interstate transportation, that she played a direct and necessary role in moving goods across borders, or that the products she handled remained in an unbroken stream of interstate commerce. The FAA applies, and the Agreement must be enforced.

### B.    Even If Plaintiff Were A Transportation Worker, The Agreement Is Independently Enforceable Under California Law

Plaintiff's transportation worker argument is academic because even if § 1's exemption applied (it does not), the Agreement still is enforceable under California law. Defendants made this point in their

---

[2] Other courts draw the same line. In *Lopez v. Cintas Corp.,* the Fifth Circuit rejected § 1's exemption because "[o]nce the goods arrived at the Houston warehouse and were unloaded, anyone interacting with those goods was no longer engaged in interstate commerce." 47 F.4th 428, 433 (5th Cir. 2022). And courts applying *Saxon* have rejected exemption arguments where plaintiffs provide no evidence that they frequently and actively handled goods moving across borders. *See Lopez v. Nordstrom, Inc.,* No. 5:23-CV-02183-AB-KK, 2024 WL 3464170, at *3 (C.D. Cal. Feb. 12, 2024) (exemption did not apply where plaintiff failed to show he "frequently and actively" engaged in interstate commerce); *Anaya v. Tesla Motors, Inc.,* No. 24-cv-04206-VC, 2024 WL 4198463, at *1 (N.D. Cal. Sept. 16, 2024) (rejecting exemption where plaintiff provided no evidence that his work played a role in transporting goods across borders); *see also Montes v. Thorntons LLC,* No. 25-cv-05895-EKL, 2026 WL 881712, at *4 (N.D. Cal. March 26, 2026) (gas station clerks are not transportation workers because they are not at the "heart of the supply chain").

---

Motion. Plaintiff does not answer it. That silence is a concession. *Tyler v. Travelers Com. Ins. Co.*, 499 F. Supp. 3d 693, 701 (N.D. Cal. 2020) ("Plaintiff concedes these arguments by failing to address them").

Courts routinely compel arbitration under California law even after finding the FAA's § 1 exemption applies. In *Bahamonde v. Amazon.com Servs. LLC*, this Court found delivery drivers exempt under § 1 but nonetheless compelled their wage-and-hour claims to arbitration under California law. No. 25-cv-03499-JSC, 2025 WL 2021801, at **4-5, *8 (N.D. Cal. July 18, 2025). The Central District reached the same result in *Bacajol v. ALDI Foods Inc.*, No. 25-cv-2963-JGB, 2026 WL 836840, at **3–5 (C.D. Cal. Mar. 19, 2026). Plaintiff addresses neither case. Thus, whether under the FAA or California law, the Agreement must be enforced.

### C.    Plaintiff Entered Into A Valid Arbitration Agreement.

Defendants have met their burden to establish a valid arbitration agreement. Indeed, they submitted two agreements: the June 2022 Agreement bearing Plaintiff's electronic signature and the October 21, 2022 Agreement bearing Plaintiff's wet-ink signature. Plaintiff's attacks on both fail.

### 1.    Plaintiff's Speculation Does Not Defeat The June 2022 Agreement.

Plaintiff first challenges the June 2022 Agreement. But she does not deny that her DayForce credentials were used to sign it. She instead speculates that "someone such as Mr. Contreras" may have signed for her. (Opp. at 2; Martinez Decl. ¶ 8.) But speculation is not evidence, and does not create a genuine dispute over attribution. *See Iyere v. Wise Auto Grp.*, 87 Cal. App. 5th 747, 755 (2023) (plaintiff must "offer admissible evidence creating a factual dispute as to the authenticity of [her] signature[ ].") Plaintiff offers **no** witness who accessed her account, **no** document showing unauthorized access, **no** DayForce record suggesting another user signed for her, and **no** evidence that DayForce allowed another employee to generate her DocuSign signature without her unique credentials. Meanwhile, Defendants' evidence establishes that, "[u]nless someone was logged into DayForce using Plaintiff's unique user ID and password, there would have been no way to generate the electronic DocuSign signature appearing in her name on the June 2022 Agreement." (Farinha Decl. ¶ 17.) That evidence is sufficient under *Iyere*.

Plaintiff's "anomalies" argument does not help her. She complains that the DocuSign Envelope ID on the signature page differs from the agreement's internal page numbering. (Opp. at 13.) But the DocuSign page identifies the signing event, not a defect in the agreement. Plaintiff does not deny her

DEFS.' REPLY ISO MOTION TO COMPEL ARBITRATION, DISMISS CLASS CLAIMS, AND STAY ACTION

employee number on the DocuSign page uniquely identifies her, and cites no authority holding that a DocuSign envelope identifier, separate from document pagination, invalidates an electronic signature.

*Zamudio v. Aerotek, Inc.*, 698 F. Supp. 3d 1202 (E.D. Cal. 2023) is distinguishable. There, the employer's declaration did not address the credentialing system. Here, Farinha's declaration explains the unique-login requirement, the DayForce process, and Plaintiff's continued use of her DayForce account during employment. (Farinha Decl. ¶¶ 9, 16–17.) Plaintiff's conjecture cannot overcome that evidence—and in any event, the Court need not reach the June 2022 Agreement because Plaintiff admits she signed the October 2022 Agreement in wet ink.

### 2.    Plaintiff Cannot Turn Her Admitted Wet-Ink Signature On The October 2022 Agreement Into Fraud In The Execution.

Plaintiff's challenge to the October 2022 Agreement fails because she **admits** she signed it. Specifically, Defendants submitted the October 21, 2022 Arbitration Agreement bearing Plaintiff's wet-ink signature. (Farinha Decl. Ex. B.) Plaintiff does **not** deny that the signature is hers. She does **not** claim the document was forged. She does **not** claim someone signed for her. And she does **not** dispute that the document she signed was a standalone, five-page agreement titled "Arbitration Agreement." That satisfies Defendants' burden to establish formation. *See Espejo v. S. California Permanente Med. Grp.*, 246 Cal. App. 4th 1047, 1060 (2016) (initial burden satisfied by attaching signed agreement).

The burden then shifted to Plaintiff to "offer admissible evidence creating a factual dispute as to the authenticity of [her] signature." *Iyere*, 87 Cal. App. 5th at 755. She offers none. Instead, she tries to avoid the Agreement through "fraud in the execution." That theory fails.

Fraud in the execution is narrow. It requires proof that Plaintiff had "no reasonable opportunity to learn the truth." *Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal. 4th 394, 425 (1996). It applies only where the alleged misrepresentation "is so fundamental that the [party] [was] deceived as to the basic character of the document[ ] [she] signed." *Id.* And the signer's reliance must not be "unreasonable." *Id.* at 423. Short of that, the settled rule applies: a person who signs a contract is bound by its terms. *See Randas v. YMCA of Metropolitan Los Angeles*, 17 Cal. App. 4th 158, 163 (1993) ("one who accepts or signs an instrument, which on its face is a contract, is deemed to assent to all its terms, and cannot escape liability on the ground that he has not read it. If he cannot read, he should have it read or explained to him.").

DEFS.' REPLY ISO MOTION TO COMPEL ARBITRATION, DISMISS CLASS CLAIMS, AND STAY ACTION

Plaintiff cannot meet that standard. She signed a document titled "Arbitration Agreement." She printed her name, signed her name, and dated the Agreement. She does not allege that anyone prevented her from reading it. She does not allege that anyone prevented her from asking questions. She does not allege that she asked for a Spanish-language version and was refused one. Nor does she allege that anyone hid the nature of the document from her. Her declaration says only that nobody told her the document titled "Arbitration Agreement" was an arbitration agreement, and that she believed it was "just a formality" acknowledging employment. (Martinez Decl. ¶¶ 10–11.) That is not fraud in the execution.

The face of the Agreement defeats Plaintiff's theory. The document was not buried in a handbook or embedded in unrelated onboarding paperwork. It was a standalone agreement labeled "Arbitration Agreement." And on the signature page — immediately above the lines where Plaintiff printed, signed, and dated her name — the Agreement warned in bold capital letters: "**EMPLOYEE HEREBY KNOWINGLY AND VOLUNTARILY WAIVES HIS OR HER LEGAL RIGHTS TO CLASS, COLLECTIVE, AND REPRESENTATIVE PROCEDURES AND THE RIGHT TO TRIAL BY JURY OR JUDGE FOR ANY COVERED CLAIM SET FORTH IN THIS AGREEMENT.**" (October Agreement, p. 5.) The Agreement also advised Plaintiff "**TO SEEK LEGAL ADVICE.**" (*Id.*)

Plaintiff's limited-English argument does not change the result. She admits she has some understanding of English and can read English words.[3] (Martinez Decl. ¶ 5.) The record also shows that Plaintiff knew how to communicate with management when she needed assistance: she submitted written requests for a medical accommodation and a schedule modification. (Feizi Decl. ¶ 27.) And Spanish-language materials were available and routinely offered. (Farinha Decl. ¶ 20; Feizi Decl. ¶¶ 19–21.) On this record, Plaintiff cannot show she had no reasonable opportunity to understand what she was signing.

*Najarro* is materially different. There, the employee was **<u>illiterate</u>** and was actively obstructed from reading the documents she was asked to sign. *Najarro v. Sup. Ct.*, 70 Cal. App. 5th 871, 887 (2021) ("While at the window, a J&J employee presented her with Version One, flipped to the signature page, obstructed her view of the document, and instructed her to sign"). Plaintiff alleges neither fact. She does not claim she was illiterate. She does not claim anyone stopped her from reading the Agreement. She does

---

[3] As one example, Plaintiff admits that she knew how to read shipping labels. Martinez Decl. ¶ 13.

DEFS.' REPLY ISO MOTION TO COMPEL ARBITRATION, DISMISS CLASS CLAIMS, AND STAY ACTION

not claim anyone stopped her from asking what it meant. And unlike in *Najarro*, the document here was unmistakably styled as an arbitration agreement.

Plaintiff's fraud-in-the-execution theory therefore fails. She admits signing the October 2022 Agreement; the face of that Agreement disclosed exactly what it was; and she offers no evidence that she had no reasonable opportunity to understand it. Her claimed misunderstanding does not defeat formation, particularly where the Agreement was a standalone document titled "Arbitration Agreement," warned in bold capital letters that she was waiving litigation rights, and advised her to seek legal advice.

That ends the formation dispute. Plaintiff assented to arbitration several times over: by electronic signature on the June 2022 Agreement, by wet-ink signature on the October 2022 Agreement, and by continuing employment after receiving the Agreement (she has no response to this).[4] She also nowhere contends that the Agreement excludes any claim or Defendant in this case. The Agreement is valid, enforceable, and dispositive.

**D.    The Delegation Clause Sends Plaintiff's Gateway Challenges To The Arbitrator.**

Plaintiff acknowledges the rule: if the Agreement contains a clear and unmistakable delegation clause, the arbitrator decides gateway issues, including unconscionability. (Opp. at 9.) But Plaintiff skips that threshold issue. She does not meaningfully address the delegation clause's text or the Agreement's incorporation of the AAA rules. Instead, she jumps straight to unconscionability. That approach fails.

The delegation language is dispositive. Paragraph 8 gives the arbitrator "exclusive authority to resolve any dispute relating to the formation, interpretation, applicability and enforceability of this Agreement." (Agreement ¶ 8.) That language is clear. It is unmistakable. And it is broad enough to cover the very challenges Plaintiff raises here, specifically, formation, applicability, enforceability, and unconscionability.

The Agreement's incorporation of the AAA rules separately confirms the same result. The Agreement provides for arbitration under the AAA rules, and those rules empower the arbitrator to decide jurisdictional issues , including objections to the existence, scope, or validity of the arbitration agreement. Plaintiff does not address this additional basis for delegation.

---

[4] "[W]hen an employee continues his or her employment after notification that an agreement to arbitration is a condition of continued employment, that employee has impliedly consented to the arbitration agreement." *Diaz v. Sohnen Enters*., 34 Cal. App. 5th 126 , 130 (2019)

DEFS.' REPLY ISO MOTION TO COMPEL ARBITRATION, DISMISS CLASS CLAIMS, AND STAY ACTION

Plaintiff cannot reasonably manufacture ambiguity from the carve-out. Paragraph 8 reserves for the Court only "the enforceability of the Class Action Waiver and the Representative Action Waiver." (*Id.*) That is not a contradiction; it is a deliberate allocation of authority. The Court decides the enforceability of those two waivers; the arbitrator decides all other gateway disputes. Courts routinely uphold delegation clauses with defined carve-outs. *Byler v. MasTec Services Co.*, No. 5:25-00181, 2025 WL 1722110, at *5 n. 2 (C.D. Cal. Apr. 29, 2025) (enforcing delegation clause); *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010) (delegation clauses are severable from broader arbitration agreement and remain enforceable unless specifically challenged).

Plaintiff's reliance on *Jack v. Ring LLC*, 91 Cal. App. 5th 1186 (2023), and *Baker v. Osborne Development Co.,* 159 Cal. App. 4th 884 (2008), misses that distinction. Those cases involved conflicting provisions that assigned the same arbitrability issues to both the court and the arbitrator. This Agreement does not. It contains a broad delegation clause and a specific carve-out. A carve-out is not a conflict.

Nor does the severability clause create ambiguity. Paragraph 12 reinforces the same structure: challenges to the class and representative-action waivers remain for the Court, while other challenges remain delegated. Nothing in Paragraph 12 expands the Court's role beyond that limited carve-out.

As for Plaintiff's unconscionability attack on the delegation clause, this fails at the threshold. Because delegation clauses are severable from the broader arbitration agreement, Plaintiff must challenge the delegation clause itself—and she does not do so in any meaningful way. *Byler*, 2025 WL 1722110, at *6 (challenges to enforcement of delegation clause must be tailored to the specific provision rather than the agreement as a whole). Instead, she recycles the same procedural objections she asserts against the Agreement generally: that the Agreement was presented in the employment context and that she has limited English proficiency.

Those arguments establish, at most, minimal procedural unconscionability. Adhesion alone is a low degree of procedural unconscionability. *Serafin v. Balco Props., Ltd.*, 235 Cal. App. 4th 165, 179 (2015). Plaintiff's language argument fares no better. Spanish-language materials were available and routinely offered. (Farinha Decl. ¶ 20; Feizi Decl. ¶¶ 19–21.) And California law does not allow a party to avoid a contract merely by claiming she did not read or understand it. *Bolanos v. Khalatian,* 231 Cal. App. 3d 1586, 1589–1590 (1991).

9

DEFS.' REPLY ISO MOTION TO COMPEL ARBITRATION, DISMISS CLASS CLAIMS, AND STAY ACTION

Where procedural unconscionability is low, Plaintiff must make a correspondingly strong showing of substantive unconscionability to avoid delegation. *See Byler*, 2025 WL 1722110, at *6. She cannot. The delegation clause is mutual, and it does not limit remedies, restrict discovery, impose unfair costs, or reserve employer-favored disputes for court. It simply assigns threshold arbitrability questions to the arbitrator.

Plaintiff's only substantive challenge is to the carve-out for the class and representative-action waivers. (Opp. at 11.) But that carve-out benefits Plaintiff. It preserves judicial review over the very waivers at issue in this Motion. A provision that gives an employee access to court on those issues is not oppressive, unfair, or unconscionable. And because Plaintiff shows, at most, low procedural unconscionability, this modest and employee-protective carve-out cannot supply the heightened substantive unconscionability required to invalidate the delegation clause.

Plaintiff's authorities do not fit. *Heckman v. Live Nation Ent., Inc.*, 120 F.4th 670, 687 (9th Cir. 2024),[5] and *Pinela v. Neiman Marcus Group, Inc.*, 238 Cal. App. 4th 227, 246 (2015),[6] involved arbitration provisions that favored the drafting party or deprived the employee of meaningful review under the governing law. This Agreement does the opposite. It preserves a narrow judicial forum for waiver enforceability while delegating ordinary gateway issues to the arbitrator. And unlike the arbitration program criticized in *Heckman*, this Agreement does not impose forced batching, bellwether procedures, or restrictions that prevent Plaintiff from pursuing her individual claims.

The delegation clause is valid and enforceable. Apart from the class and representative-action waivers expressly reserved for the Court, Plaintiff's challenges to formation, applicability, enforceability, scope, and unconscionability belong to the arbitrator.

---

[5] In *Heckman*, the defendant implemented an arbitration program via "New Era Arbitration" that had inadequate discovery and imposed a mandatory mass arbitration protocol which included a mandatory batching and a forced bellwether protocol that was likely to preclude the plaintiff from having an individual hearing. 120 F. 4th at 685 ("New Era's restrictions on briefing border on the absurd").

[6] In *Pinela,* the arbitration agreement attempted to impose Texas rules relating to unconscionability— meaning the delegation provision deprived the plaintiff from an opportunity to have an arbitrator consider whether the agreement was unconscionable under California law. In marked contrast, Defendants' arbitration agreement guarantees fair discovery, guarantees the right to individual hearings (with no forced "bellwether" protocols), and is governed by the FAA and California law.

10

DEFS.' REPLY ISO MOTION TO COMPEL ARBITRATION, DISMISS CLASS CLAIMS, AND STAY ACTION

**E.    The Agreement Is Not Unconscionable.**

Even if the Court reaches unconscionability (it should not), Plaintiff's challenge fails. California law requires **both** procedural and substantive unconscionability. The two operate on a sliding scale: the less procedural unconscionability Plaintiff can show, the more substantive unconscionability she must prove. *Fisher v. MoneyGram Int'l, Inc.*, 66 Cal. App. 5th 1084, 1093 (2021). Here, Plaintiff shows little, if any, procedural unconscionability and no substantive unconscionability.

**1.    Any Procedural Unconscionability Is Minimal.**

Plaintiff's procedural unconscionability argument rests largely on the fact that arbitration is a condition of employment. Under California law, this establishes only low procedural unconscionability. *Serafin*, 235 Cal. App. 4th at 179; *Stewart v. Allstate Ins. Co.*, No. 2:25-CV-00373-CAS, 2025 WL 746511, at *6 (C.D. Cal. Feb. 24, 2025) ("California courts have said that when an arbitration agreement is a condition of employment 'there is inherently economic pressure on the employee to accept arbitration,' but that '[t]his alone is a fairly low level of procedural unconscionability'") (quoting *Alvarez v. Altamed Health Servs. Corp.*, 60 Cal. App. 5th 572, 591 (2021)).

Plaintiff shows nothing more. There was no surprise. The Agreement was not hidden in a handbook, buried in unrelated onboarding materials, or disguised as something else. It was a standalone document titled "Arbitration Agreement." It was concise, clearly labeled, and repeatedly identified arbitration as the mechanism for resolving covered disputes. The signature page also recapped the rights being waived and stated that the employee had received, carefully read, and understood the Agreement and its binding effect. (Agreement at 5.)

Nor was there oppression beyond ordinary adhesive presentation. Plaintiff does not claim anyone prevented her from reading the Agreement, asking questions, or requesting assistance. Nor does she claim she requested a Spanish-language version and was refused one. The record shows that Spanish-language materials were available and routinely offered. (Farinha Decl. ¶ 20; Feizi Decl. ¶¶ 19–21.) And California law does not allow a party to avoid a contract merely by claiming she did not read or understand it. *Bolanos*, 231 Cal. App. 3d at 1589-90.

11

### 2.    There Is No Substantive Unconscionability

Under California's "sliding scale approach," because Plaintiff shows, at most, minimal procedural unconscionability, she must make a strong showing of substantive unconscionability. *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000). She cannot. Substantive unconscionability focuses on whether the challenged terms are "overly harsh" or "unduly oppressive" or "shock the conscience." *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 911–12 (2015). Plaintiff bears that burden, *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1023 (9th Cir. 2016), and she has not met it.

#### a.    The Agreement Is Mutual.

Plaintiff first argues the Agreement lacks mutuality because the covered claims are supposedly those "more likely [to] be initiated by an employee." (Opp. at 20.) That is not the test. The Agreements apply to "any and all disputes **between**" Plaintiff and the Company — both parties are bound and both sides must arbitrate covered disputes. (October Agreement ¶ 3.) Plaintiff identifies no employer-favored carve-out allowing Defendants to litigate their likely claims while forcing Plaintiff to arbitrate hers.

That distinguishes Plaintiff's authorities. The cases she cites involved agreements with asymmetric carve-outs favoring the employer.[7] This Agreement has none. The fact that employees are more likely to bring employment claims reflects the employment relationship, not substantive unfairness in the Agreement.

#### b.    The Representative Action Waiver Is Limited And Severable.

Plaintiff next challenges the representative action waiver. But the waiver is expressly limited "to the extent permissible by law." (Agreement ¶ 5.) And Defendants do not ask the Court to compel Plaintiff's non-individual representative PAGA claim to arbitration. Defendants seek only to compel the individual component of Plaintiff's PAGA claim and stay the representative component in court. That is the relief *Viking River* and *Adolph* require.

#### c.    The Limited Confidentiality Clause Is Mutual And Lawful.

Plaintiff also mischaracterizes the confidentiality provision. It applies equally to both parties and is narrowly tailored to "the arbitration process" — not the underlying claims. (Agreement ¶ 13.) It does not

---

[7] *See Ramirez v. Charter Comm's, Inc.*, 16 Cal. 5th 478, 498 (2024) (agreement excluded from coverage claims that the employer was most likely to bring); *Sheelit v. AmeriSave Mortg. Corp.*, 754 F.Supp. 3d 995, 1009 (C.D. Cal. 2024) (agreement not mutual when it only covers wage payment claims).

DEFS.' REPLY ISO MOTION TO COMPEL ARBITRATION, DISMISS CLASS CLAIMS, AND STAY ACTION

bar Plaintiff from discussing the facts underlying her claims; it does not prevent her from gathering evidence; and it does not prohibit disclosure by agreement, court order, or in later proceedings. It protects only the confidentiality of the arbitral process itself. That is not substantively unconscionable.

Courts routinely uphold provisions protecting the confidentiality of arbitration proceedings, particularly where the provision is mutual and does not impair the employee's ability to prove her case. *Sanchez v. CarMax Auto Superstores Cal. LLC*, 224 Cal. App. 4th 398, 408 (2014) (no substantive unconscionability based on confidentiality of arbitration proceedings); *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1265–67 (9th Cir. 2017) (same). Even if the provision incidentally benefits one party, it is not unconscionable unless it impairs fair resolution — which it does not.[8] *Woodside Homes of Cal., Inc. v. Superior Court of Riverside Cty.*, 132 Cal. Rptr. 2d 35, 46 (Ct. App. 4th Dist. 2003); *King v. Hausfeld*, 2013 WL 1435288, at *15 (N.D. Cal. Apr. 9, 2013).

*Ramos v. Superior Court*, 28 Cal. App. 5th 1042 (2018), and *Baxter v. Genworth North America Corporation*, 16 Cal. App. 5th 713, 727 (2017), do not control. *Ramos* involved a broader confidentiality restriction covering "all aspects of the arbitration," not just its "process." *Id.* at 1065. *Baxter* involved non-mutual restrictions. By contrast, this provision is narrower. It does not impose one-sided secrecy. It does not prevent Plaintiff from obtaining or presenting evidence. And even if the Court found the provision too broad, the remedy would be severance — not invalidation of the entire Agreement.

### d. The Attorneys' Fees Provision Tracks Applicable Law.

Plaintiff's attack on the attorneys' fees provision also fails. Paragraph 10 provides that each party bears its own fees unless the arbitrator orders fee-shifting "under applicable law." (Agreement ¶ 10.) That is not oppressive. It preserves the same fee-shifting rules that would apply in court.

The Agreement also protects Plaintiff from arbitration-specific costs. It states that Plaintiff shall not "bear any cost or expense as a result of arbitration that Employee would not be required to pay if the claim had been brought in court." (Agreement ¶ 10.) Plaintiff therefore cannot show that arbitration imposes costs or fee exposure beyond what applicable law allows.

### e. The *Trujillo* Opt-Out Provision Is Irrelevant.

---

[8] The hallmark of unconscionability is one-sidedness. The narrowly-scoped, process-based confidentiality provision here is mutual, and may just as easily be regarded as a benefit of the arbitration process **for employees** who prefer to address workplace disputes in private.

13

DEFS.' REPLY ISO MOTION TO COMPEL ARBITRATION, DISMISS CLASS CLAIMS, AND STAY ACTION

Plaintiff's argument about Paragraph 6's *Trujillo* opt-out language is a distraction. That opt-out period expired in 2022, and *Trujillo* is not pending.[9] The provision has no practical effect on Plaintiff's claims here. It does not alter the arbitral forum, limit Plaintiff's remedies, restrict discovery, impose costs, or affect any claim asserted in this case. It therefore cannot support substantive unconscionability.

### f.    The Existence Of Two Agreements Does Not Create Unconscionability.

Plaintiff finally argues that the existence of two arbitration agreements is itself unconscionable. That argument misstates the record. The June and October agreements are substantively identical as to every provision relevant to this Motion. (Farinha Decl. ¶ 19.) Plaintiff identifies no material conflict affecting arbitration procedures, covered claims, remedies, costs, or forum.

*Davis v. TWC Dealer Group, Inc.*, 41 Cal. App. 5th 662, 675 (2019), is not analogous. That case involved multiple agreements with material differences in arbitral procedure. Here, Plaintiff identifies only minor administrative differences, not competing or inconsistent arbitration schemes. The existence of two substantively consistent agreements does not make either unconscionable.

In short, with minimal procedural unconscionability and no substantively unfair term, Plaintiff's unconscionability defense fails.

### F.    Severance Saves The Agreement If Necessary

Plaintiff has not shown that any provision is unconscionable. But even if the Court disagrees as to some isolated term, the remedy is severance, not invalidation of the Agreement.[10] California law strongly favors severance where the agreement is not "permeated by unconscionability." *Armendariz*, 24 Cal. 4th at 122; *Bolter v. Superior Court*, 87 Cal. App. 4th 900, 910–11 (2001) ("It is not necessary to throw the baby out with the bath water, i.e., the unconscionable provisions can be severed and the rest of the agreement enforced"). The "strong legislative and judicial preference is to sever the offending term and enforce the balance of the agreement." *Dotson v. Amgen, Inc.*, 181 Cal. App. 4th 975, 986 (2010).

---

[9] *See* Order Granting Dismissal With Prejudice, *Trujillo v. The Chefs Warehouse West Coast, LLC*, No. 2:19-cv-08370-MEMF, Doc. 148 (C.D. Cal. Apr. 21, 2023).

[10] Consistent with the delegation clause, the severability contemplates that the court would be most concerned with the "Class Action Waiver" and "Representative Action Waiver." (Agreement ¶ 12). Nonetheless, if this Court declines to enforce the delegation clause, then the severability provision simply contemplates that any part of the Agreement deemed illegal, invalid or unenforceable "will no longer be part of this Agreement." (*Id.*)

14

DEFS.' REPLY ISO MOTION TO COMPEL ARBITRATION, DISMISS CLASS CLAIMS, AND STAY ACTION

Here, the Agreement is not permeated by unfairness. It is mutual, covers both parties, preserves statutory remedies, protects Plaintiff from arbitration-specific costs, and contains an express severability clause. The isolated provisions Plaintiff challenges — the representative-action waiver, the confidentiality clause, the attorneys' fees language, the Trujillo opt-out provision, and the existence of two substantially similar agreements — are collateral to the Agreement's central purpose: bilateral arbitration of employment-related disputes. *See Cocom v. ABM Aviation, Inc.*, No. 25-3246, slip op. at 21 (9th Cir. June 23, 2026) (endorsing severance of provisions in an arbitration agreement that are collateral to its main purpose). Severance would not require any "augmentation" of the contract. *Id.*

Thus, if the Court finds any provision unenforceable (and declines to enforce the delegation clause), it should sever that provision and enforce the remainder of the Agreement.

### G.    Plaintiff's PAGA Argument Addresses Relief Defendants Never Sought

Plaintiff devotes Section F of her Opposition to arguing that her representative PAGA claim cannot be compelled to arbitration under *Adolph*. (Opp. at 23.) But Defendants never asked the Court to compel the representative PAGA claim. The Motion expressly seeks to compel only the **individual** component of Plaintiff's PAGA claim, with the **non-individual representative** component **stayed** pending arbitration. (Mot. at 14–17.) That is exactly what *Viking River* and *Adolph* require, and Plaintiff offers no argument against it. To the contrary, her own reliance on *Adolph* confirms that her individual PAGA claim is arbitrable and her representative PAGA claim is properly stayed in this Court pending the outcome of the arbitration. *Adolph v. Uber Tech's, Inc.*, 14 Cal. 5th 1104, 1124 (2023).

### H.    Plaintiff Concedes The Class Action Waiver And The Stay.

Plaintiff does not address the standalone class action waiver substantively, and she does not oppose a stay. Both points are conceded. *See Tovar v. City of San Jose*, No. 5:21-cv-02497-EJD, 2021 WL 6126931, at *2 (N.D. Cal. Dec. 28, 2021) (failure to address an argument constitutes a concession). So long as the Court finds that a contract was *formed*, Plaintiff has provided **no** basis to refuse enforcement of the standalone class waiver or to deny a stay pending arbitration.

### III.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant its Motion.

DEFS.' REPLY ISO MOTION TO COMPEL ARBITRATION, DISMISS CLASS CLAIMS, AND STAY ACTION

DATED: June 25, 2026

Respectfully submitted,

SEYFARTH SHAW LLP

By: _____
Michele J. Beilke
Julia Y. Trankiem
Alex W. Simon
Attorneys for Defendants
DEL MONTE CAPITOL MEAT COMPANY,
LLC; ALLEN BROTHERS 1893, LLC; THE
CHEFS' WAREHOUSE, INC.; AND THE
CHEFS' WAREHOUSE WEST COAST, LLC

16

DEFS.' REPLY ISO MOTION TO COMPEL ARBITRATION, DISMISS CLASS CLAIMS, AND STAY ACTION